UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*,

            Plaintiffs,

  v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

            Defendants.

Civil Action No. 1:19-cv-02117-RDM

## RESPONSE TO ORDER TO SHOW CAUSE

Plaintiffs, by and through their undersigned counsel, hereby file this Response to the Court's order to show cause why this case should be treated as related to *O.A. et al. v. Trump et al.*, No. 1:17-02718, and *S.M.S.R. et al. v. Trump et al.*, No. 1:18-02838. The reason why these cases are related is straightforward: Both suits are brought by the same Plaintiffs, alleging the same harms, challenging rules premised on the same factual predicates and statutory authority, and raising the same or substantially overlapping legal claims. "[J]udicial economy would be served by having the[ ] matters resolved by the same judge." *Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (quoting *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010)). The cases should be deemed related, and Plaintiffs' motion for a temporary restraining order should be expeditiously heard and resolved.

## ARGUMENT

Generally, "new cases filed in this courthouse are randomly assigned." *Singh*, 187 F. Supp. at 154. This random assignment rule is designed to "guarantee[ ] fair and equal distribution of cases to all judges, avoid[ ] public perception or appearance of favoritism in

1

assignments, and reduce[ ] opportunities for judge-shopping." *Tripp v. Exec. Office of President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (Calendar Committee three-judge panel). "In some cases, however, the interests of judicial economy served by the related case rule, Local Civil Rule 40.5, outweigh the fundamental interests served by the random assignment rule." *Doe v. Von Eschenbach*, No. 06-cv-2131, 2007 WL 1655881, at *1 (D.D.C. June 7, 2007); *see Tripp*, 196 F.R.D. at 202 (assigning related cases to different judges "will often prove wasteful of time and resources"). "Civil . . . cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent." Local Civ. R. 40.5(a)(3). The bottom-line question is whether "each case present[s] identical issues for resolution," and whether there is "substantial overlap in both the factual underpinning and the legal matters in dispute . . . such that judicial economy would be served by having the[] matters resolved by the same judge." *Singh*, 187 F. Supp. 3d at 156 (quoting *Autumn Journey Hospice*, 753 F. Supp. 2d at 140) (alterations in original omitted).

That standard is readily met here. It is undisputed that both *O.A. v. Trump* and *S.M.S.R. v. Trump* are still pending on the merits in the District Court: The parties have filed motions for summary judgment and class certification that remain pending for decision. Moreover, these cases involve numerous "common questions of fact" and raise "identical issues for resolution" on nearly every question presented, such that "judicial economy would be served by having the matters resolved by the same judge." *Id.*

*First*, both cases involve numerous "common questions of fact." Both this case and *S.M.S.R.* were brought by the same organizational Plaintiffs on the basis of the same allegations of harm. In particular, CAIR Coalition and RAICES have alleged that each rule will inflict the

2

same harms, such as increasing the costs of identifying and assisting immigrant clients, dramatically reducing the number of clients that Plaintiffs are able to serve, and impairing the organizations' missions of serving immigrant clients.  *Compare* Compl. ¶¶ 110-152 (*CAIR Coal.*), *with* Am. Compl. ¶¶ 213-255 (*S.M.S.R.*).  And they allege the rules inflict those harms for the same reasons:  By denying asylum eligibility to large numbers of aliens and instead requiring them to seek relief under more onerous legal standards (withholding of removal and the Convention Against Torture), the rules will make it more costly for the organizations to identify and assist their clients, reduce their ability to rely on non-lawyer staff, and require them to counsel children individually, rather than as derivative beneficiaries of asylum applicants.  *See id.*  Indeed, the organizations have submitted virtually identical declarations in support of standing in both cases.  Cubas Decl. ¶ 14; Garza Pareja Decl. ¶ 9.  Moreover, if the *East Bay* injunction were not in place, the harm inflicted by the two rules would be indistinguishable in many cases, since many of Plaintiffs' clients would be rendered ineligible for asylum based under *either* rule.  Common factual questions would thus govern the Courts' analysis of standing in both cases.

Furthermore, both this rule and the prior rule rest on the same factual predicates.  Each rule asserts at length—using many passages lifted verbatim from one rule to the next—that there is an immigration crisis on the southern border, that that crisis is fueled by large numbers of migrants from the Northern Triangle seeking asylum, and that the asylum system finds credible fears of persecution at too-high rates.  84 Fed. Reg. at 33,831; 83 Fed. Reg. at 55,935.  Both rules further claim that they will have the same allegedly beneficial effects on that system, such as reducing the strain on border patrol agents and immigration judges and decreasing the rate of unlawful entry and erroneous grants of asylum.  84 Fed. Reg. at 33,831; 83 Fed. Reg. at 55,947.

Unsurprisingly, then, they also impose markedly similar restrictions on asylum, broadly barring eligibility for asylum for most persons who cross the southern border. Evaluating the legality and rationality of each rule would thus require the Court to address common factual issues and assess justifications that are based on common factual claims.

Moreover, both rules offer the same factual bases for forgoing notice and comment. Each rule states, using nearly identical language, that there is "good cause" to forego notice and comment because "immediate implementation of the rule is essential to avoid a surge of aliens who would have strong incentives to seek to cross the border during pre-promulgation notice and comment or during the 30-day delay in the effective date under 5 U.S.C. 553(d)." 84 Fed. Reg. at 33,841; *see* 83 Fed. Reg. at 55,950 ("[I]mmediate implementation of this rule is essential to avoid creating an incentive for aliens to seek to cross the border during pre-promulgation notice and comment under 5 U.S.C. 553(b) or during the 30-day delay in the effective date under 5 U.S.C. 553(d)."). In each case, Defendants rely on the same "newspaper article" as the sole factual basis for that claimed surge. 84 Fed. Reg. at 33,841; *see* Defs. Reply in Support of Cross-Mot. for S.J. at 22-23, *O.A. v. Trump*, No. 18-2718 (Mar. 29, 2019). Indeed, the later rule expressly acknowledges that the prior rule invoked "th[e] same concerns" as the basis for its good cause finding. 84 Fed. Reg. at 33,841.

Likewise, each rule offers the same factual basis for claiming that the "foreign affairs" exception applies. Both rules state that forgoing notice and comment is appropriate because the rule "will facilitate ongoing diplomatic negotiations with foreign countries regarding migration issues, including measures to control the flow of aliens into the United States," "the urgent need to address the current humanitarian and security crisis along the southern land border between the United States and Mexico," and "ensur[ing] that refugees can more effectively find refuge

and safety in a third country." 84 Fed. Reg. at 33,842; *see* 83 Fed. Reg. at 55,951 (stating that the rule would "facilitate the likelihood of success in future negotiations" over matters including "how to address the influx of tens of thousands of migrants from Central America through Mexico and into the United States," how to "address the crisis at the southern border," and giving aliens "the opportunity to seek protection at the safest and earliest point of transit possible").

Because the D.C. Circuit requires courts to scrutinize an agency's "factual findings" to determine whether an exception to notice and comment applies, *Sorensen Commc'ns Inc. v. FCC*, 755 F.3d 702, 707 (D.C. Cir. 2014), this case and *S.M.S.R.* would thus require the Court to address common factual issues, and evaluate the sufficiency of Defendants' factual statements against the same legal standard. Indeed, these factual issues were critical to both courts' resolution of the notice-and-comment question in the *East Bay* litigation. *See East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018) (finding the foreign affairs exception inapplicable because "the connection between negotiations with Mexico and the immediate implementation of the Rule is not apparent on this record"); *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1115 (N.D. Cal. 2018) (finding the good cause exception applicable because Defendants' newspaper article ostensibly "supports the inference" that a surge of migration may occur). This area of factual overlap on this central legal question also militates in favor of a related case determination. *See Singh*, 187 F. Supp. 3d at 156 (approving related case designation for six actions in which the Court would be required to make "similar factual determinations" regarding, *inter alia*, Government defendants' "justifications for their regulations and policies"); *cf. Tripp*, 196 F.R.D. at 202-03 (finding cases not related where

the secondary case involved "only a tangential discovery connection, but no direct factual nexus, to the central allegations of the primary case").

*Second*, these cases present "identical issues for resolution," such that there is "substantial overlap in . . . the legal matters in dispute." *Singh*, 187 F. Supp. 3d at 156. As just noted, both cases present identical claims of standing and involve identical theories for forgoing notice and comment under the same statutory exceptions. In addition, Plaintiffs in both cases have raised the same arguments concerning the rules' violations of the Trafficking Victims Protection Reauthorization Act (TVPRA): In each case, they have claimed that the rule violates the TVPRA because it deprives a large number of unaccompanied alien children of the right to a non-adversarial asylum hearing, as the TVPRA requires, and instead directs that their asylum claims automatically be denied. *Compare* TRO Mem. 16-17, *with* TRO Mem. 24-25 (*S.M.S.R.*).

Furthermore, each case presents very similar questions regarding the scope of Defendants' legal authority under 8 U.S.C. § 1158(b)(2)(C). Both rules invoke Section 1158(b)(2)(C) to impose a sweeping restriction on asylum for persons who enter the United States through the southern border. And in both cases, Plaintiffs have argued that the rule exceeds the authority granted to the Attorney General for the same reason: because it circumvents a requirement imposed by another provision of Section 1158, and violates bedrock principles of international law. Both cases will thus require the Court to resolve some of the same legal questions concerning the scope of Section 1158(b)(2)(C): for one, whether the Attorney General may impose a limit on "eligibility" that effectively negates a statutory provision governing an alien's right to "apply" for asylum; for another, whether the language and structure of Section 1158(b)(2)(C)—including the terms "*additional* limitations" and "consistent with this section," and the structure of this provision as a residual authority—bar the Attorney

General from imposing limitations or conditions on asylum that undermine a prior provision of the same statutory section and contravene international law.

The jurisdictional issues in the cases are the same, too. Because the plaintiffs in each case are the same, Defendants will undoubtedly raise the same jurisdictional defenses: that organizational plaintiffs fall outside the zone of interests of the asylum statute, and that these organizations are barred from seeking relief by 8 U.S.C. § 1252(b) and (e). These issues have proven central to the *O.A.* and *S.M.S.R.* litigation, and consumed the bulk of Defendants' briefing in those cases. It would waste judicial resources to replicate all that effort in another case.

The fact that these cases involve different (albeit substantially overlapping) rules does not mean they are unrelated. Courts have found cases related where they challenged different policies or practices, or involved the application of those policies to differently situated plaintiffs, provided that the cases presented common issues and overlapping claims. *See, e.g.*, *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 158-159 (D.D.C. 2002) (finding case challenging a policy governing disposition of individual Indians' lands sufficiently related to a case challenging a policy governing the disposition of tribal land); *Singh*, 187 F. Supp. 3d at 155-156 (finding cases related where they involved different plaintiffs challenging applications of military's religious accommodations policy). "The fact that the Court will conduct an individual analysis with respect to each plaintiff to determine whether each plaintiff is entitled to the relief he seeks does not obviate the need for factual determinations related to the defendants' regulations and policies, and their administration of those regulations and policies, which are common to both cases." *Singh*, 187 F. Supp. 3d at 157.

*Finally*, "judicial economy would be served by having these matters resolved by the same judge." *Singh*, 187 F. Supp. 3d at 156 (internal quotation marks omitted). The merits and jurisdictional issues in these cases are complex, and have consumed months of briefing and argument. It would be a substantial waste of judicial resources if a judge who has not yet grappled with these issues were required to consider them anew. And that interest in judicial economy is especially forceful in this case. Due to the large number of highly vulnerable migrants and asylum seekers who are, as of yesterday, already subject to the Rule, both they and Plaintiffs will suffer irreparable harm imminently. Resolving the motion for a temporary restraining order and any subsequent motion for a preliminary injunction in an expeditious fashion is therefore of the utmost importance. And this Court is already steeped in many of the legal and factual issues that will be necessary for resolving the case. *See Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1024, 1025 (D.D.C. 1984) (noting, in the recusal context, that "experience with complex issues in an earlier case may actually enhance the likelihood of a speedy and inexpensive determination of a later case"). On the other side of the ledger, the "public appearance" of "favoritism" or "judge-shopping" is minimal, *Tripp*, 196 F.R.D. at 202, since this Court has yet to issue a substantive ruling of any kind in the other case, on either the merits or jurisdiction. The important thing is that the pending request for a temporary restraining order be resolved efficiently, and related-case status would serve that end.

## CONCLUSION

For the foregoing reasons, the Court should deem this a related case with *O.A. v. Trump* and *S.M.S.R. v. Trump* under Local Civ. Rule 40.5. Regardless, given the enormous harms Plaintiffs and the public will suffer if the rule remains in effect, Plaintiffs respectfully request

that the case be expeditiously assigned and that Plaintiffs' motion for a temporary restraining order be quickly heard and resolved.

July 17, 2019                                              Respectfully submitted,

**HOGAN LOVELLS US LLP**

/s/ Justin W. Bernick

| | |
|---|---|
| Manoj Govindaiah | Neal K. Katyal (Bar No. 462071) |
| RAICES, Inc. | T. Clark Weymouth (Bar No. 391833) |
| 802 Kentucky Ave. | Craig A. Hoover (Bar No. 386918) |
| San Antonio, TX 78201 | Justin W. Bernick (Bar No. 988245) |
| Telephone: (210) 222-09642 | Mitchell P. Reich (Bar No. 1044671) |
| Facsimile: (210) 212-4856 | Elizabeth Hagerty (Bar No. 1022774) |
| manoj.govindaiah@raicestexas.org | Kaitlin Welborn (Bar No. 88187724) |

*Counsel for Plaintiff Refugee and Immigrant Center for Education and Legal Services, Inc.*

555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com
t.weymouth@hoganlovells.com
craig.hoover@hoganlovells.com
justin.bernick@hoganlovells.com
mitchell.reich@hoganlovells.com
elizabeth.hagerty@hoganlovells.com
kaitlin.welborn@hoganlovells.com

Adina Appelbaum* (Bar No. 1026331)
CAPITAL AREA IMMIGRANTS'
RIGHTS COALITION
1612 K Street NW, Suite 204
Washington, DC 20006
Telephone: (202) 899-1412
Facsimile: (202) 331-3341
adina@caircoalition.org

*\*Pro hac vice application forthcoming*

*Counsel for Plaintiff Capital Area Immigrants' Rights Coalition*

Thomas P. Schmidt*
Mohan Warusha Hennadige*
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
thomas.schmidt@hoganlovells.com
mohan.warusha-
hennadige@hoganlovells.com

*\* Motion for admission and pro hac vice application pending admission forthcoming*

*Counsel for Plaintiffs*