UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*,

　　　　　　　　　Plaintiffs,

　　v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

　　　　　　　　　Defendants.

Civil Action No. 1:19-cv-02117-TJK

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE USING PSEUDONYMS AND UNDER SEAL

　　　Pursuant to Local Rules 5.4(f)(2) and 40.7(g) for the United States District Court for the District of Columbia and Federal Rules of Civil Procedure 5.2, 7, 10, and 15(a), Plaintiffs Capital Area Immigrants' Rights Coalition ("CAIR Coalition"), Refugee and Immigrant Center for Education and Legal Services, Inc. ("RAICES"), Human Rights First ("HRF"), J.M.M., D.L.R., Z.B.M., Y.G.C., M.Y.R.B., K.M.V.M., W.M.R.O., C.C.R.O., and N.G.R.L. (collectively, "Plaintiffs") respectfully request leave to file the attached Amended Complaint and for Plaintiffs J.M.M., D.L.R., Z.B.M., Y.G.C., M.Y.R.B., K.M.V.M., W.M.R.O., C.C.R.O., and N.G.R.L. ("Individual Plaintiffs") to proceed in this action using pseudonyms.[1]  Plaintiffs further request leave to file the accompanying Declarations of Individual Plaintiffs in support of the instant motion under seal.

　　　Good cause exists to permit Individual Plaintiffs to proceed in this action under pseudonyms in order to preserve the confidentiality of their sensitive personal information and to

---

[1] Plaintiffs may amend their Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) but request the Court's leave to do so using pseudonyms to identify the Individual Plaintiffs as set forth herein.

protect Individual Plaintiffs and their families from the potential for retributive violence. In addition, particularly as Government entities, Defendants will not be prejudiced by permitting Plaintiffs to proceed in this case anonymously.

## BACKGROUND

Individual Plaintiffs are migrants from Honduras, El Salvador, Guatemala, Cuba, and Angola seeking asylum in the United States. They seek to file the accompanying Amended Complaint, together with Plaintiffs CAIR Coalition, RAICES, and HRF, in order to challenge the interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (the "Rule"), which was issued by Defendants on July 16, 2019. The Rule bars individuals and families from eligibility for asylum if they did not seek such protection in a "third country" before arriving in the United States. *See* Am. Compl. ¶¶ 1, 3-7.

Plaintiffs CAIR Coalition and RAICES initially filed a Complaint in this case on July 16, 2019. Dkt. 1. They also moved for a Temporary Restraining Order ("TRO") and preliminary injunction against the Rule on the same date. Dkt. 3. Following a hearing on July 22, 2019, the Court issued an oral order on July 24, 2019 denying CAIR Coalition and RAICES' request for a TRO. Dkt. 28. However, upon consent from all parties, the Court held in abeyance CAIR Coalition and RAICES' request for a preliminary injunction, in light of the preliminary injunction entered by the U.S. District Court for the Northern District of California in *East Bay Sanctuary Covenant v. Barr*, Case No. 19-cv-4073-JST, Dkt. 42. Min. Order (July 30, 2019). In a joint Status Report filed on July 29, 2019, Plaintiffs advised that they would amend their Complaint by August 6, 2019 in advance of summary judgment proceedings. Dkt. 30.

Plaintiffs' Amended Complaint is attached hereto. As noted, it brings claims on behalf of the original Plaintiffs in this case, CAIR Coalition and RAICES, as well as HRF and Individual Plaintiffs. The legal arguments, however, are largely identical to those raised in the initial

Complaint. In brief, the Amended Complaint alleges that the Rule impermissibly undermines fundamental textual and structural limitations contained in the Immigration and Nationality Act ("INA") 8 U.S.C. § 1158, and therefore is in excess of Defendants' authority and in violation of law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The Amended Complaint also alleges that the Rule is arbitrary and capricious, in violation of 5 U.S.C. § 706; is unlawful as a result of its issuance without notice and comment procedures required under the APA, *see* 5 U.S.C. § 553; and violates the Due Process Clause of the U.S. Constitution and the Trafficking Victims Protection Reauthorization Act, 8 U.S.C. § 1158(b)(3)(C) ("TVPRA"). The Amended Complaint seeks mandamus relief and/or declaratory and injunctive relief vacating the Rule as unlawful and enjoining its implementation and enforcement across the United States.

As set forth in greater detail in the Amended Complaint and accompanying Declarations of Individual Plaintiffs in support of the instant motion, Individual Plaintiffs fled Honduras, El Salvador, Guatemala, Cuba, and Angola and are seeking asylum in the United States to escape severe violence and death threats to which they were subjected in their countries of origin. Individual Plaintiffs entered the United States at the southern border on or after July 16, 2019 after having passed through "third countries" en route to the United States in which they did not seek asylum protections. Accordingly, those Individual Plaintiffs who received credible fear determinations prior to the preliminary injunction issued in *East Bay Sanctuary Covenant v. Barr*, No. 19-cv-04073-JST, 2019 WL 3323095 (N.D. Cal. July 24, 2019), initially received negative determinations. Am. Compl. ¶¶ 16, 25, 31, 37, 52; Decl. of J.M.M ¶ 9; Decl. of D.L.R. ¶ 14; Decl. of Z.B.M. ¶ 16; Decl. of K.M.V.M. ¶ 20. Meanwhile, Plaintiffs W.M.R.O., C.C.R.O., and N.G.R.L. are unaccompanied minors (who do not undergo credible fear interviews) and, due to their time of entry, also will be ineligible for asylum absent declaratory

and injunctive relief against the Rule. *See* Decl. of W.M.R.O. ¶ 12; Decl. of C.C.R.O. ¶ 15; Decl. of N.G.R.L. ¶ 11; Am. Compl. ¶¶ 56-58, 62-63. Individual Plaintiffs all fear for their safety and that of their families in the event that their names were to be disclosed as a result of their participation in this lawsuit.

## LEGAL STANDARD

Although a complaint typically must state the names of the parties, *see* Fed. R. Civ. P. 10(a), federal courts have the discretion to allow parties to proceed anonymously when "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). To determine whether anonymity is warranted, this Court has considered the following five factors: (1) whether the party's request is intended "to preserve privacy in a matter of a sensitive and highly personal nature," (2) whether "identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties," (3) "the ages of the persons whose privacy interests are sought to be protected," (4) "whether the action is against a governmental or private party," and (5) "the risk of unfairness to the opposing party" as a result of anonymity. *Id.*; *see also United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980) (applying a similar balancing test with factors including "the strength" of the property and privacy interests involved, as well as "the possibility of prejudice" to those opposing disclosure).

In addition, under Federal Rule of Civil Procedure 5.2, Court filings presumptively may include only a minor's initials, rather than her full name. Fed. R. Civ. P. 5.2(a)(3); *see also* Local Civil Rule 5.4(f)(2) ("If the involvement of a minor child must be mentioned, only the initials of that child should be used.").

**ARGUMENT**

All of the relevant factors supporting anonymity weigh in Plaintiffs' favor. Individual Plaintiffs have provided and will continue to provide highly sensitive personal information throughout this lawsuit, including in the Amended Complaint and the concurrently filed Declarations of Individual Plaintiffs supporting this motion. Individual Plaintiffs would face significant risks, including physical harm and death, if their identities were publicly revealed. In contrast, allowing Individual Plaintiffs to proceed anonymously does not risk any unfairness to Defendants, all of whom are Government agencies or Government officials sued in their official capacities. The public interest also favors allowing Individual Plaintiffs' claims to proceed without exposing their identities. *See* Mem. & Order, *S.M.S.R., et al. v. Trump, et al.*, Case No. 18-2838-RDM, Dkt. 2 at *5 (D.D.C. Dec. 3, 2018) (Howell, J.) ("The public's interest in the litigants' identity is *de minimis* compared to the significant privacy interests of the plaintiffs, asylum seekers who would face significant risks, including physical harm and death, if their identities were publicly revealed." (internal quotation marks and citation omitted)).

### I.   Individual Plaintiffs' claims are sensitive and highly personal in nature.

Individual Plaintiffs' claims involve sensitive and highly personal information, such that their names should not be exposed to the public. That information is particularly sensitive due to the serious violence and persecution, further detailed in their accompanying Declarations, that Individual Plaintiffs already have experienced and stand to face again if their identities are revealed:

- Plaintiff J.M.M., a young woman from El Salvador, fled that country because a member of the MS-13 gang repeatedly sexually abused her. Decl. of J.M.M. ¶¶ 4-5. The gang member also threatened to hurt J.M.M.'s brother if she did not comply with the gang's demands. *Id.* ¶ 4. J.M.M. fled to Mexico, but MS-13 found her there and beat her. *Id.* ¶ 7. The gang members told

her that they had her and her brother's information, and that they would find her no matter where she was. *Id.*

- Plaintiff D.L.R. is a young woman from Cuba. Decl. of D.L.R. ¶ 1. D.L.R. was harassed by the Cuban Revolutionary Defense Committee ("CDR") for her opposition to communism. *Id.* ¶¶ 4-7. The CDR ordered her to appear at its meetings, interrogated her about her relationships, and threatened that it could make D.L.R.'s young daughter's life difficult if D.L.R. did not begin supporting the CDR. *Id.* ¶¶ 6-10. After D.L.R. refused to vote in an election or attend CDR meetings, the police arrested her. *Id.* ¶¶ 10-11. Later, the police assaulted her. *Id.* ¶ 12.

- Plaintiff Z.B.M. is a Jehovah's Witness from Angola. Decl. of Z.B.M. ¶¶ 1, 5. Z.B.M. fled Angola after she was kidnapped and beaten for her religion and her membership in a particular tribe. *Id.* ¶¶ 6-8, 12-13. The attackers held a gun to her head and threatened to kill her. *Id.* ¶ 8. Based on their clothing and weapons, Z.B.M. believes that her attackers were police officers. *Id.* ¶ 11. The next day, the attackers called Z.B.M. and told her that they would kill her if she did not leave Angola in the next 24 hours. *Id.* ¶ 10. On her journey to the United States, Z.B.M. was robbed and saw others killed or injured. *Id.*

- Plaintiff Y.G.C. is a young woman from Guatemala. Y.G.C. Decl. ¶ 1. A gang member threatened to kill Y.G.C. if she did not agree to "be his woman." *Id.* ¶¶ 4-5. He physically assaulted, and threatened to kill her—and the other man—if he heard that she dated someone else. *Id.* ¶ 6. Y.G.C. filed a criminal complaint against this gang member, but because she did not know the member's real name, the police were unable to help her. *Id.* ¶ 7. After filing the criminal complaint, someone in a car with tinted windows began stalking her. *Id.* ¶ 8. The gang member also continued to threaten her. *Id.* ¶ 9.

- Plaintiff M.Y.R.B. is a mother of a four-year-old son from Guatemala. Decl. of M.Y.R.B. ¶¶ 1-2. While in Guatemala, M.Y.R.B. was extorted by the Barrio 18 gang. *Id.* ¶ 6. The gang told her that if she did not pay, they would kill her and her son. *Id.* ¶¶ 5, 8. M.Y.R.B. and her son fled Guatemala when the gang increased the extortion to 25,000 quetzales. *Id.* ¶ 7. She did not think anywhere in Guatemala would be safe because she had heard of the Barrio killing the son of a man who fled from the Barrio to another part of Guatemala. *Id.* ¶ 9. M.Y.R.B. was also discriminated against in Guatemala for being an indigenous woman. *Id.* ¶¶ 11-14. While traveling through Mexico, she was extorted by police officers and sexually assaulted by a man who threatened to beat her family if she reported the assault. *Id.* ¶ 15.

- Plaintiff K.M.V.M. is a mother of a 6-year-old from Honduras. K.M.V.M. Decl. ¶¶ 1-2. K.M.V.M. fled to the United States after a gang made death threats against her entire family after her two brothers called the police on the gang. *Id.* ¶¶ 5-12. Gang members told her brothers that the gang has "the power to make anyone we want disappear, wherever, and at the time that we choose." *Id.* ¶ 11. Gang members also came to the convenience store that K.M.V.M.'s family owned, asking after her by name. *Id.* ¶ 12. K.M.V.M. moved with her parents and daughter to another town, but fled Honduras altogether after she heard that the gang was still looking for her. *Id.* ¶¶ 13-15. K.M.V.M. tried to seek police protection, but the police did nothing other than write up a report that agreed K.M.V.M. and her daughter are in danger. *Id.* ¶ 14. K.M.V.M. did not seek asylum in either Guatemala or Mexico because she feared that the gang would find them in those countries. *Id.* ¶ 17.

- Plaintiff W.M.R.O. is an unaccompanied minor boy from Honduras. Decl. of W.M.R.O. ¶ 1. C.C.R.O. is his twin sister and likewise an unaccompanied minor. *See* Decl. of C.C.R.O. ¶ 1. Their older brother is gay. W.M.R.O. Decl. ¶ 5; C.C.R.O. Decl. ¶ 3. Two men, one of

7

whom was wielding a machete, came to their house one night and threatened to kill the entire family because of their brother's sexual orientation. W.M.R.O. Decl. ¶ 6; C.C.R.O. Decl. ¶¶ 6-9. They decided to flee the country after receiving these threats. W.M.R.O. Decl. ¶ 7-8; C.C.R.O. Decl. ¶¶ 10-11.

- Plaintiff N.G.R.L. is an unaccompanied minor from Honduras. *See* Decl. of N.G.R.L. ¶ 1. Two years ago, N.G.R.L.'s stepfather raped her. *Id*. ¶ 5. A year ago, N.G.R.L.'s younger sister committed suicide, leaving a note stating that their stepfather had impregnated her. *Id*. ¶ 6. N.G.R.L. called the police on her stepfather, who was held for three months but released without undergoing a trial. *Id*. After her stepfather was released, he threatened N.G.R.L., told her that what happened to her little sister could happen to her, and that he was going to continue abusing her. *Id*. ¶ 7. N.G.R.L. fled Honduras a week later. *Id*. While in transit to the United States, N.G.R.L. felt unsafe; a man made a pass at N.G.R.L. as she travelled through Guatemala, and in Mexico she survived by cleaning a house where she lived but never left out of fear that she would be kidnapped. *Id*. ¶ 8. After a month of working in Mexico, N.G.R.L. traveled to the United States. *Id.*

These experiences and immigration circumstances, as further detailed in the Amended Complaint and Individual Plaintiffs' accompanying Declarations, are "sensitive and highly personal in nature," such that Individual Plaintiffs' identities should not be disclosed. *Chao*, 587 F. Supp. at 99; *see also, e.g.*, *Bird v. Barr*, Case No. 19-cv-1581, 2019 WL 2870234, at *5 (D.D.C. July 3, 2019) (first *Chao* factor weighed in favor of anonymity as to plaintiffs that submitted declarations showing that their safety or livelihoods could be jeopardized if their names were to be disclosed). Protecting Individual Plaintiffs' privacy also is consistent with the asylum regulations, which state that information contained in an asylum application "shall not be

disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General." 8 C.F.R. § 208.6(a).

### II. Public knowledge of Individual Plaintiffs' claims would create a risk of physical or mental harm.

Individual Plaintiffs face a serious risk of retaliatory physical and mental harm if their identities are disclosed through this litigation. As asylum seekers, Individual Plaintiffs are "particularly vulnerable" to retaliation if [their] true names are revealed. *Al Otro Lado, Inc. v. Nielsen*, Case No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017). Individual Plaintiffs already have faced physical violence in their countries of origin, as noted above, and exposing their identities would leave them and their families vulnerable to the additional risk of retaliatory violence in the United States or elsewhere. Individual Plaintiffs reasonably fear that they or their relatives could face retaliatory harm if their identities were to become public. In particular, Individual Plaintiffs fear that the same individuals, government actors, and gangs will seek them or their families out—in several cases expressly consistent with prior threats—if they learn that Individual Plaintiffs have fled their homes and if their identities are disclosed in this litigation.

Numerous courts have allowed plaintiffs to proceed anonymously where doing so would protect the plaintiffs or their families from similar risks of violence. *See Doe v. U.S. Dep't of State*, Case No. 15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) (allowing plaintiff to proceed pseudonymously in order to avoid "disclosing information that would help people who oppose the U.S.-led reconstruction efforts [in Iraq], such as ISL members, to find [him] and kill him and his family"); *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (allowing petitioner to litigate pseudonymously "because of his fear that if he is returned to El Salvador he will be killed"); *Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) ("Although the use of

9

pseudonyms is not favored, we have resorted to it here to protect the petitioner's family, who remain in China, from possible reprisals." (citation omitted)).

### III. Anonymity is particularly important given that minor children are involved.

Protecting Individual Plaintiffs' anonymity is all the more warranted to the extent that children are involved in this case.

Plaintiffs W.M.R.O., C.C.R.O., and N.G.R.L. are themselves minor children who face serious risks of harm in their countries of origin. *See* W.M.R.O. Decl. ¶ 6, C.C.R.O. Decl. ¶¶ 6-9 (Plaintiffs W.M.R.O. and C.C.R.O. were visited by men who threatened to kill their entire family because of their brother's sexual orientation); N.G.R.L. Decl. ¶¶ 2, 5 (Plaintiff N.G.R.L. has been repeatedly raped by her stepfather). The Federal Rules of Civil Procedure and the Local Rules of this Court mandate that the identities of these minor Plaintiffs be shielded from disclosure. Fed. R. Civ. P. 5.2(a); Local Civ. R. 5.4(f)(2) (requiring use of initials to refer to minor children in Court filings). This Court also frequently has recognized the Court's paramount interest in protecting anonymity in similar circumstances. *See, e.g.*, Mem. & Order, *S.M.S.R.*, Case No. 18-2838-RDM, Dkt. 2 at *6 (finding that for lawsuit initiated by an asylum-seeking mother and her minor son, "Plaintiffs' interests in anonymity are especially acute" given the involvement of a child).

Plaintiffs K.M.V.M. and M.Y.R.B. likewise are concerned about protecting their minor children from violence in the event that their own names are disclosed. As detailed in her concurrently-filed declaration, Plaintiff K.M.V.M. and her daughter face threats from a gang in the event their identities are exposed in litigation or they are forcibly returned to Honduras, where gang members repeatedly threatened to kill them because K.M.V.M.'s brothers alerted the police to the gang's activities. K.M.V.M. Decl. ¶¶ 5, 11-14. Similarly, Plaintiff M.Y.R.B. and

her son received death threats from the Barrio 18 gang. M.Y.R.B. Decl. ¶¶ 3, 6, 8. Again, this Court repeatedly has recognized the critical importance of protecting party identities where disclosure would implicate risks to children. *See U.S. Dep't of State*, 2015 WL 9647660, at *3 (anonymity is favored "when the interests of minors are involved because children are perceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation" (internal quotation marks and citation omitted)).

### IV.   Defendants are Government officials and agencies.

Allowing Individual Plaintiffs to proceed pseudonymously is especially appropriate because Defendants are Government officials sued in their official capacities. "When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Chao*, 587 F. Supp. 2d at 99 n.9 (internal quotation marks omitted); *see also, e.g.*, Mem. & Order, *S.M.S.R.*, Case No. 18-2838-RDM, Dkt. 2 at *6 ("[A]llowing the plaintiffs to proceed under pseudonyms will have no impact on any private rights, as the only defendants are government agencies and officers."). Moreover, Plaintiffs' identities already are known to Defendants in connection with Individual Plaintiffs' asylum applications, detention, and fear interviews, such that "[a]llowing the plaintiffs to proceed pseudonymously thus will not compromise the defendants' ability to defend this action and poses little risk of unfairness to the opposing party." *Id.* (internal quotation marks and citation omitted); *see also, e.g.*, *U.S. Dep't of State*, 2015 WL 9647660, at *3 (Government was unlikely to be prejudiced by plaintiff's pseudonymous filing because it had "long been in possession" of plaintiff's immigration application and was "fully apprised of all relevant information"); *Al Otro Lado*, 2017 WL

11

6541446, at *6 (finding no prejudice to Government defendants who "know the Individual Plaintiffs' names" and "have the information they need to defend against the claims").

## V. Defendants will not be prejudiced if Plaintiffs proceed anonymously.

Defendants will not suffer any prejudice if Individual Plaintiffs are allowed to proceed anonymously. As discussed above, Defendants are Government officials and agencies and thus are unlikely to be prejudiced by the nondisclosure of Individual Plaintiffs' specific identities. The primary dispute in this case turns on the legality of the Rule, and the Government's ability to defend that Rule should not be affected by its knowledge of Plaintiffs' identities.

For the same reason, the public interest is not served by disclosing Individual Plaintiffs' identities. While the public has an interest in seeing important asylum questions litigated, that interest in no way demands that the public obtain sensitive information about the litigants themselves. *See, e.g.*, *J.W. v. D.C.*, 318 F.R.D. 196, 202 (D.D.C. 2016) (permitting student to file anonymously because court documents would allow the public to understand those decisions and hold defendant accountable "regardless of whether the public can identify the parents of the particular student at issue"). Indeed, it would harm the public interest to disclose such information because exposing Individual Plaintiffs' identities would "create[] an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues like the ones raised in this case." *Al Otro Lado*, 2017 WL 6541446, at *7. And Individual Plaintiffs' significant interest in maintaining their anonymity is more than sufficient to overcome any general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, something, even a modest privacy interest, outweighs nothing every time." (internal quotation marks and citation omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs leave to file their Amended Complaint and for Individual Plaintiffs to proceed as parties in this case using pseudonyms. In addition, Plaintiffs request that the Court permit the accompanying Declarations of Individual Plaintiffs to be filed under seal. When and if the Court directs, Plaintiffs will file redacted copies of these materials using pseudonyms on the public docket.

Dated: August 6, 2019

Respectfully submitted,

**HOGAN LOVELLS US LLP**

/s/ Justin W. Bernick

Manoj Govindaiah
RAICES, INC.
802 Kentucky Ave.
San Antonio, TX 78212
Telephone: (210) 222-0964
Facsimile: (210) 212-4856
manoj.govindaiah@raicestexas.org

*Counsel for Plaintiff Refugee and Immigrant Center for Education and Legal Services, Inc.*

Adina Appelbaum* (Bar No. 1026331)
CAPITAL AREA IMMIGRANTS'
RIGHTS COALITION
1612 K Street NW, Suite 204
Washington, DC 20006
Telephone: (202) 899-1412
Facsimile: (202) 331-3341
adina@caircoalition.com

* *Motion for admission forthcoming*

*Counsel for Plaintiff Capital Area Immigrants' Rights Coalition*

Hardy Vieux (Bar No. 474762)
Patricia Stottlemyer (Bar No. 888252536)

Neal K. Katyal (Bar No. 462071)
T. Clark Weymouth (Bar No. 391833)
Craig A. Hoover (Bar No. 386918)
Justin W. Bernick (Bar No. 988245)
Mitchell P. Reich (Bar No. 1044671)
Elizabeth Hagerty (Bar No. 1022774)
Kaitlin Welborn (Bar No. 88187724)
Heather A. Briggs (Bar No. 241719)
Michael J. West* (Bar No. 1616572)
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
neal.katyal@hoganlovells.com
t.weymouth@hoganlovells.com
craig.hoover@hoganlovells.com
justin.bernick@hoganlovells.com
mitchell.reich@hoganlovells.com
elizabeth.hagerty@hoganlovells.com
kaitlin.welborn@hoganlovells.com

Thomas P. Schmidt
Mohan Warusha Hennadige*
390 Madison Avenue
New York, NY 10017
Facsimile: (212) 918-3100
thomas.schmidt@hoganlovells.com

HUMAN RIGHTS FIRST
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 547-5692
Facsimile: (202) 553-5999
vieuxh@humanrightsfirst.org
stottlemyerp@humanrightsfirst.org

*Counsel for Plaintiff Human Rights First*

mohan.warusha-hennadige@hoganlovells.com

* *Motion for admission pending*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 1:19-cv-02117-TJK |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2019, I electronically filed the foregoing document pursuant to the Court's Memorandum Opinion and Order dated August 18, 2019, Dkt. 36, with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

August 18, 2019

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　**HOGAN LOVELLS US LLP**

　　　　　　　　　　　　　　　　　　/s/ Elizabeth Hagerty

　　　　　　　　　　　　　　　　　　555 Thirteenth Street NW
　　　　　　　　　　　　　　　　　　Washington, DC 20004
　　　　　　　　　　　　　　　　　　Telephone: (202) 637-5600
　　　　　　　　　　　　　　　　　　Facsimile: (202) 637-5910
　　　　　　　　　　　　　　　　　　elizabeth.hagerty@hoganlovells.com