**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-02117 (TJK) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**MOTION AND STATEMENT OF POINTS AND AUTHORITIES OF PROFESSORS OF
IMMIGRATION LAW FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE
SUPPORTING PLAINTIFFS**

Pursuant to Rule 7(b) of the Federal Rules of Civil Procedure and this Court's Local Civil

Rule (LCvR) 7(a), Professors of Immigration Law hereby respectfully request leave to file an

amicus curiae brief in support of Plaintiffs' position that the Asylum Eligibility and Procedural

Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) ("third country rule") is an invalid

interpretation of the Immigration and Nationality Act ("INA").  The reasons for this request are as

follows:

**1.     Interests and Expertise of Amici Curiae**:  Amici curiae are law professors who

teach and publish scholarship about United States immigration law.  Amici have collectively

studied the implementation and history of the INA for decades, and have written extensively on

the topic.  They accordingly have an abiding interest in the proper interpretation and administration

of the Nation's immigration laws, particularly the INA.  Amici respectfully submit that their

proposed brief could aid this Court's consideration by placing the current dispute in the broader

context and history of relevant immigration statutes.

**2.**     **The Court's Broad Discretion**:  This Court is vested with broad discretion to determine whether to allow a non-party to participate as amicus curiae.  *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996) (citing cases).  Courts will generally grant leave to appear as amicus curiae where "the information offered is 'timely and useful.'"  *Id.*

**3.**     **Consent of the Parties**:  Pursuant to LCvR 7(o), counsel for Plaintiffs indicated that they consent to this Motion.  Defendants oppose because amici propose filing their brief the same day Defendants' brief is due, providing no chance to respond.

**4.**     **Application of Local Rules**:  This Motion is filed, and the brief itself would be filed, pursuant to LCvR 83.2(c)(1), which permits a non-member of the Bar of this Court who is "a member in good standing of the bar of any United States Court or of the highest court of any State" to file papers in this Court if the non-member is joined as counsel of record by "a member in good standing of the Bar of this Court."  Amicus curiae counsel Peter S. Margulies is not a member of the Bar of this Court, but is a member in good standing of the Bar of New York, admitted 1982, and Rhode Island, admitted 2002.  Amicus curiae counsel Shoba Sivaprasad Wadhia is not a member of the Bar of this Court, but is a member in good standing of the Bar of Maryland, admitted 2000, and New Jersey, admitted 2000.  Amicus curiae counsel Alan E. Schoenfeld is not a member of the Bar of this Court, but is a member in good standing of the Bar of New York, admitted 2007.

Amicus curiae counsel Kevin M. Lamb and Tara E. Levens are members in good standing of the Bar of this Court.

## CONCLUSION

For the reasons set forth above, Professors of Immigration Law respectfully ask this Court to grant its Motion for Leave to File a brief as amicus curiae.  The brief is attached hereto as Exhibit A.

Respectfully submitted,

/s/  Kevin M. Lamb

PETER S. MARGULIES
ROGER WILLIAMS UNIVERSITY
   SCHOOL OF LAW[*]
10 Metacom Avenue
Bristol, RI  02809
(401) 254-4564


SHOBA SIVAPRASAD WADHIA
PENN STATE LAW[*]
329 Innovation Blvd., Suite 118
University Park, PA  16802
(814) 865-3823

KEVIN M. LAMB
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6249


ALAN E. SCHOENFELD
TARA E. LEVENS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800


August 28, 2019

---

[*]    University affiliations are listed solely for informational purposes.

## INDEX OF AMICI[1]

Sabrineh Ardalan, Harvard Law School

Jon Bauer, University of Connecticut School of Law

Lenni B. Benson, New York Law School

Jennifer M. Chacón, UCLA School of Law

Michael J. Churgin, University of Texas School of Law

Alina Das, New York University School of Law

Jill E. Family, Widener University Commonwealth Law School

Niels W. Frenzen, USC Gould School of Law

Maryellen Fullerton, Brooklyn Law School

Lauren Gilbert, St. Thomas University School of Law

William Gill, Lincoln Memorial University Duncan School of Law

Pratheepan Gulasekaram, Santa Clara University School of Law

Lindsay M. Harris, University of the District of Columbia David A. Clarke School of Law

Mary Holper, Boston College Law School

Margaret Hu, Washington and Lee University School of Law

Anil Kalhan, Drexel Kline School of Law

Daniel Kanstroom, Boston College Law School

Jennifer Lee Koh, UC Irvine School of Law

Matthew Lindsay, University of Baltimore School of Law

Peter S. Margulies, Roger Williams University School of Law

Peter L. Markowitz, Benjamin N. Cardozo School of Law

---

[1]    University affiliations are listed solely for informational purposes.

M. Isabel Medina, Loyola University New Orleans College of Law

Vanessa H. Merton, Pace University Elisabeth Haub School of Law

Michael A. Olivas, University of Houston Law Center

Jaya Ramji-Nogales, Temple University Beasley School of Law

Jayesh Rathod, American University Washington College of Law

Andrew I. Schoenholtz, Georgetown University Law Center

David B. Thronson, Michigan State University College of Law

Philip L. Torrey, Harvard Law School

Shoba Sivaprasad Wadhia, Penn State Law

Deborah M. Weissman, UNC School of Law

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS'  )
RIGHTS COALITION, *et al.*,  )
                                  )
           Plaintiffs,  )
                                  )
     v.  )     Case No. 1:19-cv-02117 (TJK)
                                  )
DONALD J. TRUMP, in his official  )
capacity as President of the United States,  )
*et al.*,  )
           Defendants.  )

## BRIEF FOR PROFESSORS OF IMMIGRATION LAW AS AMICI CURIAE IN
## SUPPORT OF PLAINTIFFS

PETER S. MARGULIES
ROGER WILLIAMS UNIVERSITY
   SCHOOL OF LAW[*]
10 Metacom Avenue
Bristol, RI  02809
(401) 254-4564

SHOBA SIVAPRASAD WADHIA
PENN STATE LAW[*]
329 Innovation Blvd., Suite 118
University Park, PA  16802
(814) 865-3823

KEVIN M. LAMB
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6249

ALAN E. SCHOENFELD
TARA E. LEVENS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

August 28, 2019

---

[*]    University affiliations are listed solely for informational purposes.

## TABLE OF CONTENTS

INTEREST OF AMICI ............................................................................................................1

SUMMARY OF THE ARGUMENT ......................................................................................1

ARGUMENT ..........................................................................................................................2

I.     The Third Country Asylum Rule Disregards the Firm Resettlement Doctrine's 70-
Year History............................................................................................................2

     A.     Post–World War II Refugees and the Origins of Firm Resettlement ....................2

     B.     Congress Responds to the Post-War Crisis............................................................3

     C.     Firm Resettlement Through the Prism of Congress's Repeated Efforts to
Aid Refugees After World War II .........................................................................4

     D.     Case Law and Current Statute and Regulations....................................................6

II.    The Third Country Asylum Rule Fails to Meet the Rigorous Criteria Required for
Safe Third Country Agreements .............................................................................7

CONCLUSION........................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of A-G-G-,*
    25 I & N Dec. 486 (BIA 2011) ........................................................................................6

*Rosenberg v. Yee Chien Woo*,
    402 U.S. 49 (1971)....................................................................................................1, 3, 4

**Statutes, Rules, and Regulations**

8 C.F.R. § 208.15 ...............................................................................................................6

8 U.S.C. § 1158 ..................................................................................................................8

8 U.S.C. § 1158(a)(1)..........................................................................................................1

8 U.S.C. § 1158(a)(2)(A) ................................................................................................1, 7

8 U.S.C. § 1158(b)(2)(A)(vi) .......................................................................................1, 2, 6

FED. R. APP. P. 29(a)(4)(E) .................................................................................................1

Pub. L. No. 81-555, 64 Stat. 219 (1950)..........................................................................3, 5

Pub. L. No. 83-203, 67 Stat. 400 (1953)..............................................................................3

Pub. L. No. 86-648, 74 Stat. 504 (1960)..............................................................................5

**Legislative Material**

S. Rep. No. 80-950.........................................................................................................2, 3

S. Rep. No. 86-1651...........................................................................................................5

**Executive Material**

Message from the President Relative to Urging the Liberalization of Some of Our
    Existing Restrictions upon Immigration, H.R. Doc. No. 86-360 (1960) ...................................5

President Harry S. Truman, *Signing of the Displaced Persons Act of 1948-*
    *Statement by the President,* 19 Dep't St. Bull. 21 (1948)....................................................4, 5

**Other Material**

Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150,
    https://treaties.un.org/doc/Publication/UNTS/Volume%20189/v189.pdf ...............................3

Government of Canada, *Agreement on Safe Third Country* (December 5, 2002),
    https://www.refworld.org/pdfid/42d7b9944.pdf...................................................................7, 8

Sloane, *An Offer of Firm Resettlement*, 36 Geo. Wash. Int'l L. Rev. 47 (2004) ............................3

USCIS, *Report: U.S.-Canada Safe Third Country Agreement* (Nov. 16, 2006),
    https://www.uscis.gov/unassigned/us-canada-safe-third-country-agreement...........................8

## INTEREST OF AMICI[1]

Amici curiae are law professors who teach and publish scholarship about United States immigration law and, accordingly, maintain an abiding interest in the proper interpretation and administration of the Nation's immigration laws.

## SUMMARY OF THE ARGUMENT

The new third country asylum rule is inconsistent with the text, structure, and history of the asylum provisions in the Immigration and Nationality Act (INA). The statute expressly provides broad eligibility for asylum seekers, stating that "[a]ny alien who is physically present in the United States or who arrives in the United States … irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1) (emphasis added). By imposing a categorical bar on persons fleeing persecution who have entered the United States at our southern border for anyone who passed through another country before entering the United States, the new rule exceeds the parameters that Congress set for two express statutory bars on asylum: claims by asylum seekers who have "firmly resettled" in another country prior to their seeking protection in the United States, 8 U.S.C. § 1158(b)(2)(A)(vi), and claims by foreign nationals covered by safe third country agreements, *id*. § 1158(a)(2)(A). While these two mandatory bars can have adverse effects on asylum seekers, the safe third country agreement and firm resettlement bars include important constraints that the new rule ignores. *See Rosenberg v. Yee Chien Woo*, 402 U.S. 49, 57 n.6 (1971) (noting that firm resettlement doctrine does not preclude asylum claim by victim whose flight from persecution includes mere "stops along the way" prior to finding a permanent haven from harm).

---

[1] Amici state that Plaintiffs have consented to their timely filing of this brief. Defendants oppose because amici propose filing their brief the same day Defendants' brief is due, providing no chance to respond. Amici further state, pursuant to LCvR 7(o) and Federal Rule of Appellate Procedure 29(a)(4)(E), that no counsel for a party authored this brief in whole or in part, and no person other than amici curiae or their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

**ARGUMENT**

I.   **The Third Country Asylum Rule Disregards the Firm Resettlement Doctrine's 70-Year History**

The concept of firm resettlement was a fixture in both international and U.S. refugee law long before the Refugee Act of 1980 or the concept's current home in the asylum provisions of the Immigration and Nationality Act (INA).  8 U.S.C. § 1158(b)(2)(A)(vi).  The development of firm resettlement in the crucible of the post–World War II refugee crisis sheds particular light on the new third country rule's marked departure from that doctrine.

A.   **Post–World War II Refugees and the Origins of Firm Resettlement**

Firm resettlement had its origins in the aftermath of World War II, in which decimated Central European capitals such as Vienna and Berlin teemed with hundreds of thousands of refugees and displaced persons.  The victorious allies, including the United States, faced the problem of finding permanent homes for these survivors of the global conflict's carnage and the relentless persecution engineered by Nazi Germany and its collaborators.  Acting through the new United Nations General Assembly, the United States and its allies, along with many other states, pooled their efforts in a multinational entity called the International Refugee Organization (IRO).  *See Displaced Persons in Europe*, S. Rep. No. 80-950, at 2 (as reported by S. Comm. on the Judiciary, Mar. 2, 1948).

Acting under this U.N. mandate, the IRO assumed responsibility for assisting refugees in finding new homes.  To aid in resource allocation, the IRO fashioned the concept of firm resettlement, which allied powers such as the United States soon adopted in the enactment of domestic legislation for refugee aid.  S. Rep. No. 80-950, at 9.  The concept connoted a permanence of status and protection that would require concerted and diligent efforts by the IRO and its member states.

B.       **Congress Responds to the Post-War Crisis**

Congress used the term "firmly resettled" in the Displaced Persons Act of 1948, S. Rep. No. 80-950, at 50, and continued to use that term in further legislation that addressed persistent refugee needs in the post-war era.  For example, Congress again expressly included language covering those "not … firmly resettled" in its 1950 Act to Amend the Displaced Persons Act of 1948.  *See* Pub. L. No. 81-555, § 2(c), 64 Stat. 219 (1950).  Congress also expressly referred to the term in the Refugee Relief Act of 1953, Pub. L. No. 83-203, § 2(a), 67 Stat. 400.

Indeed, by the early 1950s, the contours of firm resettlement had crystallized in international law.  The 1951 Convention Relating to the Status of Refugees, which the United States adopted when it ratified the 1967 Refugee Protocol, included the same focus on resource allocation that had driven the efforts of the IRO and informed Congress's efforts to aid displaced persons.[2]  The 1951 Refugee Convention excluded from coverage any "person who is recognized by the competent authorities of the country in which he has taken residence as having the *rights and obligations* which are attached to the possession of the nationality of that country."  Refugee Convention, art. 1(E), at p.156 (emphasis added).  In case this formulation was too vague, the Convention also presented a more formal alternative specifically tied to the acquisition of citizenship, which excluded any person who "has acquired a new nationality, and enjoys the protection of the country of his new nationality."  *Id.*, art. 1(C)(3), at p.154.

Refugee protections in the 1950s and 1960s underscored permanence and stability at the heart of the firm resettlement criterion.  *See Rosenberg v. Yee Chien Woo*, 402 U.S. 49, 55-56 (1971).  In *Rosenberg*, the Court noted that the petitioner was a Chinese national who had fled

---

[2]        Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150 ("Refugee Convention"), https://treaties.un.org/doc/Publication/UNTS/Volume%20189/v189.pdf; *see also* Sloane, *An Offer of Firm Resettlement*, 36 Geo. Wash. Int'l L. Rev. 47, 49-50 (2004) (discussing history).

China for Hong Kong several years after the Communist regime assumed power and had lived

there for six years, starting a business that had led to promotional travel to the United States.  *Id.*

at 50.  The Court observed that the petitioner, while he was not a British or Hong Kong national,

had "valid Hong Kong identity papers enabling him to return and live there."  *Id.* at 56 n.5.

According to the Court, these enduring rights could indicate that he was part of a fortunate group

of individuals who formerly met the refugee definition, but were now firmly resettled, because

they had "found shelter in another nation and had begun to build new lives."  *Id.* at 56.

To stress the narrow scope of the firm resettlement bar, the Court addressed the reality of

refugees' travails.  As the Court observed, firm resettlement "does not exclude from refugee status

those who have fled from persecution and who make their flight in successive stages. … Certainly

many refugees make their escape to freedom from persecution in successive stages and come to

this country only after stops along the way.  Such stops do not necessarily mean that the refugee's

aim to reach these shores has in any sense been abandoned."  *Rosenberg*, 402 U.S. at 57 n.6.  The

third country rule would bar many of today's refugees, who have also had "stops along the way"

in their flight from persecution.

### C.    Firm Resettlement Through the Prism of Congress's Repeated Efforts to Aid Refugees After World War II

Perhaps the best indication that Congress fully appreciated the difficulty of firm

resettlement was the pattern of legislative efforts over time to resolve the refugee crisis caused by

World War II.  President Truman predicted in his signing statement for the 1948 legislation that—

given the challenges that the global conflict had created—Congress's first foray into this area

would be but a first step.[3]   Indeed, President Truman criticized as unduly rigid restrictions

---

[3]       *See Signing of the Displaced Persons Act of 1948–Statement by the President*, 19 Dep't St. Bull. 21-22 (1948) ("Truman 1948 Signing Statement").

Congress had imposed on refugee assistance and Congress's reluctance to loosen the national origin quotas that made special legislation imperative. *See* Truman 1948 Signing Statement 21.

Amendments by Congress in 1950 were an acknowledgment of President Truman's prescience, as they expanded refugee protections. Rather than limit protections to victims of persecution who had entered allied zones in Germany, Austria, or Italy by December 1945—a cut-off date that President Truman had criticized as arbitrary—the 1950 Act protected persons who had found their way to the allied zones by January 1, 1949. *See* Act to Amend the Displaced Persons Act of 1948, § 2(c)(1), 64 Stat. 219. However, more work remained, as President Eisenhower declared in *1960*, in surveying the ongoing European crisis that he knew so well from his wartime experience. *Message from the President Relative to Urging the Liberalization of Some of Our Existing Restrictions upon Immigration*, H.R. Doc. No. 86-360, at 2 (1960). In conjunction with the United Nations, President Eisenhower declared 1960 to be World Refugee Year. As the Senate Judiciary Committee Report accompanying the 1960 Refugee Fair Share Act, Pub. L. No. 86-648, 74 Stat. 504, observed, "[t]here remain in Europe at the present time a residue of displaced persons and refugees" covered by the UNHCR's *1950* mandate. *See* S. Rep. No. 86-1651, at 5 (1960).

Addressing this persistent "residue" required an "internationally concerted effort … to find resettlement opportunities." S. Rep. No. 86-1651, at 5-6. Congress's "primary purpose," which it shared with the United Nations, was to "close the several refugee camps still maintained after the *15 years* which have elapsed since the end of World War II." *Id.* at 6 (emphasis added). The need for continued congressional action 15 years after the end of the war illustrated the difficulty of the resettlement task. Indeed, the ongoing need to address refugees' persistent problems is the ineluctable backdrop for all firm resettlement efforts.

### D.    Case Law and Current Statute and Regulations

Congress enacted this provision in 1996, and in so doing reinforced the firm resettlement doctrine's longtime values of permanence and safety.  The current language of the INA provides that an applicant is ineligible for asylum if the applicant "was firmly resettled in another country prior to arriving in the United States."  8 U.S.C. § 1158(b)(2)(A)(vi).  In 2000, INS published the following regulations defining "firm resettlement":  "An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement."  8 C.F.R. § 208.15.

In order for the firm resettlement doctrine to be triggered, the government must at a minimum prove that an asylum applicant has an offer of permanent residency from a third country. *See Matter of A-G-G-*, 25 I & N Dec. 486, 494 (BIA 2011).  The regulations also include two exceptions to the offer test:  "(a) That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or (b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled."  8 C.F.R. § 208.15.

Even in situations where the noncitizen has received an offer of permanent residence, the first exception underscores an intent to protect those who passed through a third country during the course of their flight and entry into the United States.  In the case of asylum seekers affected by the new third country asylum rule, the vast majority are passing through Mexico as a "necessary consequence" of their flight from persecution and have remained only as long as necessary.  The

new third country asylum rule thus ignores the statutory, regulatory and judicial decisions that guide firm resettlement and instead superimposes a rule that clashes with the INA.

## II.     The Third Country Asylum Rule Fails to Meet the Rigorous Criteria Required for Safe Third Country Agreements

Just as the third country rule sidesteps the constraints of the well-established definition of firm resettlement, the new rule subverts the safe third country agreements authorized by Congress in 8 U.S.C. § 1158(a)(2)(A).  The United States has been exceptionally sparing in entering into such agreements, concluding a pact with only one country:  Canada.  *See* Agreement on Safe Third Country, U.S.-Can., Dec. 5, 2002 ("Canada Third Country Agreement").[4]  That agreement features exhaustive safeguards for asylum seekers and methodical monitoring from both parties that ensure that removal of foreign nationals under the agreement will comply with Congress's goal of protection from persecution and "access to a full and fair procedure for determining a claim to asylum."  8 U.S.C. § 1158(a)(2)(A).  The new rule circumvents all of these protections.

The U.S.-Canada agreement is a lengthy, detailed memorandum of understanding that expressly refers to the respective countries' "generous systems of refugee protection … [and] traditions of assistance to refugees and displaced persons abroad, consistent with the principles of international solidarity that underpin the international refugee protection system."  Each party asserted that it was "determined to safeguard … access to a full and fair refugee status determination procedure."  For example, the agreement requires each party to afford an opportunity to each claimant to have an agent of her choice present at appropriate phases of proceedings.  *See* Canada Third Country Agreement (Statement of Principles No. 1).

In addition, each party will provide:  (1) "an opportunity for the applicant to understand the basis for the proposed determination"; (2) a chance to correct the record and offer further

---

[4]         https://www.refworld.org/pdfid/42d7b9944.pdf.

information; and (3) review by an independent decisionmaker. Canada Third Country Agreement (Statement of Principles No. 4). Both Canada and the United States have also committed to a latticework of oversight mechanisms. In Canada's case, these mechanisms include access to Canada's Federal Court, a formal dispute resolution mechanism for the two countries, and "partnership" with the UNHCR. *See* USCIS, *Report: U.S.-Canada Safe Third Country Agreement*, Ch. 4(3) (Nov. 16, 2006).[5]

In sum, the U.S.-Canada agreement pooled the efforts of two states with longtime commitments to the rule of law. It relied on close collaboration with UNHCR, the world's leader on refugee protections. Moreover, it provided a systematic process for adjudication of exceptions to the agreement, backed up by strong procedural protections and consultation with established outside actors.

Unlike the safe third country agreements authorized under § 1158, the new third country asylum rule is neither safe nor an agreement. Instead, the rule bars asylum for those who have not filed for asylum in a third country, without any inquiry or findings—general *or* specific—about whether that country can protect asylum seekers from persecution or establish a fair system for adjudicating asylum claims. The new rule thus provides no sound statutory basis for circumventing the INA asylum provision's current safeguards with a unilaterally imposed categorical bar. In fact, that new categorical bar undermines the safeguards that Congress painstakingly built into 8 U.S.C. § 1158.

## <u>CONCLUSION</u>

For the aforementioned reasons, this Court should grant the Plaintiffs' request for Preliminary Injunction.

---

[5]     https://www.uscis.gov/unassigned/us-canada-safe-third-country-agreement.

Respectfully submitted,

PETER S. MARGULIES
ROGER WILLIAMS UNIVERSITY
    SCHOOL OF LAW[*]
10 Metacom Avenue
Bristol, RI  02809
(401) 254-4564


SHOBA SIVAPRASAD WADHIA
PENN STATE LAW[*]
329 Innovation Blvd., Suite 118
University Park, PA  16802
(814) 865-3823

/s/  Kevin M. Lamb
KEVIN M. LAMB
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6249


ALAN E. SCHOENFELD
TARA E. LEVENS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 295-6471

August 28, 2019

---

[*]    University affiliations are listed solely for informational purposes.

**INDEX OF AMICI**[6]

Sabrineh Ardalan, Harvard Law School

Jon Bauer, University of Connecticut School of Law

Lenni B. Benson, New York Law School

Jennifer M. Chacón, UCLA School of Law

Michael J. Churgin, University of Texas School of Law

Alina Das, New York University School of Law

Jill E. Family, Widener University Commonwealth Law School

Niels W. Frenzen, USC Gould School of Law

Maryellen Fullerton, Brooklyn Law School

Lauren Gilbert, St. Thomas University School of Law

William Gill, Lincoln Memorial University Duncan School of Law

Pratheepan Gulasekaram, Santa Clara University School of Law

Lindsay M. Harris, University of the District of Columbia David A. Clarke School of Law

Mary Holper, Boston College Law School

Margaret Hu, Washington and Lee University School of Law

Anil Kalhan, Drexel Kline School of Law

Daniel Kanstroom, Boston College Law School

Jennifer Lee Koh, UC Irvine School of Law

Matthew Lindsay, University of Baltimore School of Law

Peter S. Margulies, Roger Williams University School of Law

Peter L. Markowitz, Benjamin N. Cardozo School of Law

---

[6]     University affiliations are listed solely for informational purposes.

M. Isabel Medina, Loyola University New Orleans College of Law

Vanessa H. Merton, Pace University Elisabeth Haub School of Law

Michael A. Olivas, University of Houston Law Center

Jaya Ramji-Nogales, Temple University Beasley School of Law

Jayesh Rathod, American University Washington College of Law

Andrew I. Schoenholtz, Georgetown University Law Center

David B. Thronson, Michigan State University College of Law

Philip L. Torrey, Harvard Law School

Shoba Sivaprasad Wadhia, Penn State Law

Deborah M. Weissman, UNC School of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-02117 (TJK) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

This matter is before the Court pursuant to the Motion of the Professors of Immigration Law for Leave to File an Amicus Curiae Brief.  Accordingly, and for good cause shown, the Motion is hereby GRANTED.

SO ORDERED, this __ day of ____, 2019.

_____
Hon. Timothy J. Kelly
United States District Judge