# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*,

                    Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

                    Defendants.

Civil Action No. 1:19-cv-02117-TJK

I.A., *et al.*,

                    Plaintiffs,

v.

WILLIAM BARR, in his official capacity as Attorney General of the United States, *et al.*,

                    Defendants.

Civil Action No. 1:19-cv-02530

## DEFENDANTS' SUPPLEMENTAL BRIEF

Defendants' submit this supplemental brief to address two issues: (1) the standards governing adjudication of motions for summary judgment in an Administrative Procedure Act ("APA") case, and (2) the appropriate remedy, if any, should the court find any merit to Plaintiffs' claims that the rule at issue in this case, Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019), is unlawful. As explained below, because this is an APA case, the Court's review is limited to the administrative record produced by Defendants, and none of Plaintiffs' evidentiary matter submitted as part of their motions for a temporary restraining order

or preliminary injunctions may be considered, other than to demonstrate jurisdiction. Moreover, should the Court rule in Plaintiffs' favor on the merits, the Court's remedial authority is limited by Article III of the U.S. Constitution, equitable principles, and 8 U.S.C. § 1252, such that the Court may, at most, set aside the rule at issue in this case as to the Plaintiffs over which the Court otherwise has jurisdiction only.

## I.   Plaintiffs' May Not Rely on Extra-Record Materials in Support of their Merits Claims

In cases—like this one—seeking review of substantive agency action under the APA, summary judgment "serves as the mechanism for deciding, as a matter of law, whether agency action is ... consistent with the APA standard of review." *Sierra Club v. Mainella*, 459 F. Supp.2d 76, 90 (D.D.C. 2006) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)). Accordingly, "when a party seeks review of agency action under the APA," the usual summary judgment standard does not apply and "the district judge" instead "sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). There is no factual "record" in such a case, other than the administrative record before the agency. *See, e.g.*, *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made."). Accordingly, the Court must disregard any extra-record citations in support of Plaintiffs' merits arguments. *See* ECF Nos. 41-1 at 9-30, 46 at 10-20, *CAIR v. Trump*, No. 19-cv-02117; ECF Nos. 6 at 12-33, 21 at 10-22, *I.A. v. Trump*, No. 19-cv-02530.

Moreover, to the extent that Plaintiffs submitted extra-record evidentiary matter in support of their required showing on a motion for preliminary injunction—including demonstrating irreparable harm and that the balance of equities favors them, and the appropriate scope of

injunctive relief, ECF Nos. 3-2, 3-3, 31-3 to 3-11, 42-2 to 41-5, 53-1, *CAIR v. Trump*, No. 19-cv-02117; ECF Nos. 6-1 to 6-3, 24-1 to 24-4, 31-1 to 31-3, 41, *I.A. v. Trump*, No. 19-cv-02530—these assertions are irrelevant to resolution of the merits of a motion for summary judgment in a record case. *See, e.g.*, *IMS, P.C.*, 129 F.3d at 623. The parties' agreement to treat the motions for preliminary injunction as motions for summary judgment "moots the Court's consideration of the preliminary injunctive factors because the court will enter judgment on the merits." *Children's Hosp. Ass'n of Texas v. Azar*, 300 F. Supp. 3d 190, 202 (D.D.C. 2018), *rev'd on other grounds*, 933 F.3d 764 (D.C. Cir. 2019). The only exception to this rule, as Plaintiffs appear to concede, ECF 57 at 1-2 (noting only the exception to the record rule relevant to establishing Article III standing), ECF No. 46 at 6 (similar), *CAIR v. Trump*, No. 19-cv-02117; ECF Nos. 6 at 12-33, 21 at 10-22, *I.A. v. Trump*, No. 19-cv-02530, is that the Court may consider extra-record evidence submitted for the purposes of demonstrating the Court's jurisdiction over this case. *See, e.g.*, *Chesapeake Climate Action Network v. Export-Import Bank of the U.S.*, 78 F. Supp. 3d 208, 217 (D.D.C. 2015) ("Although judicial review of agency action is typically confined to the administrative record, where there is not sufficient evidence of standing in the record because the question was not before the agency, plaintiffs may submit extra-record evidence to establish standing.").

## II.  The Court's Review of Plaintiffs' APA Claims is Highly Deferential

The Court's review under the APA is also "limited," *EarthLink, Inc. v. FCC*, 462 F.3d 1, 9 (D.C. Cir. 2006), and courts may not substitute their "judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Inc. Co.*, 463 U.S. 29, 43 (1983). "'An agency's predictive judgments about areas that are within the agency's field of discretion and expertise are entitled to *particularly deferential* review'" and "need not rest on 'pure factual

determinations.'" *EarthLink, Inc.*, 462 F.3d at 213 (quoting *In re Core Commc'ns, Inc.*, 455 F.3d 267, 282 (D.C. Cir. 2006) & *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 594 (1981)) (emphasis in original). An agency thus "does not engage in arbitrary and capricious decision-making by making 'predictive judgment[s]' or even by relying on '[i]ncomplete data.'" *New York v. NRC*, 824 F.3d 1012, 1022 (D.C. Cir. 2016); *see Sacora v. Thomas*, 628 F.3d 1059, 1068-69 (9th Cir. 2010) (it is "reasonable for the [agency] to rely on its expertise" to arrive at its conclusions, even if those conclusions are not supported with "empirical research."). The agency need only articulate "a rational connection between the facts found and the choice made," *Motor Vehicle*, 463 U.S. at 43. And in cases like this one, which does not concern a statutory gap but rather the express grant of authority to prescribe rules and standards, *see* Gov't Br. 28-37 (ECF No. 43), the agency's "judgment [is owed] more than mere deference of weight," and courts give the agency interpretation controlling weigh unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Lindeen v. Securities and Exchange Commission*, 825 F.3d 646, 656 (D.C. Cir. 2016).

These principles also apply to the Court's assessment of the Defendants' invocation of "good cause" to forgo notice and comment procedures under 5 U.S.C. § 553(b)(3)(B). Although the Court reviews "the agency's *legal* conclusion of good cause ... de novo," the court "defer[s] to an agency's factual findings and expert judgments therefrom, unless such findings and judgments are arbitrary and capricious." *Sorenson Commc'ns Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014).

These principles of deference are heightened in the context of the Defendants' invocation of the "foreign affairs" exception to notice and comment under 5 U.S.C. § 553(a)(1). In contrast to "good cause," which requires that the agency "find[]" that "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," 5 U.S.C. § 553(b)(3)(B), the

foreign affairs exception contains no such requirement. Instead, 5 U.S.C. § 553(a)(1) requires only that the challenged rule involve a "foreign affairs function." "[T]he very nature of executive decisions as to foreign policy is political, not judicial. . . . They are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility." *See Chicago & S. Air Lines, Inc. v. Waterman SS Corp.*, 333 U.S. 103, 111 (1948). Accordingly, review of Defendants' invocation of its foreign affairs authority is even more deferential than review of the Defendants' invocation of good cause. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010) ("The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions.").

### III. Should the Court Conclude the Rule is Unlawful, It May Not Enjoin the Rule Nationwide

As Defendants have already explained, the rule at issue in this case is a valid exercise of the Executive Branch's authority to promulgate rules creating categorical limitations on asylum eligibility, Gov't Br. 28-38, was properly promulgated as an interim final rule under both the good cause and foreign-affairs exceptions to notice-and-comment rulemaking, *id.* at 38-44, and reflects sound and well-supported decision-making. *Id.* at 44-50. Moreover, on September 11, 2019, the Supreme Court stayed in full the injunction issued by the district court in *East Bay Sanctuary Covenant v. Trump*, 385 F. Supp. 3d 922, 957-58 (N.D. Cal. 2019), pending appeal of that decision and the disposition of any petition for certiorari filed by the government. *See Barr v. East Bay Sanctuary Covenant*, No. 19A320, 2019 WL 4292781 (S. Ct. Sept. 11, 2019).

However, in the event the Court grants summary judgment to Plaintiffs on any of their APA claims, the Court should not issue nationwide injunctive relief, and must limit any relief to the actual parties before the Court. And even if the Court views relief that benefits non-parties

5

appropriate in this case, that relief should be limited to vacatur of the challenged rule, and not include injunctive relief.

*First*, Article III forecloses such relief. Under Article III, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) (citation omitted); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."). Under Article III, where a party's "injury in fact … ha[s] been remedied," to allow the plaintiffs to challenge regulations "apart from any concrete application that threatens imminent harm to [their] interests" would "fly in the face of Article III's injury-in-fact requirement." *Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009). That rule is especially important here, where plaintiffs do "not represent a class, so they [can] not seek to enjoin [an agency regulation] on the ground that it might cause harm to other parties." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 163 (2010).

*Second*, even apart from Article III's jurisdictional constraints, injunctions that go beyond a plaintiff's own injuries exceed the power of a court sitting in equity. The rule in equity is that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *see, e.g.*, *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification.") (alteration in original; quotation marks omitted)); *Virginia Society for Human Life, Inc. v. Federal Election Commission*, 263 F.3d 379, 393 (4th Cir. 2001) ("[p]reventing the [agency] from enforcing [the regulation] against other parties in other circuits does not provide any additional relief to [the plaintiff]").

Longstanding historical practice confirms that injunctions are limited to what is necessary to remedy the plaintiff's injury. It is well established that the scope of a court's statutory authority to enter injunctive relief is circumscribed by the type of relief that was "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999). But the tradition of equity inherited from English law was premised on "providing equitable relief only to parties" because the fundamental role of a court was to "adjudicate the rights of 'individual[s].'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (Thomas, J., concurring) (quoting The Federalist No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961)). As a result, "a plaintiff could not sue to vindicate the private rights of someone else." *Id*. at 2428. It is thus unsurprising that injunctions like the one here "are a recent development emerging for the first time in the 1960s and dramatically increasing in popularity only very recently." *Id*. at 2426.

In contravention of these sound principles, universal injunctions create practical problems for the federal courts and federal litigants. They "prevent[] legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Id.* at 2425); *see United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). They also allow courts and parties to circumvent Federal Rule of Civil Procedure 23, which sets out the prerequisites for certifying a class and for granting relief to such a class. *See L.A. Haven Hospice*, 638 F.3d at 664 (noting that considerations against nationwide injunctions "appl[y] with special force where," as here, "there is no class certification"). And they create an inequitable "one-way ratchet" under which a loss by the government precludes enforcement of the challenged rule everywhere, but a victory by the

government does not preclude other plaintiffs from "run[ning] off to the 93 other districts for more bites at the apple." *City of Chicago v. Sessions*, 888 F.3d 272, 298 (7th Cir. 2018) (Manion, J., concurring in the judgment in part and dissenting in part), *reh'g en banc granted* (No. 17-2991) (June 4, 2018), *reh'g en banc vacated as moot* (No. 17-2991) (Aug. 10, 2018).

*Third*, the APA does not affirmatively authorize nationwide relief in the form of a universal vacatur of the rule. *Cf. Trump*, 138 S. Ct. at 2425 (Thomas, J. concurring) ("No statute expressly grants district courts the power to issue universal injunctions."). The APA provides only that a court may "hold unlawful and set aside agency action." 5 U.S.C. § 706(2). But nothing in section 706(2)'s text specifies whether the rule, if found invalid, should be set aside on its *face* or *as applied* to the challenger. In the absence of a clear statement in the APA that it displaces traditional rules of equity, the court should adopt the narrower reading of the "set aside" language. *See Virginia Society for Human Life*, 263 F.3d at 393 ("Nothing in the language of the APA, however, requires us to exercise such far-reaching power.").  The historical backdrop to the APA's enactment lends further support to this reading. The absence of nationwide injunctions prior to Congress' enactment of the APA in 1946 (and for over fifteen years thereafter) suggests that the APA was not originally understood to authorize courts to issue such broad relief. *See* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417, 438 & n.121 (2017) (noting that the first nationwide injunction issued in the U.S. occurred in 1963 in *Wirtz v. Baldor Electric Company*, 337 F.2d 518 (D.C. Cir. 1963)). Indeed, the APA further provides that in the absence of a special statutory review provision, the proper "form of proceeding" under the APA is a traditional suit for declaratory or injunctive relief. *See* 5 U.S.C. § 703. But declaratory and injunctive remedies are equitable in nature, and, as discussed, equitable

relief traditionally has been limited to determining the rights of the parties before the court.[1] *See*

*supra* 5-6. And the APA's very reference to actions for "declaratory judgments" makes clear that

no injunction—much less a nationwide injunction—is in any sense compelled by the APA when

agency action is held unlawful. *See* H.R. Rep. No. 1980, 79th Cong., 2d Sess. 42 (1946) (referring

to possibility of suits for declaratory relief to "determine the validity or application of a rule or

order"); *see also* S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

*Fourth*, even assuming the APA might provide for universal relief, section 702 provides

that "[n]othing herein (1) affects other limitations on judicial review or the power or duty of the

court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2)

confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly

forbids the relief which is sought." As Defendants have explained, Gov't. Br. 11-28, 8 U.S.C.

§ 1252 "forbids" the universal relief Plaintiffs seek.

To begin, section 1252 forecloses the Plaintiffs—both the individuals or the

organizations—from seeking universal "set aside" relief as to the application of the rule in

expedited removal proceedings. Section 1252(e)(1) provides that "no court may—(A) enter

declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an

---

[1] Defendants acknowledge that *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998) holds that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual [plaintiffs] is proscribed." However, as explained *infra*, the specific INA provisions limiting the Court's authority to enter universal relief distinguish this case from *Nat'l Min. Ass'n*. Moreover, even on its own terms, *Nat'l Min. Ass'n* does not authorize *injunctive* relief, but is limited to *vacatur*. Indeed, the Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would "have [a] meaningful practical effect independent of its vacatur," *Monsanto*, 561 U.S. at 165, a showing Plaintiffs cannot make here where they do "not represent a class," *id.* at 163, and where Plaintiffs present no evidence that the government would not comply with an order of vacatur. *Cf. O.A. v. Trump*, No. CV 18-2718 (RDM), 2019 WL 3536334, at *29 (D.D.C. Aug. 2, 2019) (concluding, even in a class action case not involving some of the jurisdictional provisions at issue in this case, that vacatur was sufficient, and no basis for injunctive relief existed).

alien in accordance with section 1225(b)(1) of this title *except as specifically authorized in a subsequent paragraph of this subsection*." (Emphasis added). As to section 1252(e)(3), the sole remedy authorized is a "determination[]" on the merits of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Such a "determination" is the only form of "declaratory" relief specifically authorized by section 1252(e)(3). But even if section 1252(e)(3) could be understood to authorize vacatur of a regulation a court found invalid as a form of "other equitable relief," the word "determination" would not ordinarily connote injunctive relief, and had Congress intended otherwise it would have used language like that in the Hobbs Act, explicitly empowering a court "to *enjoin* . . . the validity of" agency orders. 28 U.S.C. § 2342 (emphasis added).

Furthermore, section 1252(e)(1)(B) prohibits "certify[ing] a class under Rule 23." As the D.C. Circuit has explained, that means Congress did not "intend[] to permit actions on behalf of a still wider group of aliens, actions in which no class representative appears as a party and the plaintiffs are unconstrained by the requirements of [Rule] 23." *Am. Immigration Lawyers Association v. Reno ("AILA")*, 199 F.3d 1352, 1364 (D.C. Cir. 2000). But universal injunctive or declaratory relief like that sought by Plaintiffs would produce the same result that Congress foreclosed, benefitting hundreds of thousands of aliens "none of whom are parties to the lawsuit," and "unconstrained by the requirements" of Rule 23. *Id*. at 1364. Such an order would also be prohibited by 8 U.S.C. § 1252(f), which provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221-1231],

other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated." *See AILA*, 199 F.3d at 1359 (noting applicability of section 1252(f)(1) in suits under section 1252(e)(3)). Universal set aside relief would do precisely what section 1252(f)(1) forbids, by mandating or barring the use of requirements and standards for future expedited removal proceedings found nowhere in 8 U.S.C. § 1225(b)(1)'s text on behalf of "alien[s] against whom proceedings … have [not yet] been initiated," 8 U.S.C. § 1252(f)(1), and therefore would enjoin or restrain operation of section 1225(b)(1) as written. *See Hamama v. Adducci*, 912 F.3d 869, 879-80 (6th Cir. 2018).

Likewise, section 1252 forecloses universal "set aside" relief as to all aliens in full removal proceedings under 8 U.S.C. § 1229a. As the government has explained, all such aliens must raise their claims through their administrative immigration proceedings, before seeking review in an Article III court. Gov't Br. 21; *see id.* at 21-28. But even were that not so, section 1252(f) again forecloses relief. Here, the individual Plaintiffs ask this Court not only to enjoin application of the rule to them in their ongoing removal proceedings, but to set aside the rule as applied to all aliens, now, and in the future, who may be subject to it. They thus seek to enjoin the rule for beyond the statute's limitations on relief as limited "to the application of [the INA] to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1). Indeed, what Plaintiffs ask this court to do is to re-write 8 U.S.C. 1229a—which governs the standards for relief from removal—to categorically *bar* the government from applying mandatory asylum eligibility bars, a requirement found nowhere in the statute. *See* 8 U.S.C. § 1229a(c) (codifying rules governing "Decision and burden of proof"). But using an injunction or set aside relief to re-write the statute to include additional statutory limitations on the government's authority "that does not exist in the statute" is precisely what section 1252(f) forecloses. *Hamama*, 912 F.3d at 879–80; *see Perez, v.*

*Decker*, No. 18-CV-10683 (AJN), 2019 WL 4784950, at *6 (S.D.N.Y. Sept. 30, 2019) ("Because Congress, in its judgment, chose not to mandate" the relief plaintiffs seek, "an injunction imposing" such a statutory requirement "where the statute is silent would displace that judgment in a way that would enjoin or restrain the method or manner of Section 1229[]'s functioning.").[2]

Fifth, even assuming the organizational Plaintiffs in this case have a cause of action and may challenge the rule, which the government contends they may not, *see* Gov't Br. 11-19, as this Court recognized, it was unlikely that the diversion-of-resources injuries alleged by the organizational plaintiffs are the type of injury "that can warrant emergency [nationwide] relief." *Capital Area Immigrants' Rights Coal. v. Trump*, No. 1:19-CV-02117-TJK, 2019 WL 3436501, at *2 (D.D.C. July 24, 2019). Those same concerns are no different on summary judgment: "the public interest is served by the government being able to conduct its administration of its immigration laws in the lawful ways it sees fit," *id.* at *4, and because "set aside" relief, like injunctive or declaratory relief, is equitable in nature, *see supra* at 8, any such relief with respect to the organizational Plaintiffs should be limited to them. Thus, should the Court believe the organizational Plaintiffs otherwise carry their burden of demonstrating entitlement to summary judgment, relief should be limited to the bona fide clients of the Plaintiff organizations that those Plaintiffs affirmatively identify for the Court.

Finally, even assuming some form of relief is warranted, in light of the Supreme Court's order in *Barr v. East Bay Sanctuary Covenant*, No. 19A320, 2019 WL 4292781 (S. Ct. Sept. 11,

---

[2] To the extent Plaintiffs might suggest that a nationwide remedy is necessary in order to provide uniformity to immigration laws, the foregoing discussion of section 1252 makes clear Congress thought otherwise. In any event, even without section 1252, the fact that a case arises in the "immigration context" does not, absent the requisite showing that nationwide relief is the only way to remedy Plaintiffs' harms, warrant such relief. *See East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *accord City and County of San Francisco v. Trump*, 897 F.3d 1225, 1243–45 (9th Cir. 2018).

2019), staying the effect of a nationwide injunction of the rule in a virtually indistinguishable case in the Northern District of California, the court here should similarly stay the effect of any decision concerning relief pending resolution of *East Bay*. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

## CONCLUSION

For these reasons, the court should not rely on extra-record evidence, must defer to the factual findings of the agencies, and should not issue universal set aside relief.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

SCOTT G. STEWART
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

*s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 306-4293
Email: Erez.R.Reuveni@usdoj.gov

LAUREN C. BINGHAM
PATRICK GLEN
Senior Litigation Counsel

Dated: October 16, 2019                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI