# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:19−cv−02117−TJK

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION et al
v. TRUMP et al
Assigned to: Judge Timothy J. Kelly
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 07/16/2019
Date Terminated: 07/15/2020
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| **CAPITAL AREA IMMIGRANTS' RIGHTS COALITION** | represented by | **Craig Alan Hoover** |
|---|---|---|

represented by **Craig Alan Hoover**
HOGAN LOVELLS
555 13th Street, NW
Washington, DC 20004−1161
(202) 637−5694
Fax: 202−637−5910
Email: craig.hoover@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
ACLU OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106
334−265−2754
Email: kwelborn@aclualabama.org
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Neal Kumar Katyal**
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637−5528
Fax: (202) 637−5910
Email: neal.katyal@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**T. Clark Weymouth**
HOGAN LOVELLS US LLP
555 Thirteenth St. N.W.
Washington, DC 20004
(202) 637−8633
Email: t.weymouth@hoganlovells.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
HOGAN LOVELLS US LLP
390 Madison Ave
New York, NY 10017
212–918–5547
Email: thomas.schmidt@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
U.S. ATTORNEY'S OFFICE
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0101
Fax: 303–454–0411
Email: elizabeth.hagerty@usdoj.gov
*TERMINATED: 01/02/2020*

**Hardy Vieux**
HUMAN RIGHTS FIRST
805 15th Street, NW
Suite 900
Washington, DC 20005
(202) 888–7607
Fax: (202) 543–5999
Email: vieuxh@humanrightsfirst.org
*ATTORNEY TO BE NOTICED*

**Mitchell Pearsall Reich**
HOGAN LOVELLS US LLP
555 Thirteenth St. N.W.
Washington, DC 20004
(202) 637–5833
Email: mitchell.reich@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Patricia Stottlemyer**
HUMAN RIGHTS FIRST
805 15th Street, NW
Suite 900
Washington, DC 20005
(202) 370–3317
Email: StottlemyerP@humanrightsfirst.org
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004

(202) 637–5485
Email: justin.bernick@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.** | represented by | **Craig Alan Hoover** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Manoj Govindaiah**
REFUGEE AND IMMIGRANT CENTER
FOR EDUCATON AND LEGAL
SERVICES
802 Kentucky Avenue
San Antonio, TX 78201
United Sta
210–787–3745
Fax: 210–787–3745
Email: manoj.govindaiah@raicestexas.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Neal Kumar Katyal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**T. Clark Weymouth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Hardy Vieux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mitchell Pearsall Reich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patricia Stottlemyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Z.B.M.**                              represented by    **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**C.C.R.O.**                            represented by    **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)

*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**Y.G.C.**                                            represented by   **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**D.L.R.**                                            represented by   **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**

(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**M.Y.R.B.**                                    represented by    **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**N.G.R.L.**                                    represented by    **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Kaitlin Welborn
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**HUMAN RIGHTS FIRST**                represented by **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**W.M.R.O.**                represented by **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**J.M.M.**                                    represented by   **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

**Plaintiff**

**K.M.V.M.**                                  represented by   **Craig Alan Hoover**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Justin Bernick**
(See above for address)
*LEAD ATTORNEY*

**Kaitlin Welborn**
(See above for address)
*TERMINATED: 04/24/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas P. Schmidt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Hagerty**
(See above for address)
*TERMINATED: 01/02/2020*

V.

**Defendant**

| | | |
|---|---|---|
| **DONALD J. TRUMP**<br>*in his official capacity as President of the*<br>*United States* | represented by | **Erez Reuveni**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division<br>P.O. Box 868<br>Ben Franklin Station<br>Washington, DC 20044<br>(202) 307–4293<br>Fax: (202) 305–7000<br>Email: erez.r.reuveni@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Scott Grant Stewart**<br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 307–6482<br>Fax: (202) 514–8071<br>Email: scott.g.stewart@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Lauren Crowell Bingham**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division<br>P.O. Box 868<br>Ben Franklin Station<br>Washington, DC 20044<br>(202) 616–4458<br>Fax: (202) 305–7000<br>Email: lauren.c.bingham@usdoj.gov |

*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM P. BARR**                              represented by    **Erez Reuveni**
*in his official capacity as Attorney*                            (See above for address)
*General of the United States*                                    *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Scott Grant Stewart**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Lauren Crowell Bingham**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**KEVIN K. MCALEENAN**                           represented by    **Erez Reuveni**
*in his official capacity as Acting*                              (See above for address)
*Secretary of Homeland Security*                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Scott Grant Stewart**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Lauren Crowell Bingham**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**KENNETH THOMAS CUCCINELLI,**                   represented by    **Erez Reuveni**
**II**                                                            (See above for address)
*in his official capacity as Acting Director*                     *LEAD ATTORNEY*
*of U.S. Citizenship and Immigration*                             *ATTORNEY TO BE NOTICED*
*Services*
                                                                  **Scott Grant Stewart**
                                                                  (See above for address)
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Lauren Crowell Bingham**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN P. SANDERS**                              represented by    **Erez Reuveni**
*in his official capacity as Acting*                              (See above for address)

Commissioner of U.S. Customs and
Border Protection

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MATTHEW T. ALBENCE**
*in his official capacity as Acting Director*
*of Immigration and Customs*
*Enforcement*

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMES MCHENRY**
*in his official capacity as Director of the*
*Executive Office for Immigration Review*

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**
*TERMINATED: 08/18/2019*

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF
HOMELAND SECURITY**          represented by   **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. CITIZENSHIP &
IMMIGRATION SERVICES**          represented by   **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. CUSTOMS & BORDER
PROTECTION**          represented by   **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. IMMIGRATION & CUSTOMS ENFORCEMENT**

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**KIDS IN NEED OF DEFENSE (KIND)**

represented by **Mark S. Raffman**
GOODWIN PROCTER LLP
1900 N St NW
Washington, DC 20036
202–346–4259
Email: mraffman@goodwinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PROFESSORS OF IMMIGRATION LAW**

represented by **Kevin Matthew Lamb**
WILMER, CUTLER, PICKERING, HALE & DORR, LLP.
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663–6000
Email: kevin.lamb@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. IMMIGRATION & CUSTOMS ENFORCEMENT**

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**

represented by **Erez Reuveni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Grant Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lauren Crowell Bingham**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**KIDS IN NEED OF DEFENSE (KIND)**

represented by **Mark S. Raffman**
GOODWIN PROCTER LLP
1900 N St NW
Washington, DC 20036
202–346–4259
Email: mraffman@goodwinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**PROFESSORS OF IMMIGRATION LAW**

represented by **Kevin Matthew Lamb**
WILMER, CUTLER, PICKERING, HALE & DORR, LLP.
1875 Pennsylvania Ave., NW
Washington, DC 20006
(202) 663–6000
Email: kevin.lamb@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**IMMIGRATION REFORM LAW**　　　represented by　**Lawrence J. Joseph**
**INSTITUTE**　　　　　　　　　　　　　　　　　LAW OFFICE OF LAWRENCE J.
　　　　　　　　　　　　　　　　　　　　　　　JOSEPH
　　　　　　　　　　　　　　　　　　　　　　　1250 Connecticut Avenue, NW
　　　　　　　　　　　　　　　　　　　　　　　Suite 700–1A
　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　　　　　(202) 355–9452
　　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 318–2254
　　　　　　　　　　　　　　　　　　　　　　　Email: ljoseph@larryjoseph.com
　　　　　　　　　　　　　　　　　　　　　　　*LEAD ATTORNEY*
　　　　　　　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/16/2019 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0090–6258216) filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons)(Bernick, Justin) (Entered: 07/16/2019) |
| 07/16/2019 | 2 | | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 1:18–cv–2718; 1:18–cv–2838. (Bernick, Justin) (Entered: 07/16/2019) |
| 07/16/2019 | 3 | | MOTION for Temporary Restraining Order by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Michelle Garza Pareja, # 3 Declaration of Claudia Cubas, # 4 Text of Proposed Order, # 5 Declaration of Counsel Regarding Compliance with Local Rule 65.1)(Bernick, Justin). Added MOTION for Preliminary Injunction on 7/18/2019 (znmw). (Entered: 07/16/2019) |
| 07/16/2019 | 4 | | MOTION to Expedite *Hearing* by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Attachments: # 1 Text of Proposed Order)(Bernick, Justin) (Entered: 07/16/2019) |
| 07/17/2019 | | | Case Assigned to Judge Randolph D. Moss. (zsb) (Entered: 07/17/2019) |
| 07/17/2019 | | | MINUTE ORDER: In filing the present action, Plaintiffs indicated that the matter should be designated as related to *O.A. et al. v. Trump et al.*, 18–cv–2718, pursuant to Local Rule 40.5(a)(3). To ensure that the matter is properly assigned, Plaintiffs are hereby ORDERED to show cause before 7:00 p.m. July 17, 2019, why this case should be treated as related to *O.A. v. Trump*. Defendants may also file a brief before 7:00 p.m. today expressing their views on whether and, if so, why the cases should be treated as related. The Court recognizes that this is a very abbreviated schedule but has concluded that expedition is necessary in light of the pending motion for a temporary |

| | | | |
|---|---|---|---|
| | | | restraining order. Signed by Judge Randolph D. Moss on 7/17/2019. (lcrdm1, ) (Entered: 07/17/2019) |
| 07/17/2019 | 5 | | NOTICE of Appearance by Erez Reuveni on behalf of All Defendants (Reuveni, Erez) (Entered: 07/17/2019) |
| 07/17/2019 | 6 | | RESPONSE re 2 NOTICE of Related Case by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Reuveni, Erez) Modified event title on 7/18/2019 (znmw). (Entered: 07/17/2019) |
| 07/17/2019 | 7 | | RESPONSE TO ORDER TO SHOW CAUSE re Order,,, filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.. (Bernick, Justin) Modified event title on 7/18/2019 (znmw). (Entered: 07/17/2019) |
| 07/17/2019 | 8 | | CERTIFICATE OF SERVICE by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. re 7 Response to Order of the Court . (Bernick, Justin) (Entered: 07/17/2019) |
| 07/17/2019 | 9 | | NOTICE OF SUPPLEMENTAL AUTHORITY by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Attachments: # 1 Exhibit A)(Bernick, Justin) (Entered: 07/17/2019) |
| 07/18/2019 | 10 | | NOTICE of Appearance by Mitchell Pearsall Reich on behalf of CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Reich, Mitchell) (Entered: 07/18/2019) |
| 07/18/2019 | 11 | | NOTICE of Appearance by Elizabeth Hagerty on behalf of All Plaintiffs (Hagerty, Elizabeth) (Entered: 07/18/2019) |
| 07/18/2019 | | | MINUTE ORDER: Local Rule 40.5(a)(3) provides that "[c]ivil, including miscellaneous, cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent." "The fundamental rationale for the general rule requiring random assignment of cases is to ensure greater public confidence in the integrity of the judicial process. The rule guarantees fair and equal distribution of cases to all judges, avoids public perception or appearance of favoritism in assignments, and reduces opportunities for judge–shopping." *Tripp v. Executive Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000) (Calendar Committee three–judge panel). Because the two cases at issue, *O.A. et al. v. Trump et al.*, 18–cv–2718 and *CAIR et al. v. Trump et al.*, 19–cv–2117, involve APA challenges to different interim final rules enacting different policies based on different administrative records, the Court has determined that they are not related for the purposes of Local Rule 40.5(a)(3). That the cases may involve some overlapping legal issues |

| | | | |
|---|---|---|---|
| | | | and similar factual contentions relating to standing does not change this conclusion. Thus, it is hereby ORDERED that this case shall be randomly reassigned pursuant to Local Rule 40.3(a). Signed by Judge Randolph D. Moss on 7/18/2019. (lcrdm1, ) (Entered: 07/18/2019) |
| 07/18/2019 | 12 | | Case randomly reassigned to Judge Christopher R. Cooper. Judge Randolph D. Moss is no longer assigned to the case. (rj) (Entered: 07/18/2019) |
| 07/18/2019 | 13 | | Case randomly reassigned to Judge Timothy J. Kelly. Judge Christopher R. Cooper is no longer assigned to the case. (rj) (Entered: 07/18/2019) |
| 07/18/2019 | | | MINUTE ORDER: The parties shall appear for a telephonic status conference today, July 18, 2019, at 4:30 p.m. to discuss Plaintiffs' 4 Motion for Expedited Hearing. The parties shall promptly contact the Courtroom Deputy at (202) 354–3495 to make arrangements to do so. Signed by Judge Timothy J. Kelly on 7/18/2019. (lctjk2) (Entered: 07/18/2019) |
| 07/18/2019 | 14 | | SUMMONS (14) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsb) (Entered: 07/18/2019) |
| 07/18/2019 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Telephone Status Conference held on 7/18/2019. Order to be issued by the court. Hearing on 3 MOTION for Temporary Restraining Order set for 7/22/2019 at 2:00 PM in Courtroom 11 before Judge Timothy J. Kelly. (Court Reporter: Patricia Kaneshiro–Miller) (kh) (Entered: 07/18/2019) |
| 07/18/2019 | | | MINUTE ORDER: As discussed at the telephonic status conference held today, it is hereby ORDERED that Defendants shall file their opposition to Plaintiffs' 3 Motion for Temporary Restraining Order by July 20, 2019, at 10:00 a.m., and Plaintiffs shall file their reply in support of their motion by July 21, 2019, at 6:00 p.m. The parties shall appear for a hearing on Plaintiffs' motion for a temporary restraining order on July 22, 2019, at 2:00 p.m. in Courtroom 11. It is further ORDERED that Defendants shall file the administrative record as soon as practicable, and no later than July 23, 2019, at 8:00 p.m. In light of this order, Plaintiffs' 4 Motion for Expedited Hearing is hereby DENIED AS MOOT. Signed by Judge Timothy J. Kelly on 7/18/2019. (lctjk2) (Entered: 07/18/2019) |
| 07/19/2019 | 15 | | NOTICE of Appearance by Scott Grant Stewart on behalf of All Defendants (Stewart, Scott) (Entered: 07/19/2019) |
| 07/19/2019 | 16 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 7/19/2019. Answer due for ALL FEDERAL DEFENDANTS by 9/17/2019. (Hagerty, Elizabeth) (Entered: 07/19/2019) |
| 07/19/2019 | 17 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION (Hagerty, Elizabeth) (Entered: 07/19/2019) |
| 07/19/2019 | 18 | | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Hagerty, Elizabeth) (Entered: 07/19/2019) |
| 07/19/2019 | 19 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Leave to File *A Brief Amicus Curiae* by KIDS IN NEED OF DEFENSE (KIND) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Raffman, Mark) (Entered: 07/19/2019) |
| 07/20/2019 | 20 | | Memorandum in opposition to re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Attachments: # 1 Text of Proposed Order)(Reuveni, Erez) (Entered: 07/20/2019) |
| 07/20/2019 | 21 | | ADMINISTRATIVE RECORD by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Attachments: # 1 Administrative Record Part 1, # 2 Administrative Record Part 2, # 3 Administrative Record Part 3, # 4 Administrative Record Part 4, # 5 Administrative Record Part 5, # 6 Administrative Record Part 6, # 7 Administrative Record Part 7, # 8 Administrative Record Part 8, # 9 Administrative Record Part 9)(Reuveni, Erez) (Entered: 07/20/2019) |
| 07/21/2019 | 22 | | REPLY to opposition to motion re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.. (Bernick, Justin) (Entered: 07/21/2019) |
| 07/22/2019 | 23 | | NOTICE of Appearance by Kaitlin Welborn on behalf of All Plaintiffs (Welborn, Kaitlin) (Entered: 07/22/2019) |
| 07/22/2019 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Motion Hearing held on 7/22/2019 re 3 MOTION for Temporary Restraining Order. Oral argument heard and taken under advisement. (Court Reporter: Timothy Miller) (kh) (Entered: 07/22/2019) |
| 07/22/2019 | 24 | | NOTICE of Appearance by T. Clark Weymouth on behalf of All Plaintiffs (Weymouth, T.) (Entered: 07/22/2019) |
| 07/22/2019 | 25 | | NOTICE of Appearance by Neal Kumar Katyal on behalf of All Plaintiffs (Katyal, Neal) (Entered: 07/22/2019) |
| 07/22/2019 | 26 | | NOTICE of Appearance by Manoj Govindaiah on behalf of REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (Govindaiah, Manoj) (Entered: 07/22/2019) |
| 07/23/2019 | 27 | | NOTICE of Appearance by Lauren Crowell Bingham on behalf of MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. |

| | | | |
|---|---|---|---|
| | | | MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT (Bingham, Lauren) (Entered: 07/23/2019) |
| 07/23/2019 | | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for an oral ruling on Plaintiffs' 3 Motion for Temporary Restraining Order on July 24, 2019, at 10:00 a.m. in Courtroom 11. If counsel wish to appear telephonically, they shall contact the Courtroom Deputy at (202) 354−3495 to make arrangements to do so. Signed by Judge Timothy J. Kelly on 7/23/2019. (lctjk2) (Entered: 07/23/2019) |
| 07/24/2019 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Oral Ruling held on 7/24/2019. For the reasons stated on the record in open court, Plaintiff's 3 MOTION for Temporary Restraining Order is DENIED. (Court Reporter: Timothy Miller) (kh) (Entered: 07/24/2019) |
| 07/24/2019 | 28 | | TRANSCRIPT OF ORAL RULING before Judge Timothy J. Kelly held on 7−24−19; Page Numbers: 1−16; Date of Issuance: 7−24−19; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 8/14/2019. Redacted Transcript Deadline set for 8/24/2019. Release of Transcript Restriction set for 10/22/2019.(Miller, Timothy) (Entered: 07/24/2019) |
| 07/25/2019 | | | MINUTE ORDER: Despite the Court's instruction at the oral ruling held on July 24, 2019, it is hereby ORDERED that the parties shall meet, confer, and file a joint status report no later than Monday, July 29, 2019, proposing how they would like to proceed in this matter. That report shall address, in particular, whether the Government, if it has not already done so, intends to seek a stay of the District Court for the Northern District of California's order entering a preliminary injunction in Case No. 19−cv−04073−JST, ECF No. 42, and further whether, in light of that order, the parties in this case will consent to holding Plaintiffs' 3 Motion for Preliminary Injunction in abeyance and proceed to summary judgment briefing on Plaintiffs' claims. It is further ORDERED that Defendants shall file their response to Movant KIND's 19 Motion for Leave to File an Amicus Brief by Monday, July 29, 2019. Signed by Judge Timothy J. Kelly on 7/25/2019. (lctjk2) (Entered: 07/25/2019) |

| | | | |
|---|---|---|---|
| 07/29/2019 | 29 | | RESPONSE re 19 MOTION for Leave to File *A Brief Amicus Curiae* filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Reuveni, Erez) (Entered: 07/29/2019) |
| 07/29/2019 | 30 | | Joint STATUS REPORT by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.. (Bernick, Justin) (Entered: 07/29/2019) |
| 07/30/2019 | | | MINUTE ORDER: Upon consideration of the parties' 30 Joint Status Report, it is hereby ORDERED that the following schedule shall govern further proceedings: (1) Plaintiffs shall file their motion for summary judgment by August 27, 2019; (2) Defendants shall file their consolidated cross−motion for summary judgment and opposition to Plaintiffs' motion by September 17, 2019; (3) Plaintiffs shall file their consolidated reply in support of their motion and opposition to Defendants' cross−motion by September 24, 2019; (4) and Defendants shall file their reply in support of their cross−motion by October 1, 2019. The parties shall appear for a hearing on their motions on October 16, 2019, at 2:00 p.m. in Courtroom 11. Upon consent of the parties, the Court shall hold Plaintiffs' Motion for Preliminary Injunction in abeyance in light of the preliminary injunction entered by the District Court for the Northern District of California in *East Bay Sanctuary Covenant v. Barr*, Case No. 19−cv−4073−JST, ECF No. 42. Plaintiffs are, of course, entitled to renew their motion if that injunction is stayed or vacated in whole or in part. Signed by Judge Timothy J. Kelly on 7/30/2019. (lctjk2) (Entered: 07/30/2019) |
| 08/06/2019 | 31 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Memorandum in Support, # 2 Amended Complaint, # 3 Declaration of J.M.M., # 4 Declaration of D.L.R., # 5 Declaration of Z.B.M., # 6 Declaration of Y.C.G., # 7 Declaration of M.Y.R.B., # 8 Declaration of K.M.V.M., # 9 Declaration of W.M.R.O., # 10 Declaration of C.C.R.O., # 11 Declaration of N.G.R.L., # 12 Text of Proposed Order, # 13 Certificate of Service)(Bernick, Justin) (Entered: 08/06/2019) |
| 08/09/2019 | 32 | | TRANSCRIPT OF TEMPORARY RESTRAINING ORDER HEARING before Judge Timothy J. Kelly held on 7−22−19; Page Numbers: 1−156; Date of Issuance: 8−9−19; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file |

| | | with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 8/30/2019. Redacted Transcript Deadline set for 9/9/2019. Release of Transcript Restriction set for 11/7/2019.(Miller, Timothy) (Entered: 08/09/2019) |
|---|---|---|
| 08/12/2019 | 33 | NOTICE of Appearance by Patricia Stottlemyer on behalf of All Plaintiffs (Stottlemyer, Patricia) (Entered: 08/12/2019) |
| 08/12/2019 | 34 | NOTICE of Appearance by Hardy Vieux on behalf of All Plaintiffs (Vieux, Hardy) (Entered: 08/12/2019) |
| 08/16/2019 | 35 | RESPONSE re 31 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (This document is SEALED and only available to authorized persons.) filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC.. (Bernick, Justin) (Entered: 08/16/2019) |
| 08/18/2019 | 36 | MEMORANDUM OPINION & ORDER granting Plaintiffs' 31 Motion for Leave to File Using Pseudonyms and Under Seal. See Order for details. Signed by Judge Timothy J. Kelly on 8/18/2019. (lctjk2) (Entered: 08/18/2019) |
| 08/18/2019 | 37 | AMENDED COMPLAINT against All Defendants filed by REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Z.B.M., C.C.R.O., Y.G.C., D.L.R., M.Y.R.B., N.G.R.L., Human Rights First, W.M.R.O., J.M.M., K.M.V.M..(Hagerty, Elizabeth) (Entered: 08/18/2019) |
| 08/18/2019 | 38 | MEMORANDUM re 31 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC. (This document is SEALED and only available to authorized persons.) filed by REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., Human Rights First, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Hagerty, Elizabeth) (Entered: 08/18/2019) |
| 08/20/2019 | 39 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. MATTHEW T. ALBENCE served on 7/22/2019; WILLIAM P. BARR served on 7/23/2019; KENNETH T. CUCCINELLI served on 7/22/2019; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW served on 7/22/2019; KEVIN K. MCALEENAN served on 7/22/2019; JAMES MCHENRY served on 7/22/2019; JOHN P. SANDERS served on 7/22/2019; DONALD J. TRUMP served on 7/25/2019; U.S. CITIZENSHIP & IMMIGRATION SERVICES served on 7/22/2019; U.S. CUSTOMS & BORDER PROTECTION served on 7/22/2019; U.S. DEPARTMENT OF HOMELAND SECURITY served on 7/22/2019; U.S. DEPARTMENT OF JUSTICE served on 7/23/2019; U.S. IMMIGRATION & |

| | | | |
|---|---|---|---|
| | | | CUSTOMS ENFORCEMENT served on 7/23/2019 (Hagerty, Elizabeth) (Entered: 08/20/2019) |
| 08/20/2019 | 40 | | PROPOSED BRIEFING SCHEDULE re Order,,,,, Set Deadlines/Hearings,,,, by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Bernick, Justin) (Entered: 08/20/2019) |
| 08/21/2019 | 41 | | MOTION for Preliminary Injunction by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M. (Attachments: # 1 Memorandum in Support, # 2 Declaration (Supplemental) of Claudia Cubas, # 3 Declaration (Supplemental) of Michelle Garza Pareja, # 4 Declaration of Sharon McBride, # 5 Declaration of Lisa Frydman, # 6 Text of Proposed Order, # 7 Certificate of Service)(Bernick, Justin) (Entered: 08/21/2019) |
| 08/22/2019 | | | MINUTE ORDER: Upon consideration of the parties' 40 Joint Statement, it is hereby ORDERED that the following schedule shall govern further proceedings: (1) Defendants shall file their opposition to Plaintiffs' 41 Motion for Preliminary Injunction by August 28, 2019; (2) Plaintiffs shall file their reply by September 3, 2019; and (3) the parties shall appear for a hearing on Plaintiffs' motion on September 11, 2019, at 2:00 p.m. in Courtroom 11. The parties may, where feasible, incorporate by reference any arguments made in their briefing on Plaintiffs' motion for a temporary restraining order. Furthermore, Defendants are permitted to file a consolidated memorandum in opposition addressing both Plaintiffs' motion in this case and the plaintiffs' motion for a preliminary injunction in the related case, *I.A. et al. v. Barr et al.*, Civil Action No. 19–2530, provided that Defendants file the memorandum on both dockets. It is further ORDERED that, upon the parties' request, the briefing schedule entered by the Court on July 30, 2019, concerning the parties' cross–motions for summary judgment is hereby held in abeyance pending resolution of Plaintiffs' renewed motion for a preliminary injunction. Signed by Judge Timothy J. Kelly on 8/22/2019. (lctjk2) (Entered: 08/22/2019) |
| 08/28/2019 | 42 | | MOTION for Leave to File *a Brief as Amicus Curiae* by Professors of Immigration Law (Attachments: # 1 Proposed Amicus Brief, # 2 Text of Proposed Order)(Lamb, Kevin) (Entered: 08/28/2019) |
| 08/28/2019 | 43 | | RESPONSE re 41 MOTION for Preliminary Injunction filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit)(Bingham, Lauren) (Entered: 08/28/2019) |
| 08/28/2019 | 44 | | |

| | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit)(Bingham, Lauren) (Entered: 08/28/2019) |
|---|---|---|
| 08/29/2019 | 45 | Consent MOTION for Leave to File *Memorandum of Law in Support of Defendants as Amicus Curiae* by IMMIGRATION REFORM LAW INSTITUTE (Attachments: # 1 Exhibit Proposed Amicus Memo of Law, # 2 Exhibit Exhibit to Proposed Memo, # 3 Text of Proposed Order Proposed Order)(Joseph, Lawrence) (Entered: 08/29/2019) |
| 09/03/2019 | 46 | REPLY to opposition to motion re 41 MOTION for Preliminary Injunction filed by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Bernick, Justin) (Entered: 09/03/2019) |
| 09/04/2019 | | MINUTE ORDER granting Defendants' 44 Unopposed Motion to File Exhibits Under Seal. In light of the Court's 36 Memorandum Opinion & Order and Defendants' obligations under 8 C.F.R. § 208.6, and upon consideration of the relevant factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), including the fact that no party objects, it is hereby ORDERED that Defendants' motion is GRANTED. Exhibits A through O, attached to the motion as ECF No. 44−1 through ECF No. 44−15, the last of which the Court presumes is incorrectly marked Exhibit N, shall remain under seal. Signed by Judge Timothy J. Kelly on 9/4/2019. (lctjk2) (Entered: 09/04/2019) |
| 09/04/2019 | 47 | SEALED DOCUMENT (Exhibit A) filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. re 43 Response to motion,, filed by U.S. CUSTOMS & BORDER PROTECTION, KEVIN K. MCALEENAN, KENNETH T. CUCCINELLI, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, DONALD J. TRUMP, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JOHN P. SANDERS, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, MATTHEW T. ALBENCE, WILLIAM P. BARR, JAMES MCHENRY. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G, # 7 Exhibit H, # 8 Exhibit I, # 9 Exhibit J, # 10 Exhibit K, # 11 Exhibit L, # 12 Exhibit M, # 13 Exhibit N, # 14 Exhibit N) (ztth) |

| | | | |
|---|---|---|---|
| | | | (Entered: 09/05/2019) |
| 09/05/2019 | 48 | | NOTICE of Appearance by Craig Alan Hoover on behalf of C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M. (Hoover, Craig) (Entered: 09/05/2019) |
| 09/09/2019 | | | MINUTE ORDER: Consistent with the structure of the hearing on Plaintiffs' motion for a temporary restraining order, the Court plans to ask the parties a set of prepared questions at the consolidated hearing scheduled for September 11, 2019, on Plaintiffs' 41 Motion for Preliminary Injunction and the plaintiffs' comparable motion in the related case, *I.A. et al. v. Barr et al.*, Civil Action No. 19–2530. Accordingly, and in light of the numerous common issues presented by the cases, it is hereby ORDERED that Plaintiffs shall confer with the plaintiffs in the related case to discuss a mutually agreeable plan for responding to the Court's questioning on those common issues. The Court will not tolerate duplicative arguments from both sets of plaintiffs. Signed by Judge Timothy J. Kelly on 9/9/2019. (lctjk2) (Entered: 09/09/2019) |
| 09/09/2019 | | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for a telephonic status conference on September 10, 2019, at 9:00 a.m. The parties shall confer in light of the District Court for the Northern District of California's order reinstating the scope of injunctive relief in *East Bay Sanctuary Covenant et al. v. Barr et al.*, Case No. 19–cv–04073–JST, ECF No. 73, and be prepared to discuss how they would like to proceed in this case. The parties shall promptly contact the Courtroom Deputy at (202) 354–3495 to make arrangements to do so. Signed by Judge Timothy J. Kelly on 9/9/2019. (lctjk2) (Entered: 09/09/2019) |
| 09/09/2019 | 49 | | PROPOSED BRIEFING SCHEDULE by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Bernick, Justin) (Entered: 09/09/2019) |
| 09/09/2019 | | | MINUTE ORDER: Upon consideration of the parties' 49 Joint Statement on Scheduling Concerning Plaintiffs' Motions for Preliminary Injunction, and in light of the renewed injunction issued by the District Court for the Northern District of California in *East Bay Sanctuary Covenant et al. v. Barr et al.*, Case No. 19–cv–04073–JST, ECF No. 73, it is hereby ORDERED that Plaintiffs' 41 Motion for Preliminary Injunction is held in abeyance, and the hearing on that motion scheduled for September 11, 2019, is VACATED. Plaintiffs are entitled to renew their motion if that injunction is stayed or vacated in whole or in part. It is further ORDERED that within two days of the Supreme Court's decision on the application for a stay pending appeal in *Barr et al. v. East Bay Sanctuary Covenant et al.*, No. 19A230, the parties shall promptly confer and propose a schedule concerning cross–motions for summary judgment. In light of this order, the telephonic status conference scheduled for September 10, 2019, is hereby VACATED. Signed by Judge Timothy J. Kelly on 9/9/2019. (lctjk2) (Entered: 09/09/2019) |
| 09/13/2019 | | | MINUTE ORDER: It is hereby ORDERED that the deadline to submit a joint proposed schedule concerning cross–motions for summary judgment is |

| | | | |
|---|---|---|---|
| | | | EXTENDED to September 16, 2019. Signed by Judge Timothy J. Kelly on 9/13/2019. (lctjk2) (Entered: 09/13/2019) |
| 09/16/2019 | 50 | | PROPOSED BRIEFING SCHEDULE by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Bernick, Justin) (Entered: 09/16/2019) |
| 09/17/2019 | 51 | | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 19−cv−2773. (Reuveni, Erez) (Main Document 51 replaced on 9/18/2019) (znmw). (Entered: 09/17/2019) |
| 09/18/2019 | | | MINUTE ORDER: Upon consideration of the parties' 50 Joint Statement on Scheduling, it is hereby ORDERED that the parties' briefs concerning Plaintiffs' 41 Motion for Preliminary Injunction shall be treated as cross−motions for summary judgment. The following schedule shall govern further proceedings as to those cross−motions: (1) each party shall file a statement of undisputed material facts by September 30, 2019; (2) each party shall file a response to the opposing party's statement of undisputed material facts by October 11, 2019; (3) Defendants shall file their consolidated supplemental brief by October 16, 2019; (4) Plaintiffs shall file their supplemental brief by October 23, 2019; and (5) the parties shall appear for a hearing on their cross−motions for summary judgment on October 28, 2019, at 2:00 p.m. in Courtroom 11. Upon the parties' joint request, and because Defendants intend to raise threshold jurisdictional issues in their supplemental briefing, it is further ORDERED that Defendants' deadline to answer the 37 Amended Complaint is STAYED pending further order of the Court. Signed by Judge Timothy J. Kelly on 9/18/2019. (lctjk2) (Entered: 09/18/2019) |
| 09/30/2019 | 52 | | SUPPLEMENTAL MEMORANDUM re 41 *Statement of Undisputed Material Facts* from Defendants. (Attachments: # 1 Exhibit Declaration of Elizabeth Burgus, # 2 Exhibit N.B. Redacted Interview Notice)(Bingham, Lauren) Modified event title and link on 10/3/2019 (znmw). (Entered: 09/30/2019) |
| 09/30/2019 | 53 | | SUPPLEMENTAL MEMORANDUM re 41 *Statement of Undisputed Material Facts* from Plaintiffs. (Bernick, Justin) Modified event title and link on 10/3/2019 (znmw). (Entered: 09/30/2019) |
| 10/03/2019 | 54 | | NOTICE *of correction and mootness* by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT (Attachments: # 1 Exhibit)(Reuveni, Erez) (Entered: 10/03/2019) |
| 10/03/2019 | 55 | | SUPPLEMENTAL MEMORANDUM to re 52 Civil Statement, *(corrected)* filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF |

| | | | |
|---|---|---|---|
| | | | HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Reuveni, Erez) (Entered: 10/03/2019) |
| 10/11/2019 | 56 | | RESPONSE re 53 Civil Statement filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Reuveni, Erez) (Entered: 10/11/2019) |
| 10/11/2019 | 57 | | RESPONSE re 55 Supplemental Memorandum, *(Civil Statement)* filed by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Attachments: # 1 Declaration of Kaitlin Welborn, # 2 Declaration of Prajakta Sonalker, # 3 Certificate of Service)(Hagerty, Elizabeth) (Entered: 10/11/2019) |
| 10/16/2019 | 58 | | SUPPLEMENTAL MEMORANDUM to *support motion for summary judgment* filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH T. CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Reuveni, Erez) (Entered: 10/16/2019) |
| 10/23/2019 | 59 | | SUPPLEMENTAL MEMORANDUM to *Support Summary Judgment* filed by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Bernick, Justin) (Entered: 10/23/2019) |
| 10/24/2019 | | | MINUTE ORDER: The hearing on the parties' cross–motions for summary judgment scheduled for October 28, 2019, at 2:00 PM is hereby CONTINUED to November 4, 2019, at 2:00 PM. Should the parties have a scheduling conflict, they shall jointly contact the Courtroom Deputy as soon as practicable to reschedule to a mutually agreeable date and time. Signed by Judge Timothy J. Kelly on 10/24/19. (lctjk2) (Entered: 10/24/2019) |
| 10/28/2019 | | | NOTICE of Hearing: The Motion Hearing currently set for 11/4/2019 is **RESCHEDULED** for 11/7/2019 at 2:30 PM in Courtroom 11 before Judge Timothy J. Kelly. (zkh) (Entered: 10/28/2019) |
| 11/07/2019 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Motion Hearing held on 11/7/2019 re 41 cross motions for Summary Judgment. Oral argument heard and taken under advisement. (Court Reporter: Timothy Miller) (zkh) (Entered: 11/08/2019) |
| 11/15/2019 | 60 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Thomas P. Schmidt on behalf of All Plaintiffs (Schmidt, Thomas) (Entered: 11/15/2019) |
| 01/02/2020 | 61 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. Attorney Elizabeth Hagerty terminated. (Hagerty, Elizabeth) (Entered: 01/02/2020) |
| 01/28/2020 | 62 | | TRANSCRIPT OF PROCEEDINGS before Judge Timothy J. Kelly held on November 7, 2019; Page Numbers: 1–89. Date of Issuance:January 28, 2020. Court Reporter/Transcriber Timothy R. Miller, RPR, CRR, NJ–CCR, Telephone number (202) 354–3111, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased fro m the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/18/2020. Redacted Transcript Deadline set for 2/28/2020. Release of Transcript Restriction set for 4/27/2020.(ztnr) (Entered: 01/28/2020) |
| 03/05/2020 | 63 | | NOTICE OF SUPPLEMENTAL AUTHORITY by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M. (Bernick, Justin) (Entered: 03/05/2020) |
| 03/20/2020 | 64 | | NOTICE of Upcoming Removal by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH THOMAS CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW (Bingham, Lauren) (Entered: 03/20/2020) |
| 03/23/2020 | | | MINUTE ORDER: Upon consideration of Defendants' 64 Notice of Upcoming Removal, if Plaintiff J.M.M. intends to file a response to the Notice, Plaintiff J.M.M. shall do so by March 24, 2020, at 5:00 p.m. Signed by Judge Timothy J. Kelly on 3/23/2020. (lctjk1) (Entered: 03/23/2020) |
| 03/24/2020 | 65 | | RESPONSE TO ORDER OF THE COURT re Order,, Set Deadlines, filed by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M.. (Attachments: # 1 Declaration)(Bernick, Justin) (Entered: 03/24/2020) |

| 04/08/2020 | 66 | | RESPONSE re 63 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by MATTHEW T. ALBENCE, WILLIAM P. BARR, KENNETH THOMAS CUCCINELLI, II, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KEVIN K. MCALEENAN, JAMES MCHENRY, JOHN P. SANDERS, DONALD J. TRUMP, U.S. CITIZENSHIP & IMMIGRATION SERVICES, U.S. CUSTOMS & BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT. (Bingham, Lauren) (Entered: 04/08/2020) |
|---|---|---|---|
| 04/24/2020 | 67 | | MOTION to Withdraw as Attorney *Kaitlin Welborn* by C.C.R.O., CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, D.L.R., HUMAN RIGHTS FIRST, J.M.M., K.M.V.M., M.Y.R.B., N.G.R.L., REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, INC., W.M.R.O., Y.G.C., Z.B.M. (Welborn, Kaitlin) (Entered: 04/24/2020) |
| 04/24/2020 | | | MINUTE ORDER granting Plaintiffs' 67 Motion to Withdraw. It is hereby ORDERED that attorney Kaitlin Welborn is withdrawn as counsel of record for Plaintiffs. Signed by Judge Timothy J. Kelly on 4/24/2020. (lctjk1) (Entered: 04/24/2020) |
| 06/01/2020 | | | MINUTE ORDER granting the 19 , 42 , and 45 Motions for Leave to File Amicus Curiae Briefs. It is hereby ORDERED that the accompanying briefs and any exhibits thereto shall be deemed filed. The Court shall not consider any portions that offer or rely on extra−record evidence. *See IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997) (noting that to consider extra−record evidence now would be to permit ex post supplementation of the record, which is not consistent with the prevailing standards of agency review). Signed by Judge Timothy J. Kelly on 6/1/2020. (lctjk1) (Entered: 06/01/2020) |
| 06/01/2020 | 68 | | AMICUS BRIEF by KIDS IN NEED OF DEFENSE (KIND). (Attachment: # 1 Declaration) (ztth) (Entered: 06/03/2020) |
| 06/01/2020 | 69 | | AMICUS BRIEF by PROFESSORS OF IMMIGRATION LAW. (ztth) (Entered: 06/03/2020) |
| 06/01/2020 | 70 | | AMICUS BRIEF by IMMIGRATION REFORM LAW INSTITUTE. (Attachment: # 1 Exhibit − A) (ztth) (Entered: 06/03/2020) |
| 06/30/2020 | 71 | | ORDER granting Plaintiffs' 41 Motion for Summary Judgment, denying Defendants' 43 Cross−Motion for Summary Judgment, and vacating the interim final rule. See Order for details. Signed by Judge Timothy J. Kelly on 6/30/2020. (lctjk1) (Entered: 06/30/2020) |
| 06/30/2020 | 72 | | MEMORANDUM OPINION in support of 71 Order granting Plaintiffs' 41 Motion for Summary Judgment, denying Defendants' 43 Cross−Motion for Summary Judgment, and vacating the interim final rule. Signed by Judge Timothy J. Kelly on 6/30/2020. (lctjk1) (Main Document 72 replaced on 7/7/2020) (zkh). (Entered: 06/30/2020) |
| 08/28/2020 | 73 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 72 Memorandum & Opinion, 71 Order by U.S. CUSTOMS & BORDER PROTECTION, JAMES MCHENRY, WILLIAM P. BARR, DONALD J. TRUMP, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, MATTHEW T. ALBENCE, KEVIN K. MCALEENAN, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. |

| | | | IMMIGRATION & CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF JUSTICE, KENNETH THOMAS CUCCINELLI, II, U.S. CITIZENSHIP & IMMIGRATION SERVICES, JOHN P. SANDERS. Fee Status: No Fee Paid. Parties have been notified. (Reuveni, Erez) (Entered: 08/28/2020) |
|---|---|---|---|

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-02117-TJK |
| I.A., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BARR, in his official capacity as Attorney General of the United States, *et al.*, <br><br> Defendants. | Civil Action No. 1:19-cv-02530 |

### NOTICE OF APPEAL

Defendants hereby appeal from the Court's orders in No. 19-2117 and 19-2530 granting summary judgment to Plaintiffs. Specifically, Defendants appeal the order and memorandum opinion at docket numbers 71 and 72 in 19-2117 and the order and memorandum opinion at docket numbers 54 and 55 in 19-2530.

//

//

1

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

*s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 306-4293
Email: Erez.R.Reuveni@usdoj.gov

LAUREN C. BINGHAM
PATRICK GLEN
Senior Litigation Counsel

Dated: August 28, 2020          *Attorneys for Defendants*

2

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Erez Reuveni*
EREZ REUVENI

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 19-2117 (TJK) |
| DONALD J. TRUMP *et al.*, | |
| *Defendants*. | |
| | |
| I.A. *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 19-2530 (TJK) |
| WILLIAM P. BARR *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Plaintiffs in these related cases are immigrant-services organizations and individual asylum applicants. They challenge an interim final rule that significantly changes the United States' asylum procedures. The rule categorically disqualifies aliens arriving at the southern border from receiving asylum unless they have already unsuccessfully sought similar protection in another country on their way here. Plaintiffs allege that the rule is unlawful for several reasons, including that it is contrary to the Immigration and Nationality Act and the Trafficking Victims Protection Reauthorization Act, is arbitrary and capricious, and was issued without notice-and-comment procedures required under the Administrative Procedure Act (APA). Plaintiffs in the first-filed case, *CAIR*, also allege that the rule violates asylum applicants' Fifth

Amendment due process rights. Defendants argue that this case is largely not justiciable, in part because the organizations lack standing, which deprives the Court of subject-matter jurisdiction over their claims.

Plaintiffs in *CAIR* moved for a temporary restraining order when they filed their complaint. At that time, Plaintiffs in that case included only nonprofit immigrant-services organizations. The Court denied their motion because they had not shown that, absent preliminary relief, they would suffer irreparable harm just because the rule would make it harder to serve asylum seekers. Those organizations then amended their complaint to add individual asylum applicants as plaintiffs and moved for a preliminary injunction. At about the same time, Plaintiffs in *I.A.*—a similar immigrant-services organization and individual asylum applicants as well—filed their suit and also moved for a preliminary injunction. After the Court consolidated the cases, all the parties jointly asked the Court to convert the motions for preliminary relief and the related briefing into cross-motions for summary judgment.

The Court holds that it has subject-matter jurisdiction over the claims brought by at least one organizational Plaintiff in each case. It also holds that Defendants unlawfully promulgated the rule without complying with the APA's notice-and-comment requirements, because neither the "good cause" nor the "foreign affairs function" exceptions are satisfied on the record here. The Court thus need not reach Plaintiffs' other claims concerning the validity of the rule. The Court will grant Plaintiffs' motions for summary judgment, deny Defendants' cross-motions, and vacate the rule.

2

# I.  Background

## A.  The Immigration and Nationality Act

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, governs much of the United States' immigration system.  Two portions of it are relevant to this case: the standards applied to asylum applications, and the procedures for expedited removal.

### 1.  Asylum

"Asylum is a form of discretionary relief that allows an otherwise removable alien who qualifies as a refugee to remain in the United States."  *O.A. v. Trump*, 404 F. Supp. 3d 109, 118 (D.D.C. 2019).  Asylum provides individuals who qualify several distinct benefits: a path to citizenship, eligibility for certain government benefits, and the chance for family members to receive asylum as well.  Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,832 (July 16, 2019).  There are other forms of relief granting removable aliens the right to stay in this country on humanitarian grounds, but none confer those same advantages.  *Id.*

Under the INA, any person physically in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  A person may file that application while she is in removal proceedings or independently.  *See id.* §§ 8 U.S.C. 1225(b)(1)(A)(i), 1229a(c)(4).  The former is sometimes called a defensive application and the latter an affirmative application.  *O.A.*, 404 F. Supp. 3d at 121.  Some persons are categorically ineligible for asylum, and several such categories are defined by statute in the INA.  *See* 8 U.S.C. § 1158(b)(2)(A).  For example, an alien is ineligible if she committed certain crimes, is a danger to the community, or was firmly resettled in another country before arrival in the United States.[1]  *Id.*  Assuming an applicant is not ineligible for some

---

[1] Additionally, as discussed below, the INA allows the Attorney General to create additional categories of ineligibility.  8 U.S.C. § 1158(b)(2)(C).

reason, under the INA, asylum may be granted only to an applicant physically present in the United States who is a "refugee," *i.e.*, someone with "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1158(a)(1), (b)(1)(A); *id.* § 1101(a)(42)(A).

After a person applies for asylum, she receives an interview with an asylum officer. *Id.* § 1225(b)(1)(A)(ii), (B). That officer determines whether the person is eligible for asylum—that is, first, whether she is categorically ineligible and, if not, second, whether she may be a refugee. *Id.* § 1158(b)(1)(A), (B)(i). The latter determination involves deciding whether the applicant has a "credible fear of persecution," which exists when "there is a significant possibility" that a person is a refugee. *Id.* § 1225(b)(1)(B)(v).[2] If after interviewing the applicant the officer determines that she has a credible fear of persecution, the applicant may be granted asylum in a subsequent proceeding if an immigration judge finds that she is a "refugee" under the statute. *Id.* § 1158(b)(1); 8 C.F.R. § 208.30(f). On the other hand, if the applicant is either ineligible or does not show a credible fear, the asylum officer enters a "negative credible fear determination." *See* 8 C.F.R. § 208.30(g)(1). The applicant may appeal that determination to an immigration judge. *Id.* § 208.30(g)(2); *see also* 84 Fed. Reg. at 33,837–38. But as described below, if the immigration judge agrees with the asylum officer, the applicant is issued a final order of removal. 8 C.F.R. § 1208.30(g)(2)(iv)(A).

---

[2] The Supreme Court has explained that an individual can qualify for asylum if she demonstrates a ten percent likelihood that she will be persecuted on the basis of race, religion, nationality, social group, or political opinion. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430–32, 439–40 (1987); *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 120 n.3 (D.D.C. 2019). Thus, at the initial interview stage, an asylum applicant "need only show a 'significant possibility' of a one in ten chance of persecution, i.e., a fraction of ten percent." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018) (citation omitted).

An applicant found ineligible for asylum may pursue other, more difficult avenues to avoid removal from the United States. First, she may seek withholding of removal under Section 241(b)(3) of the INA. *See* 8 U.S.C. § 1231(b)(3); 84 Fed. Reg. at 33,834. Doing so, however, requires her to prove to an immigration judge that "it is more likely than not" that she would be persecuted on a protected ground. 8 C.F.R. § 1208.16(b)(2). Second, she may seek protection under the regulations implementing Article 3 the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105–277, § 2242(b), 112 Stat. 2681; 84 Fed. Reg. at 33,834. But doing so requires her to show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

As a result, these alternative paths ultimately require "a more substantial showing" than the standard in asylum cases. *O.A.*, 404 F. Supp. 3d at 120. And on either path, an immigration officer performing an initial screening interview must use a more demanding standard than in asylum cases—whether the alien has "a reasonable fear of persecution or torture," 8 C.F.R. § 208.30(e)(5)—which is satisfied only "if the alien establishes a reasonable possibility that he or she would be persecuted" because of a protected ground, *id.* § 208.31(c). *See also* 84 Fed. Reg. at 33,837 (explaining that the reasonable-fear screening standard is more demanding than the credible-fear standard applicable in asylum cases). Moreover, relief under either of these paths "does not preclude the government from removing the alien to a third country where the alien would not face persecution, does not establish a pathway to lawful permanent resident status and citizenship, and does not afford derivative protection for the alien's family members." *O.A.*, 404 F. Supp. 3d at 120.

## 2. Expedited Removal

The INA sets up two types of removal proceedings: regular, under 8 U.S.C. § 1229a, and expedited, under 8 U.S.C. § 1225. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546. The latter applies only to certain classes of individuals, including those who are screened out of the process by asylum officers. Expedited removal proceeds very quickly. As noted above, if an asylum officer enters a "negative credible fear determination" after interviewing an asylum applicant, the applicant may appeal that determination to an immigration judge. 8 C.F.R. § 208.30(g); *id.* § 1208.30(g). But if the immigration judge agrees with the asylum officer, the applicant is given a final order of removal. *Id.* § 1208.30(g)(2)(iv)(A). The entire process, by statute, takes no more than seven days. 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

Another feature of expedited removal is the limited availability of judicial review. Congress in the IIRIRA significantly curtailed federal courts' jurisdiction to review challenges to an individual's order of removal from expedited removal proceedings. *See generally* 8 U.S.C. § 1252. And the IIRIRA includes several "channeling rules" which consolidate before the courts of appeals challenges that either seek review of a removal order or that involve questions arising from a removal action or proceeding. *Id.* § 1252(a)(5), (b)(9); *see also O.A.*, 404 F. Supp. 3d at 126–38.

## B. The Rule

Last year, the Departments of Justice and Homeland Security ("Departments") jointly published an interim final rule entitled "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019) ("Rule"). As discussed above, the INA authorizes the Attorney General to "by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum." 8 U.S.C. § 1158(b)(2)(C). Relying

on this provision, the Rule renders aliens seeking to enter the United States at its southern border categorically ineligible for asylum unless they first applied for similar protection in a third country they transited through (other than the country they fled) and were rejected there. 84 Fed. Reg. at 33,835.[3] The Rule does not limit an alien's ability to seek withholding of removal under either Section 241(b)(3) of the INA or the CAT. 84 Fed. Reg. at 33,834. But its categorical bar on asylum eligibility applies to adults and unaccompanied minors alike. *See* 84 Fed. Reg. at 33,839 n.7.

When issuing the Rule, the Departments explained that it is intended to curb the strain on the United States' immigration system "by more efficiently identifying aliens who are misusing the asylum system to enter and remain in the United States rather than legitimately seeking urgent protection from persecution or torture." *Id.* at 33,831. It also "aims to further the humanitarian purposes of asylum." *Id.* According to the Departments, the Rule will deter aliens whose claims lack merit and will instead prioritize those who have no other options or have experienced more extreme forms of human trafficking. *Id.* The Rule also seeks to combat human smuggling by diminishing "the incentive for aliens without an urgent or genuine need for asylum to cross the border." *Id.* And the Departments add that the Rule "will better position the United States as it engages in ongoing diplomatic negotiations with Mexico and the Northern Triangle countries." *Id.*

---

[3] The Rule excludes: (1) an alien who, while in transit to the United States, applied for and was denied protection for individuals fleeing persecution or torture; (2) an alien who is a "victim of a severe form of human trafficking," 8 C.F.R. § 214.11; or (3) an alien who transited only through "a country or countries that were not parties to the 1951 Convention relating to the Status of Refugees, the 1967 Protocol, or the CAT." Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,835 (July 16, 2019).

The Rule took effect the day it was published. *Id.* at 33,830. The Departments invoked two exceptions to the APA's usual requirements that regulations be published at least 30 days before they take effect and that the public be offered the opportunity to comment, 5 U.S.C. § 553 (b)–(d). According to the Departments, dispensing with the notice-and-comment period was "essential to avoid a surge of aliens who would have strong incentives to seek to cross the border during pre-promulgation notice and comment or during the 30-day delay in the effective date." 84 Fed. Reg. at 33,841. Separately, they claimed that the Rule "involves a 'foreign affairs function of the United States,'" *id.* (citation omitted), and therefore was exempt from notice-and-comment procedures, 5 U.S.C. § 553(a)(1). All the same, the Departments invited interested persons to submit comments that they represented would "be considered and addressed in the process of drafting the final rule." 84 Fed. Reg. at 33,830. To date, the Departments have not promulgated a final rule.

## C. Procedural History

Capital Area Immigrants' Rights Coalition (CAIR) and the Refugee and Immigrant Center for Education and Legal Services filed the first of these two actions, challenging the Rule on the same day it took effect. *Capital Area Immigrants' Rights Coal. (CAIR) v. Trump,* No. 19-cv-2117, ECF No. 1 (D.D.C. July 16, 2019). They immediately moved for a temporary restraining order. *CAIR* ECF No. 3. About a week later, the Court denied their motion. *See CAIR*, 2019 WL 3436501, at \*4 (D.D.C. July 24, 2019). As the Court explained, Plaintiffs at that time, both of which were organizations, had failed to show that the Rule would irreparably harm them. *Id.* at \*1–3. The Court also emphasized that Plaintiffs were not individual asylum seekers facing immediate removal. *Id.* at \*2–3.

Later, Plaintiffs in *CAIR* filed an amended complaint adding as new plaintiffs nine individuals and one additional organization. *See CAIR* ECF No. 37 ("*CAIR* Compl."). The

8

individual Plaintiffs, proceeding under pseudonyms, *see CAIR* ECF No. 36, are women and children who fled persecution and violence in Central America, Cuba, and Angola and transited through Mexico without applying for asylum there before crossing the United States' southern border after the Rule took effect. *CAIR* Compl. ¶¶ 13–63. The organizational Plaintiffs remain immigrant-services nonprofits that assist asylum seekers in the United States. *Id.* ¶¶ 64–66. These Plaintiffs name as Defendants President Donald J. Trump, Attorney General William P. Barr, Acting Secretary of Homeland Security Chad F. Wolf,[4] and related government agencies and leaders. *Id.* ¶¶ 67–79. About a month after the Rule was promulgated, the Tahirih Justice Center ("Tahirih"), another immigrant-services organization, and another group of individual asylum seekers brought a similar challenge to the Rule against most of the same defendants. *I.A. v. Barr*, No. 19-cv-2530, ECF No. 1 (D.D.C. Aug. 21, 2019). The *I.A.* Plaintiffs later filed an amended complaint adding more asylum seekers. *See I.A.* ECF No. 23 ("*I.A.* Compl.").[5]

Plaintiffs in these cases bring mostly the same claims. They contend that the Rule violates the APA because it contradicts the INA and the Trafficking Victims Protection Reauthorization Act (TVPRA); is arbitrary and capricious for several reasons; and that the Departments issued it without the required notice-and-comment procedures. *CAIR* Compl. ¶¶ 224–47, 256–63; *I.A.* Compl. ¶¶ 126–40. Plaintiffs in the *CAIR* suit also allege that the Rule violates asylum seekers' Fifth Amendment due process rights. *CAIR* Compl. ¶¶ 248–55.

---

[4] Upon assuming office in November 2019, Chad Wolf was automatically substituted for Kevin McAleenan under Federal Rule of Civil Procedure 25(d).

[5] The individual Plaintiffs in both cases, in accompanying declarations filed under seal, represent that they are fleeing threats of political persecution, severe violence, or death, and they state that they would fear for their own safety and that of their families if their names were disclosed as a result of their participation in this lawsuit. *See CAIR* ECF No. 36; *I.A.* ECF No. 26.

Plaintiffs in both cases moved for a preliminary injunction on the same day. *CAIR* ECF No. 41; *I.A.* ECF No. 6. But after the Supreme Court stayed a nationwide injunction entered in the Northern District of California, *see Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019), the parties jointly requested that the Court convert their motions and the responsive briefing into cross-motions for summary judgment. *See CAIR* ECF No. 50; *see also* Minute Orders of Sept. 18, 2019.

### D. *East Bay Sanctuary Covenant* Litigation

The same day the Rule was issued, another group of immigrant-services organizations challenged the Rule in the Northern District of California. *See* Complaint, *East Bay Sanctuary Covenant v. Barr*, No. 19-cv-4073-JST (N.D. Cal. July 16, 2019).[6] The plaintiffs in that case moved the next day for a temporary restraining order, which the district court converted to a motion for a preliminary injunction. *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 935–36 (N.D. Cal. 2019). A week later, the district court in that case entered a nationwide injunction barring the defendants from implementing the Rule. *Id.* at 960. The defendants moved for a stay pending appeal, which the Ninth Circuit granted in part. *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019). Specifically, the Ninth Circuit narrowed the injunction's scope to apply only within that circuit. *Id.* It also held that while it considered the appeal, the district court retained jurisdiction "to further develop the record in support of a preliminary injunction extending beyond the Ninth Circuit." *Id.* at 1030–31. A few weeks later, the district court restored the nationwide scope of the injunction. *East Bay Sanctuary Covenant*

---

[6] The *East Bay Sanctuary Covenant* litigation challenging the Rule is separate from other similarly named litigation challenging a different asylum-related rulemaking. *See East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018) (challenging a regulation issued by the Departments that, together with a presidential proclamation, effectively barred asylum for any alien who did not enter the United States at a designated port of entry).

*v. Barr*, 391 F. Supp. 3d 974, 985 (N.D. Cal. 2019).  The defendants then applied to the Supreme Court for a stay of the district court's injunction.  *See Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019).  The Supreme Court granted the application and stayed the district court's injunction pending appeal.  *Id.*

## II.     Legal Standard

Summary judgment is usually appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as matter of law."  *Air Transp. Ass'n. of Am. v. Nat'l Mediation Bd.*, 719 F. Supp. 2d 26, 31–32 (D.D.C. 2010) (alteration in original) (citation omitted), *aff'd*, 663 F.3d 476 (D.C. Cir. 2011).  In "a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the Court's role is limited to reviewing the administrative record, so the standard set forth in Rule 56[] does not apply."  *Id.* at 32.  In such cases, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Cottage Health Sys. v. Sebelius*, 631 F. Supp. 2d 80, 90 (D.D.C. 2009).[7]

## III.    Analysis

As described above, Plaintiffs allege that the Rule is unlawful for several reasons, and Defendants argue, as a threshold matter, that the Court lacks subject-matter jurisdiction over the organizational Plaintiffs' claims.  First, as it must, the Court considers Defendants' justiciability

---

[7] Plaintiffs argue—and Defendants contest—that the Court may consider evidence outside the administrative record.  *See CAIR* ECF No. 59 at 1–2; *I.A.* ECF No. 50 at 10; *CAIR* ECF No. 58; *I.A.* ECF No. 48 ("Defs.' Supp. Br.").  The Court need not decide this question because it finds the Rule procedurally deficient based only on the information in the administrative record.

arguments and concludes that at least one organizational Plaintiff in each case has standing, and that their claims fall within the INA's zone of interests. Second, the Court turns to Plaintiffs' claims and holds that because Defendants unlawfully failed to comply with the APA's notice-and-comment requirements, the Rule must be vacated. For that reason, it need not consider Plaintiffs' other challenges to the Rule. *See Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 241 (D.C. Cir. 1992).

## A. Justiciability

Defendants advance several challenges to the Court's power to hear this case. With respect to the organizational Plaintiffs in both cases, Defendants argue that: (1) they lack standing to sue, and (2) their claims fall outside the relevant zone of interests. The Court addresses each in turn. Because the Court finds that at least one organization in each case has standing, it need not consider whether the individual Plaintiffs also have standing. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). For the same reason, the Court also need not consider whether the INA's complex jurisdiction stripping and channeling provisions—which largely apply to individual aliens' challenges that either seek review of a removal order or involve questions arising from a removal action or proceeding, *see O.A.*, 404 F. Supp. 3d at 126–38—divest the Court of jurisdiction. Indeed, the Defendants do not even appear to argue that these jurisdictional provisions apply to the organizational Plaintiffs, which are seeking to vindicate their own rights under the APA.

### 1. Standing

An organization may assert standing "on its own behalf, on behalf of its members or both." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). Here, the organizational Plaintiffs in both *CAIR* and *I.A.* argue they have standing based on their own interests. *See CAIR* ECF No. 22 at 3–5; *I.A.* ECF No. 6 at 10–11. The Court must therefore

determine whether they have shown an "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Equal Rights Ctr.*, 633 F.3d at 1138 (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). The Court's standing inquiry is slightly different when a plaintiff seeks to vindicate a procedural right, such as having been unlawfully denied the opportunity to comment on a proposed rule. *See Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). Specifically, "a plaintiff asserting a procedural violation must show 'a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest.'" *Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 12–13 (D.D.C. 2002) (quoting *Fla. Audubon Soc'y. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996)). A plaintiff asserting such a violation need not, however, show that the agency would have acted any differently. *Mendoza*, 754 F.3d at 1010. Yet even in the context of a procedural injury, "the injury in fact requirement is a hard floor of Article III jurisdiction that cannot be altered by statute." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 183 (D.C. Cir. 2017). Once a plaintiff clears that hurdle, though, "the normal standards for immediacy and redressability are relaxed." *Mendoza*, 754 F.3d at 1010.

The organizational Plaintiffs "bear[] the burden of establishing these elements," which they must support "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At summary judgment, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true." *Id.* But when evaluating standing, the Court must assume that the organizational Plaintiffs would prevail on the merits of their claims. *Conference Grp., LLC v. FCC*, 720 F.3d 957, 962 (D.C. Cir. 2013). Additionally, "[a]t

13

least one plaintiff must have standing to seek each form of relief requested in the complaint."
*Town of Chester*, 137 S. Ct. at 1651.

Defendants argue that the organizational Plaintiffs in both cases lack standing because they have not suffered a legally cognizable injury. To satisfy the injury-in-fact requirement, an organization must allege that it suffered a "concrete and demonstrable injury to [its] activities—with the consequent drain on [its] resources—[that] constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The D.C. Circuit has articulated a two-prong test for determining whether an organization meets this standard. First, an organization must show that the challenged conduct "perceptibly impair[s] the organization's ability to provide services." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). This initial showing must also demonstrate a "direct conflict between the defendant's conduct and the organization's mission." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (emphasis omitted) (holding that such a conflict "is necessary—though not alone sufficient—to establish standing"). Second, an organization must show that it "used its resources to counteract [the alleged] harm." *Food & Water Watch*, 808 F.3d at 919 (citation omitted); *see also Spann*, 899 F.2d at 27 ("*Havens* makes clear . . . that an organization establishes Article III injury if it alleges that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.").

At least one organizational Plaintiff in each case has met this burden. Specifically, both CAIR and Tahirih have shown how the Rule will frustrate their ability to provide legal services directly to asylum applicants, a core component of their respective missions. *CAIR* ECF No. 41-2 ("Cubas PI Decl.") ¶¶ 3–7, 19–22; *I.A.* ECF No. 6-1 ("Cutlip-Mason Decl.") ¶¶ 6, 12–13, 19–

14

24.  As discussed above, the Rule is intended to bar many individuals from qualifying for

asylum.  84 Fed. Reg. at 33,835.  As a result, individuals covered by the Rule may avoid removal

only by meeting the heightened "reasonable fear" screening standard that applies in non-asylum

withholding cases.  *See id.* at 33,837.  Both CAIR and Tahirih explain that preparing individuals

for interviews in which that standard is applied is far more resource intensive; the Rule will

therefore severely limit the number of individuals they may serve.  Cubas PI Decl. ¶¶ 19, 22;

Cutlip-Mason Decl. ¶¶ 20, 23.  For example, CAIR "estimates that it will be able to serve 50%

fewer asylum seekers under the Rule, based on its years of experience perfecting and timing its

service delivery models, its client base statistics, and the human and fiscal resource shifting that

it already is undertaking and will continue to undertake in an effort to respond to the Rule."

Cubas PI Decl. ¶ 19.  Additionally, both organizations explain how the Rule requires them to

now prepare children for their own proceedings.  *CAIR* ECF No. 3-3 ("Cubas TRO Decl.")

¶¶ 31–35; Cutlip-Mason Decl. ¶ 21.  Tahirih also explains that the Rule will force more asylum

claims to be filed defensively once an alien is in removal proceedings, requiring it to spend much

more staff time on individual cases.  Cutlip-Mason Decl. ¶ 19.  As a result, like CAIR, Tahirih

"will be forced to reduce the number of clients [it] can serve with [its] funding."  *Id.* ¶¶ 23–24.

And both organizations also explain how the Rule requires them to divert resources to adapt to

the Rule.  *Id.* ¶ 24; Cubas TRO Decl. ¶¶ 16–19.

     These declarations—the substance of which Defendants do not contest—show that the

Rule both conflicts with these organizations' missions and inhibits their daily activities.  *See Ctr.*

*for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 38 (D.D.C. 2018).  They also show that

these organizations have and will continue to be required to expend resources to counteract the

Rule.  *See O.A.*, 404 F. Supp. 3d at 143; *see also Sierra Club v. Jewell*, 764 F.3d 1, 7 (D.C. Cir.

2014) (explaining that an injury is sufficiently imminent when a plaintiff can show a "substantial probability of injury") (citation omitted); *Spann*, 899 F.2d at 27. "No more is required to establish standing under *Havens*." *O.A.*, 404 F. Supp. 3d at 143.

Defendants make several arguments to the contrary, but ultimately none carries the day. First, they argue that organizations like CAIR and Tahirih have no cognizable interest under the INA; thus, they say, *Havens* is inapplicable. *See CAIR* ECF No. 43, *I.A.* ECF No. 17 ("Defs.' Cross Mtn") at 12. They appear to argue that the INA's channeling provisions, 8 U.S.C. § 1252(a)(5) and (b)(9), together with the lack of a private statutory right of action, mean that these organizations cannot challenge the Rule even to the extent that it affects them. *See id.* The Court is unpersuaded. To begin with, Defendants have cited no case in which a court precluded an organization from challenging an immigration-related rule under the APA as a matter of law in this way. Indeed, the case law stands in stark contrast.[8] More fundamentally, the text of Section 1252 provides no support for the proposition that organizations may not facially challenge under the APA immigration-related regulations that harm their own interests. And the specific channeling provisions cited by Defendants apply to challenges that either seek review of a removal order or involve questions arising from a removal action or proceeding. *O.A.*, 404 F. Supp. 3d at 126–38; *see Dep't of Homeland Sec. v. Regents of the Univ. of California*, No. 18-

---

[8] *See, e.g.*, *O.A.*, 404 F. Supp. 3d at 126–38; *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 45 (D.D.C. 2019); *Auyda, Inc. v. Attorney Gen.*, 661 F. Supp. 33, 34 (D.D.C. 1987), *aff'd sub nom. Ayuda, Inc. v. Attorney Gen.*, 848 F.2d 1297 (D.C. Cir. 1988); *see also Daingerfield Island Protective Soc. v. Lujan*, 797 F. Supp. 25, 29 (D.D.C. 1992) (noting that "the Supreme Court has held that under the APA, it is not necessary to find a private right of action under a particular statute in order to enforce a federal agency's compliance with that statute"), *aff'd sub nom. Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994).

587, 2020 WL 3271746, at *8 (U.S. June 18, 2020) (noting that § 1252(b)(9) "is certainly not a bar where, as here, the parties are not challenging any removal proceedings").

Second, Defendants argue that CAIR and Tahirih lack third-party standing to challenge the Rule on behalf of aliens who might be removed. Defs.' Cross Mtn at 12–13.[9] But these organizations are not claiming standing on behalf of their clients, or any other individual asylum applicants. They are not challenging an immigration enforcement decision. Nor are they arguing they have standing because more of their clients may ultimately be denied asylum. Rather, the organizational Plaintiffs argue that the Rule will directly injure *them* by making it harder for them to conduct their own basic activities. Indeed, Defendants' position would seem to preclude an organization from bringing an APA challenge to any rule that even tangentially relates to immigration.

Third, Defendants argue that while "the legal landscape may have partially changed" because of the Rule, "the organizations can still provide legal services." *Id.* at 14. In Defendants' view, then, they have not suffered a cognizable injury. But under the law of this Circuit, the injury requirement is not so demanding. *O.A.*, 404 F. Supp. 3d at 143 ("Courts have never required an organization to prove that is it entirely hamstrung by challenged actions."); *see*

---

[9] Relatedly, Defendants also argue in passing that these organizational Plaintiffs lack standing to challenge policies related to an agency's discretionary enforcement decisions as they relate to a third party. Defs.' Cross Mtn at 12–13 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) and related cases). Again, the organizational Plaintiffs are not relying on any third party, nor are they challenging the substance of any discretionary decision. Rather, they are challenging whether the agency adhered to the procedural requirements of the APA. And Defendants have identified no language in the statute suggesting that the INA precludes that sort of review. Defendants also point out that at least one judge on the D.C. Circuit has questioned the scope of cognizable organizational injuries under *Havens*, *see People for the Ethical Treatment of Animals (PETA) v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1099, 1101–03 (D.C. Cir. 2015) (Millett, J., dubitante), but this Court lacks the power to sidestep binding Circuit precedent, *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997).

17

*also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 387

F. Supp. 3d 33, 45 (D.D.C. 2019). Organizations satisfy the first prong of the injury inquiry if

they show "that their activities have been *impeded*" in some way. *Abigail All. for Better Access

to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (emphasis added);

*see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016)

(finding a cognizable injury where "new obstacles unquestionably [made] it more difficult for

[organizations] to accomplish their primary mission"); *Turlock Irrigation Dist. v. FERC*, 786

F.3d 18, 24 (D.C. Cir. 2015) (noting that "an organization must allege that the defendant's

conduct 'perceptibly impaired' the organization's ability to provide services in order to establish

injury in fact") (citation omitted); *People for the Ethical Treatment of Animals v. U.S. Dep't of

Agric.* (*PETA*), 797 F.3d 1087, 1093 (D.C. Cir. 2015) (noting that "the key issue is whether the

organization has suffered a concrete and demonstrable injury to its activities" (cleaned up)).

      Fourth, Defendants argue that the injuries the organizational plaintiffs say the Rule will

cause "are speculative and self-inflicted." Defs.' Cross Mtn at 14. While it is true that an

organization may not base standing on "a 'self-inflicted' budgetary choice," *PETA*, 797 F.3d at

1093 (citation omitted), that is not the case here. For example, these organizational Plaintiffs do

not rely on harm flowing from expenses related to these lawsuits or budgetary decisions related

to their advocacy. *See id.* Rather, as discussed above, they explain how the Rule will make it

harder for them to provide their core representational services. *See also Equal Rights Ctr.*, 633

F.3d at 1140 (noting that whether an injury is self-inflicted does not "depend on the voluntariness

or involuntariness of the plaintiffs' expenditures," but whether "they undertook the expenditures

in response to, and to counteract, the effects of the defendants' alleged discrimination").

Additionally, while the Court "may reject as overly speculative those links which are predictions

of future events," *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (citation omitted), CAIR and Tahirih do not rely on an attenuated chain of improbable causes and effects. Rather, their declarations persuasively "demonstrate a realistic danger of sustaining a direct injury," and no more is required. *Id.*

Fifth, Defendants argue that the organizational Plaintiffs have not suffered a cognizable injury just because they "must adapt to the new requirements by spending more time on their clients' cases, adjusting staffing, . . . analyzing the new policy[,] and revising training and orientation materials." Defs.' Cross Mtn at 15. If that were all a plaintiff had to show, say Defendants, "then any legal services or advocacy organization could sue in federal court whenever there is a change in the law." *Id.* This argument has some intuitive appeal, but it is unsupported by D.C. Circuit precedent.

Indeed, the two cases that Defendants cite in support of this argument are inapposite. The passage they quote from the first case, *Food & Water Watch,* instructs only that an agency may not manufacture an injury by suing. 808 F.3d at 381–82; *see also Spann*, 899 F.2d at 27. They cite the second case, *National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995), for the proposition that "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." Defs.' Cross Mtn at 15–16. But that case is distinguishable from the situation here. There, an advocacy organization tried to assert an injury in part because it educated its members and the public about the consequences of new tax legislation, something that it would ordinarily do. *Nat'l Taxpayers Union*, 68 F.3d at 1434. The court in that case explained that plaintiffs "cannot convert [their] ordinary program costs into an injury in fact." *Id.* But the court was careful to distinguish that case from others, such as *Spann*,

where an organization had to expend greater resources on education in order to counteract the harm it had suffered. *Id.*; *Spann*, 899 F.2d at 28–29 (noting that "increased education and counseling could plausibly be required" to counteract defendants' conduct). Indeed, the year before *National Taxpayers Union,* the Circuit held that an organization cleared the standing hurdle when the defendant's conduct allegedly forced it to spend additional resources on community counseling and reduced the effectiveness of its outreach efforts. *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994). Defendants' interpretation of *National Taxpayers Union* would seem to all but preclude a legal services organization from ever proving standing. That cannot be so. *Cf. Ukrainian-Am. Bar Ass'n v. Baker*, 893 F.2d 1374, 1378–80 (D.C. Cir. 1990).

Finally, Defendants argue that the organizational Plaintiffs may not rely on harm related to lack of notice and comment because they have not alleged a non-procedural injury. Defs.' Cross Mtn at 16.[10] Therefore, Defendants argue, they are impermissibly seeking to vindicate "a procedural right *in vacuo*." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). But as discussed above, CAIR and Tahirih have shown cognizable concrete injuries caused by the Rule. Moreover, both have explained that they regularly submit comments to proposed rules before they go into effect and they would have done so here if they had been given the opportunity. Cubas TRO Decl. ¶ 40; Cutlip-Mason Decl. ¶ 25. Tahirih would have "explain[ed] why the Rule is contrary to domestic law, contrary to international law, and factually

---

[10] Defendants argue in passing that the Departments requested comments when promulgating the Rule, thereby "curing the very purported injuries Plaintiffs allege." Defs.' Cross Mtn at 16. This argument is unpersuasive. "Permitting the submission of views after the effective date is no substitute for the right of interested persons to make their views known to the agency in time to influence the rule making process in a meaningful way." *New Jersey v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980) (citation omitted)).

unsupported." Cutlip-Mason Decl. ¶ 25. And CAIR would have "inform[ed] the Government of the substantial and irreparable harms—both to the organization and its clients—that the policy would create." Cubas TRO Decl. ¶ 40. "The procedural right at stake here—the ability to comment on [a rule which categorically bars a large number of people from qualifying for asylum]—is quite obviously linked to their concrete interest, [providing assistance with asylum applications]." *Iyengar*, 233 F. Supp. 2d at 13. Thus, CAIR and Tahirih do not seek to vindicate merely a "procedural right without some concrete interest that is affected by the deprivation." *Summers*, 555 U.S. at 496.[11] And it does not matter that some organizational Plaintiffs have in fact commented, because that does not cure the Departments' earlier failure. *New Jersey v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980).

For these reasons, the Court finds that at least one organizational Plaintiff in each case has standing, and thus, the Court has subject-matter jurisdiction to hear their claims.

### 2.    Zone of Interests

Though not jurisdictional, the zone-of-interests test is a "tool for determining who may invoke the cause of action" in a statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014). The test simply asks "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. For claims brought under the APA, "the test is not 'especially demanding.'" *Id.* at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) ("We apply the test in keeping with Congress's 'evident intent' when enacting the APA 'to make agency action

---

[11] *See also Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) ("All that is necessary is to show that the procedural step was connected to the substantive result."); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) ("[T]he plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff.").

presumptively reviewable.'" (citation omitted))).  This is so because the APA "permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review."  *Id.*  To satisfy the test, the Court must "look to whether [a plaintiff] fall[s] within the zone of interests sought to be protected by the substantive statute pursuant to which the [Departments] acted: the INA."  *Mendoza*, 754 F.3d at 1016.  That said, no "indication of congressional purpose to benefit the would-be plaintiff" is required.  *Patchak*, 567 U.S. at 225.  Rather, the critical question "is whether the challenger's interests are such that they 'in practice can be expected to police the interests that the statute protects.'"  *Amgen, Inc. v. Smith*, 357 F.3d 103, 109 (D.C. Cir. 2004) (citation omitted).  The test bars suit "only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue."  *Lexmark Int'l*, 572 U.S. at 130 (citation omitted).

CAIR and Tahirih have no trouble clearing this low hurdle.  First, their interests are neither inconsistent with nor marginally related to the INA.  The INA includes a "statutory procedure for granting asylum to refugees," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 427 (1987), and these organizations help individuals navigate that procedure.  *See O.A.*, 404 F. Supp. 3d at 144.  Moreover, the statute itself "includes provisions designed to ensure that pro bono legal services of the type that the organizational Plaintiffs provide are available to asylum seekers." *Id.* (cleaned up).  For example, the INA explicitly requires the Attorney General to advise an alien applying for asylum "of the privilege of being represented by counsel," and further requires that the alien be provided a regularly updated list of persons "who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis."  8 U.S.C. § 1158(d)(4).  Similar statutory requirements exist throughout the INA to ensure that aliens in

22

both expedited and regular removal proceedings can be represented by counsel. *See id.* § 1228(a)(2), (b)(4)(B); *id.* § 1362. The Court has little trouble concluding that the organizational Plaintiffs' interests fall within the zone of interests protected by the INA.

All the same, Defendants cite two cases they assert instruct otherwise. First, they point to a chambers opinion in which Justice O'Connor, sitting as a Circuit Justice, expressed her view that a legal assistance organization that assisted undocumented aliens fell outside the zone of interests of the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. 99–603, 100 Stat. 3359. *INS v. Legalization Assistance Project of Los Angeles Cty. Fed'n of Labor* (*LAP*), 510 U.S. 1301, 1305 (1993) (O'Connor, J., in chambers) (noting that the "IRCA was clearly meant to protect the interests of undocumented aliens, not the interests of organizations such as respondents"). To begin with, *LAP* represents the opinion of only a single Justice on an application for interim relief that arose under a statute other than the INA. *See O.A.*, 404 F. Supp. 3d at 145; *see also East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 769 n.10 (9th Cir. 2018); *Kimble v. Swackhamer*, 439 U.S. 1385, 1385 (1978) (Rehnquist, J., in chambers). But more importantly, recently the Supreme Court has consistently adopted a broader view of the test than the one Justice O'Connor espoused in *LAP*. *See, e.g.*, *Lexmark Int'l*, 572 U.S. at 130; *Patchak*, 567 U.S. at 225. Indeed, in *National Credit Union Administration v. First National Bank & Trust Co.*, the Supreme Court held—in an opinion authored by Justice Thomas over Justice O'Connor's dissent—that the test is satisfied so long as "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute in question." 522 U.S. 479, 492 (1998) (cleaned up). As discussed above, the organizational Plaintiffs here easily clear this hurdle.

Defendants also rely on *Federation for American Immigration Reform, Inc. v. Reno* (*FAIR*), 93 F.3d 897 (D.C. Cir. 1996). But that case does not help them either. In *FAIR*, an organization "dedicated to 'ensuring that levels of legal immigration are consistent with the absorptive capacity of the local areas where immigrants are likely to settle'" challenged the government's decision to parole Cuban immigrants. *Id.* at 899 (citation omitted). The Circuit held that the organization was outside the INA's zone of interests because it could point to nothing in the INA that suggested Congress was concerned about the regional impact of immigration. *Id.* at 901–04. Here, by contrast, the organizational Plaintiffs have pointed to those portions of the INA that directly reference the asylum services they provide.

For these reasons, the Court finds that the zone-of-interests test does not bar the Court from considering the organizational Plaintiffs' claims.

### B. The APA's Notice-and-Comment Requirements

The APA generally requires substantive rules to be promulgated through notice-and-comment rulemaking.[12] *See* 5 U.S.C. § 553. These procedures are not a mere formality. They "are designed (1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005). And they "attempt[] to provide a 'surrogate political

---

[12] The Rule itself does not suggest, and Defendants do not claim, that it is covered by the APA's exception for non-legislative rules. *See generally* 84 Fed. Reg. 33,829; *see also Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017) ("The APA mandates that substantive, legislative rules be promulgated only after public notice and comment, but it does not extend that requirement to 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'" (quoting 5 U.S.C. § 553(b)(3)(A))).

process' that takes some of the sting out of the inherently undemocratic and unaccountable rulemaking process." *Regents of the Univ. of California*, No. 18-587, 2020 WL 3271746, at *27 n.13 (Thomas, J., dissenting) (citation omitted)).

Because the Rule was promulgated without these procedures, the question for the Court is whether one of the APA's exceptions to the usual requirements applies.[13]  Defendants assert that two do.  First, under the "good cause" exception, an agency need not provide notice and an opportunity to comment "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(B). Second, under the "foreign affairs function" exception, the normal notice-and-comment requirements do not apply "to the extent that there is involved . . . a military or foreign affairs function of the United States."  *Id.* § 553(a)(1).

Despite their potentially broad sweep, the D.C. Circuit has instructed that these exceptions must be "narrowly construed" and "reluctantly countenanced."  *New Jersey*, 626 F.2d at 1045.  The Circuit has also emphasized that the broader a rule's reach, "the greater the

---

[13] Defendants briefly suggest that the Rule does not constitute final agency action or is otherwise not ripe for review. Defs.' Cross Mtn at 24–25.  This argument appears only to apply to those Plaintiffs who are individual aliens, but in any event, as applied to the organizational Plaintiffs, it surely fails.  Agency action is final if it (1) "mark[s] the consummation of the agency's decisionmaking process," so that it is not "of a merely tentative or interlocutory nature," and (2) it is "one by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Eng'rs  v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016).  Here, for reasons already discussed, the Rule satisfies both criteria.  Indeed, by its own terms, the Rule was effective immediately, and the organizational Plaintiffs had no opportunity to comment before it went into effect.  84 Fed. Reg. at 33,830.  Additionally, the Rule is ripe for review because the issues it presents are "purely legal," there is no reason to believe they "would benefit from a more concrete setting," and—for the reasons just discussed—"the agency's action is sufficiently final."  *Teva Pharm. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1308 (D.C. Cir. 2010) (citation omitted).

25

necessity for public comment." *American Fed'n of Gov't Emps. v. Block*, 655 F.2d 1153, 1156 (D.C. Cir. 1981). With these baseline principles in mind, the Court considers whether either the good cause or foreign affairs function exception applies here. Neither does.

### 1. The Good Cause Exception

The APA permits an agency to dispense with notice-and-comment procedures when it finds that doing so would be "impracticable, unnecessary, or contrary to the public interest," an exception said to require "good cause." 5 U.S.C. § 553(b)(B). Here, Defendants assert that providing notice and comment would have been both impracticable and contrary to the public interest. 84 Fed. Reg. at 33,841.

Even on top of the principles described above, the D.C. Circuit has set a high bar for satisfying good cause. As it recently explained, review of an "agency's legal conclusion of good cause is *de novo*." *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014). In other words, a court may not simply defer to an agency's judgment about whether good cause exists. Rather, the Circuit instructs, a court must "examine closely" an agency's stated rationale and the circumstances surrounding the agency's decision. *Council of S. Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 (D.C. Cir. 1981). The good cause inquiry is both "meticulous" and "demanding." *Sorenson*, 755 F.3d at 706 (citation omitted).

The Circuit has found notice-and-comment procedures sufficiently impracticable only in unusual cases, such as when "air travel security agencies would be unable to address threats posing 'a possible imminent hazard to aircraft, persons, and property within the United States,'" or when "a rule was of 'life-saving importance' to mine workers in the event of a mine explosion." *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (citation omitted). And it has instructed that the public interest ground "is met only in the rare circumstance when ordinary procedures—generally presumed to serve the public interest—would in fact harm that

interest." *Id.* at 95. The good cause exception is therefore "appropriately invoked when the timing and disclosure requirements of the usual procedures would defeat the purpose of the proposal—if, for example, 'announcement of a proposed rule would enable the sort of financial manipulation the rule sought to prevent.'" *Id.* (citation omitted).

Defendants argue that notice-and-comment rulemaking would have been impracticable and contrary to the public interest because that process would have led to a surge of asylum seekers at the southern border of the United States. 84 Fed. Reg. at 33,841. The Departments asserted upon the Rule's promulgation that if it were published for notice and comment *before* becoming effective, smugglers might communicate its impending effects to potential asylum seekers, thus creating a "risk of a surge in migrants hoping to enter the country" beforehand. *Id.* They also asserted that pre-promulgation "notice and comment, or a delay in the effective date, would be destabilizing and would jeopardize the lives and welfare of aliens who could surge to the border to enter the United States before the rule took effect." *Id.* According to the Departments, their "experience has been that when public announcements are made regarding changes in our immigration laws and procedures, there are dramatic increases in the numbers of aliens who enter or attempt to enter the United States along the southern border." *Id.*

Common sense dictates that the announcement of a proposed rule may, at least to some extent and in some circumstances, encourage those affected by it to act before it is finalized. But this rationale cannot satisfy the D.C. Circuit's standard in this case unless it is adequately supported by evidence in the administrative record suggesting that this dynamic might have led to the consequences predicted by the Departments—consequences so dire as to warrant dispensing with notice and comment procedures. *See Sorenson*, 755 F.3d at 707. After carefully

examining the record, the Court finds that it does not contain sufficient evidence to justify invocation of the good cause exception.

The evidence that Defendants rely on begins—and for the most part ends—with a single newspaper article in the Washington Post from October 2018; indeed, it is the only specific evidence the Departments cited when promulgating the Rule. *See* 84 Fed. Reg. 33,841. That article includes several passages suggesting that: (1) after the United States abruptly stopped separating families who applied for asylum together in the spring of 2018, smugglers encouraged asylum seekers to bring their children and to speed up their efforts to reach the border; (2) those same smugglers may coach asylum seekers about what to tell interviewing officers so they can meet the credible fear standard; and (3) many months after the United States stopped separating families, a greater proportion of asylum applicants had brought children or other family members with them to the border. ECF No. 21-1 to 21-9 ("AR") at 438–49.

Under Circuit precedent, this newspaper article alone does not provide good cause to bypass notice-and-comment rulemaking procedures for the reasons cited by Defendants. Even assuming that the Rule was likely to have had a similar effect as the regulatory change described in the article, the article contains no evidence that *that* change caused a surge of asylum seekers at the border—let alone one on a scale and at a speed that would have jeopardized their lives or otherwise have defeated the purpose of the Rule if notice-and-comment rulemaking had proceeded.[14] In fact, the article lacks any data suggesting that the number of asylum seekers

---

[14] The process of travelling through Mexico to the southern border of the United States to seek asylum, as described in the article, is risky for a host of reasons that have nothing to do with the Rule. Those risks are not at issue here. The question is whether there is an adequate basis for the Departments' prediction that, if notice-and-comment rulemaking had proceeded, a surge of asylum seekers would have jeopardized life and defeated the purpose of the Rule, such that Defendants' invocation of the good cause exception was justified.

increased *at all* during this time—only that more asylum seekers brought children with them. Clearly, the article suggests that smugglers are not oblivious to major changes in United States' immigration policy, and that they pass on the information they learn to some who may use it to game the asylum process. None of that is surprising. But at bottom, the article does little if anything to support Defendants' prediction that undertaking notice-and-comment rulemaking would have led to a dramatic, immediate surge of asylum applicants at the border that would have had the impact they suggest. And other articles from the administrative record that Defendants cite either do not support, or even undermine, their prediction of such a surge.[15]

Defendants offer no other data or information that persuasively supports their prediction of a surge. They point the Court to several charts that they argue support their invocation of good cause. *See* Defs.' Cross Mtn at 39–40. One shows the number of enforcement actions undertaken by Customs and Border Protection at the southwest border from October 2016 through May 2019, broken down by the alien's country of origin. *See* AR at 119. But the Court can glean little from that chart, other than that these enforcement actions decreased somewhat during the first six months of that period, increased gradually over the next few years, and then increased more sharply early in 2019. Defendants also point to a chart that depicts "Southwest Border Encounters of non-Mexican Aliens" each month from October 2012 to March 2019 and

---

[15] For example, according to one article, about a month before the Rule was promulgated, the President tweeted twice that Guatemala was preparing to sign an agreement that would force migrants crossing through it to apply for asylum there and block them from seeking asylum elsewhere, including in the United States. AR at 635. But nothing in the record suggests that those tweets caused a surge at the southern border. Another article noted that "migrants themselves don't necessarily know what asylum is or why they might or might not qualify for it," and that some migrants incorrectly believe asylum outcomes turn on whether they have relatives in the United States. AR at 681. A third reported that while migrants are aware of "the basics"—for example, they "know to request asylum" and that families are less likely to be detained—they "generally lack understanding of United States immigration law." AR at 768.

also contains some agency observations of that data. *See* AR at 208–20. But again, all this chart shows is that as of March 2019, more and more non-Mexican aliens were encountered at the southern border and that the agency projected the number to continue to rise for unspecified reasons. Interestingly, though, the agency's observations reflect that even the relatively high number of encounters reported in March 2019 was not unprecedented; a higher number had been reported a decade earlier. AR at 210.

As far as providing a basis for predicting a surge of asylum seekers prompted by the publishing of the Rule for notice and comment, these numbers would be meaningful if Defendants explained that peaks or troughs in the data corresponded with regulatory or policy changes in the United States. But Defendants have not done so, and the Court cannot find any such analysis in the record.[16] *See Achgzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 178 (D.D.C. 2016) (noting that "it is not the Court's role to mine the record in an effort to identify potentially helpful evidence not identified by the parties"). At bottom, as Plaintiffs point out, Defendants—"despite studying migration patterns closely"—have "failed to document any immediate surge that has ever occurred during a temporary pause in an announced policy." *I.A.* ECF No. 21 at 18. That failure is striking.

The Circuit's decision in *Tennessee Gas Pipeline v. Federal Energy Regulatory Commission*, 969 F.2d 1141 (D.C. Cir. 1992), is instructive when it comes to evaluating an

---

[16] The record *does* suggest—and the Court does not doubt—that the United States' immigration system at the southern border was significantly strained when the Rule was issued. For example, documents in the record show that more people were entering the United States without documents than had over the previous decade, AR at 676, and more of them were comprised of families or children, AR at 223, 682. But the Departments' prediction of a surge to the border brought about by notice-and-comment procedures, on which they base their invocation of good cause, is a separate matter for which the record does not contain adequate support.

agency's invocation of good cause based on its prediction. That case involved a rule that required natural gas pipeline companies to provide the Federal Energy Regulatory Commission (FERC) certain environmental information on their pipeline construction plans. 969 F.2d at 1143. FERC invoked the good cause exception to dispense with notice and comment, arguing that those procedures could contribute to environmental harm because the companies "may respond to the proposed changes in the regulations by commencing construction" to avoid regulatory uncertainty. *Id.* Judge Buckley, joined by Judges Ginsburg and Williams, rejected the agency's argument because it had "provided little factual basis for its belief that pipelines [would] seek to avoid [the] future rule by rushing new construction and replacements with attendant damage to the environment." *Id.* at 1145. Indeed, the court noted that FERC had provided only a single example where covered construction had led to environmental harm. *Id.* (observing that "evidence of a single violation . . . while not insubstantial, is a thin reed on which to base a waiver of the APA's important notice and comment requirements"). The court also rejected the agency's vague and conclusory invocation of its subject-matter expertise, observing that it "does not excuse the [agency's] failure to cite such examples in support of its claim." *Id.*; *see also id.* at 1146 (noting that "if the agency has . . . a wealth of practical experience on which to draw in order to justify its action, then it was not forced to rely on the 'self-evident' need for the interim rule").[17] To be sure, the court did not suggest that impending environmental harm or

---

[17] In *Tennessee Gas Pipeline*, 969 F.2d 1141, the Circuit also distinguished *Mobil Oil Corp. v. Dept of Energy*, 728 F.2d 1477 (Temp. Emer. Ct. App. 1983), a case relied on by Defendants. *Mobil Oil*, in the court's view, presented unique circumstances. 969 F.2d at 1146. The agency in *Mobil Oil* issued a regulation "to equalize prices charged to different classes of customers by oil refiners during the energy crisis of the early 1970's." *Id.* But as the Circuit observed, "[i]t is well recognized that prices can be changed rapidly to accommodate shifts in regulatory policy." *Id.* Defendants here offered no evidence from which the Court can reasonably conclude that migratory patterns change with anything approaching the speed of commodity prices. *See id.*

regulatory evasion could *never* constitute good cause. Rather, the court held, the agency had not provided a record sufficient to warrant invocation of the exception. *See id.* at 1145.

So too here. In *Tennessee Gas Pipeline*, the agency predicted a surge in potential pipeline construction; here, the Departments predicted a surge in potential asylum seekers. There, the agency thought that companies would act immediately to avoid more stringent regulatory requirements; here, the Departments say that so many asylum seekers would have acted so quickly to avoid more stringent requirements that a surge would have jeopardized their lives and the very purpose of the Rule. There, the agency fell back on its "ample practical experience," *id.*; here, the Departments also rely on their "experience." *See* 84 Fed. Reg. 33,841. And in both cases, the agencies failed to provide meaningful factual support for their predictions. The evidence offered by Defendants in this case—a newspaper article—is similarly too "thin [a] reed on which to base a waiver of the APA's important notice and comment requirements." 969 F.2d at 1145.

Still, Defendants argue that this Court should defer to the Departments' invocation of good cause. *See* Defs.' Supp. Br. at 4. Although the Circuit was clear in *Sorenson* that an agency's legal conclusion of good cause is subject to de novo review, Defendants point out that in a footnote in that case, the Circuit acknowledged that courts should "defer to an agency's factual findings and expert judgments therefrom, unless such findings and judgments are arbitrary and capricious." 755 F.3d at 706 n.3.

The *Sorenson* footnote does not save Defendants' good cause argument. To begin with, the record contains no information suggesting that the agency sought to confirm the accuracy of the article and so it is unclear whether the Court should afford it *any* deference. *Cf. City of New Orleans v. SEC*, 969 F.2d 1163, 1167 (D.C. Cir. 1992) ("We have held that an agency's reliance

32

on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data is arbitrary agency action, and the findings based on [such a] study are unsupported by substantial evidence.") (alteration in original) (quotation omitted). The press, of course, is not infallible. Even so, the Court assumes for argument's sake that the article contains findings of fact entitled to such deference. And the Court defers to them, so far as they go. For example, as discussed above, the Court does not doubt that smugglers adjust their sales pitches to some degree in response to changes in United States' immigration policy. Similarly, the Court credits the Departments' prediction that the number of non-Mexican aliens seeking asylum at the border would continue to increase as depicted, for whatever reason.

The question, though, is whether Defendants' conclusory prediction of a surge in asylum seekers so great and so rapid as to threaten life or defeat the very purpose of the Rule if notice-and-comment procedures were followed is entitled to deference on this record. And Circuit precedent commands that it is not. As explained above, in *Tennessee Gas Pipeline*, the court found that there was "little factual basis" for the agency's prediction, and thus did not defer to it, even though it was "hesitant to discount such forecasts" because they "necessarily involve deductions based on expert knowledge of the Agency." 969 F.2d at 1145 (citation omitted). The same is true here.

*Sorenson* itself provides another example of the Circuit declining to defer to an agency's predictive judgment without an adequate record or explanation. In that case, Judge Rogers Brown, joined by Judges Griffith and Millett, rejected the agency's invocation of good cause because, after closely examining the record, they concluded that "there were no factual findings supporting the reality of the threat"—a potential shortfall in a fund administered by the Federal Communications Commission (FCC). 755 F.3d at 706. That court emphasized that the

33

administrative record did not reflect when the shortfall would occur or whether the FCC had considered reasonable alternatives—other than dispensing with notice and comment—to forestall it. *See id.* at 707. The record in this case suffers from similar shortcomings. For example, even assuming *some* increase in asylum applications were to occur if the Rule had been subject to notice-and-comment rulemaking, Defendants simply offer no factual basis or explanation for when or why that increase would ripen into a crisis so severe that it would justify bypassing those procedures. As in *Sorenson*, this Court in no way "exclude[s] the possibility" that the circumstances here "could conceivably justify bypassing the notice-and-comment requirement." *Id.* at 707. But "this case does not provide evidence of such an exigency." *Id.* And of course, the Court is limited to considering the evidence in the administrative record on which Defendants relied. *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 82 (D.D.C. 2007).

Defendants also point to *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018). Defs.' Cross Mtn at 40. In that case, several organizations challenged a regulation issued by the Departments that, together with a presidential proclamation, effectively barred asylum for any alien who did not enter the United States at a designated port of entry. *See East Bay*, 354 F. Supp. 3d at 1102. The regulation in that case was also issued without notice and comment, *see id.*, and the Departments invoked the same two exceptions under § 553, *see* 83 Fed. Reg. 55,934, 55,950–51 (Nov. 9, 2018). In granting a motion for a preliminary injunction, the district court nonetheless held in *East Bay* "that the Government is likely to prevail on its claim regarding the good cause exception" based on the same newspaper article referred to above. 354 F. Supp. 3d at 1115.

That decision is unpersuasive for several reasons. First, Ninth Circuit precedent does not require courts there to review an agency's invocation of good cause de novo, as D.C. Circuit

precedent requires this Court to do. *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1278 (9th Cir. 2020). Second, even under its more deferential standard, the Ninth Circuit has since rejected the district court's conclusion that the newspaper article likely provided a basis to invoke the good cause exception. *Id.* And that conclusion echoed the earlier opinion of a different panel that denied a motion to stay the district court's order granting a temporary restraining order pending appeal, in which the panel also held that the Departments' "speculative" reasoning did not support invocation of the good cause exception. *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 777–78 (9th Cir. 2018).[18]

Finally, Defendants also cite the Supreme Court's decision in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34–35 (2010), to support their argument that "courts are ill-equipped to second-guess the Executive Branch's prospective judgment." Defs.' Cross Mtn at 40–41. In *Holder*, the Court denied a constitutional challenge to a criminal statute prohibiting the provision of material support to a foreign terrorist organization. *See Holder*, 561 U.S. at 7–8 (citing 18 U.S.C. § 2339B). In so doing, Defendants point out, the Court noted that the "Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to its empirical conclusions." *Id.* at 35.

There are many circumstances in which the law appropriately commands, as in *Holder*, that courts defer to the Executive Branch's national security judgments. But even putting aside the many other differences between that case and this one, the record in that case consisted of far

---

[18] The newspaper article was apparently not part of the record when the first panel considered the matter. *See East Bay*, 950 F.3d at 1286 ("I agree with the majority that merely adding the twenty-five-word sentence from a Washington Post article was insufficient to justify changing the motions panel result.") (Fernandez, J., concurring).

more than a newspaper article. There, the basis for the judgments of both Congress and the Executive about the material support statute—the latter's set forth in an affidavit of a State Department official—were thoroughly explained to the Court. Those judgments were informed by extensive experience with how terrorist groups fund their activities, and the specific designated terrorist organizations at issue, which the Executive asserted had killed thousands. *Id.* at 29–30. Here, by contrast, the Departments rely on a single newspaper article that does not even directly address the key predictive judgment in question: the likelihood of a surge in asylum seekers so great and so rapid as to threaten human life or defeat the purpose of the Rule if notice-and-comment procedures were followed.

It bears emphasizing that in holding that the good cause exception does not apply, the Court does not suggest in any way that the Executive's broader security concerns that prompted promulgation of the Rule were unfounded. The question for the Court is simply whether, on the record before it, the prediction of a surge offered by the Departments provided good cause to dispense with notice-and-comment procedures before the Rule took effect. For the reasons explained above, the Court holds that it did not.[19]

### 2. The Foreign Affairs Function Exception

The second exception Defendants invoke is the foreign affairs function exception. As noted above, notice-and-comment requirements do not apply "to the extent there is involved . . .

---

[19] The Departments cite several other past rulemakings in which they say they invoked § 553's good cause exception to avoid a similar surge. *See* 84 Fed. Reg. at 33,841. But to the Court's knowledge, none of those rulemakings were challenged for any reason, let alone for failure to proceed by notice-and-comment procedures. The task before the Court is to determine whether *this* rulemaking complied with the APA. The Court cannot conclude that an agency's present conduct is lawful merely because the agency did something similar in the past. *See Analysas Corp. v. Bowles*, 827 F. Supp. 20, 25 (D.D.C. 1993) ("The court need not address whether [previous rulemakings] were proper; they are not before the court. What is before the court is the propriety of the present interim rule; the court determines that it, indeed, is contrary to law.").

a military or foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). Unlike the good cause exception, there is little case law in this Circuit, or elsewhere, to guide the Court's application of this exception. Perhaps as a result, it presents a closer call. Still, the Court finds that Defendants' arguments in favor of the exception come up short.

Plaintiffs urge a narrow reading of the foreign affairs function exception. They note that several circuits have held that an agency may not invoke this exception just because a rule "implicates foreign affairs." *I.A.* ECF No. 6 at 24 (internal quotation and citation omitted); *CAIR* ECF No. 41-1 at 18 (internal quotation marks omitted) (citing *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980)); *see also Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995), *superseded by statute on other grounds*, by 8 U.S.C. § 1101(a)(42); *Jean v. Nelson*, 711 F.2d 1455, 1478 (11th Cir. 1983). Plaintiffs in *CAIR* argue that the Court should limit its interpretation of the exception to cover only those paradigmatic cases in which the rule at issue implements treaties or regulates foreign diplomats. *CAIR* ECF No. 41-1 at 18 (citing *City of New York v. Permanent Mission of India to United Nations*, 618 F.3d 172, 202 (2d Cir. 2010) (applying the exception when an agency action concerned "the treatment of foreign missions")). And in the alternative, Plaintiffs in both cases reference a test that some courts of appeals have adopted that extends this exception to circumstances where notice-and-comment procedures would create "definitely undesirable international consequences." *I.A.* ECF No. 6 at 23 (internal quotation and citation omitted); *CAIR* ECF No. 41-1 at 19 (internal quotation marks omitted); *see Yassini*, 618 F.2d at 1360 n.4; *see also Rajah v. Mukasey*, 544 F.3d 427, 437 (2d Cir. 2008); *Am. Ass'n of Exps. & Imps.-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1249 (Fed. Cir. 1985); *Jean*, 711 F.2d at 1477. In Plaintiffs' view, Defendants have failed to meet even that test. *I.A.* ECF No. 6 at 24–25; *CAIR* ECF No. 41-1 at 19–20. In contrast, Defendants offer up

various reasons why, in their estimation, the Rule does in fact involve a foreign affairs function of the United States, including its relationship with ongoing international negotiations. *See* Defs.' Cross Mtn at 41–42. And while Defendants reject the "definitely undesirable international consequences" test because "the statute requires no such showing," they also argue, for many of these same reasons, that the Rule satisfies it in any event. *Id*. at 43–44.

The Court starts, as it must, with the text of the statute: notice-and-comment procedures are unnecessary "to the extent there is involved . . . a military or foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). The first part of that phrase, "to the extent there is involved," applies to several other categories of rulemakings as well, including those involving public benefits, 5 U.S.C. § 553(a)(2), and the D.C. Circuit has interpreted the phrase in that context. Specifically, in *Humana of South Carolina, Inc. v. Califano*, the Circuit instructed— consistent with the duty to "narrowly construe" and "reluctantly countenance" such exceptions, *New Jersey*, 626 F.2d at 1045—that "to the extent that any one of the enumerated categories is *clearly and directly* involved in the regulatory effort at issue, the Act's procedural compulsions are suspended." 590 F.2d 1070, 1082 (D.C. Cir. 1978) (citations and quotations omitted) (emphasis added). As a result, a rule falls within the foreign affairs function exception only if it "clearly and directly" involves "a foreign affairs function of the United States."

The APA does not define the key terms in the second part of that phrase—"foreign affairs" or "function"—and so the Court turns to dictionaries in use at the time of the APA's enactment.[20] The definition of "foreign affairs" is reasonably straightforward: it refers to the

---

[20] *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 130 (D.C. Cir. 2018) (en banc) (Griffith, J., concurring in the judgment) (noting that undefined terms are to be given "their ordinary meaning," and that courts "generally begin[] with dictionaries"); *MCI Telecomm. Corp.*

conduct of international relations between sovereign states. *See* Webster's New International Dictionary 988 (2d ed. 1945) (defining foreign affairs to include "matters having to do with international relations and with the interests of the home country in foreign countries"). The meaning of "function," on the other hand, is less so. The 1945 version of Webster's New International Dictionary defines it as "[t]he natural and proper action of anything; special activity," "[t]he natural or characteristic action of any power or faculty," or "[t]he course of action which peculiarly pertains to any public officer in church or state; the activity appropriate to any business or profession; official duty." *Id.* at 1019. "Function" thus appears to narrow the exception further; to be covered, a rule must involve activities or actions that are especially characteristic of foreign affairs. Applying these definitions, then, a "foreign affairs function" encompasses activities or actions characteristic to the conduct of international relations. And to sum up, to be covered by the foreign affairs function exception, a rule must clearly and directly involve activities or actions characteristic to the conduct of international relations.

As noted above, some circuits have adopted a test that would also permit the exception to be invoked when notice-and-comment procedures "would provoke definitely undesirable international consequences." *Am. Ass'n of Exps.*, 751 F.2d at 1249 (quotation omitted); *see also Rajah*, 544 F.3d at 437; *Jean*, 711 F.2d at 1478; *Yassini*, 618 F.2d at 1360 n.4. The D.C. Circuit has not adopted this test. And the Court declines to do so for three reasons.

---

*v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228–29 (1994) (observing that the time of enactment is "the most relevant time for determining a statutory term's meaning").

First, this test is unmoored from the legislative text; it is lifted from the House Report

relating to the APA.[21] But as the Supreme Court has repeatedly instructed, "the authoritative

statement is the statutory text, not the legislative history or any other extrinsic material," *Exxon*

*Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). Thus, the Court declines to

"rest[] its interpretation on legislative history," which "is not the law." *Epic Sys. Corp. v. Lewis*,

138 S. Ct. 1612, 1631 (2018). Second, requiring negative consequences "would render the

'military or foreign affairs function' superfluous since the 'good cause' exception . . . would

apply." *Mast Indus., Inc. v. Regan*, 596 F. Supp. 1567, 1581 (Ct. Int'l Trade 1984) (citation

omitted). Indeed, several courts have relied on this test to find both the foreign affairs function

exception and the good cause exception satisfied on largely the same facts. *See Nademi v. INS*,

679 F.2d 811, 814 (10th Cir. 1982); *Malek-Marzban v. INS*, 653 F.2d 113, 116 (4th Cir. 1981);

*Yassini*, 618 F.2d at 1360–61. Third, the Second Circuit recently clarified that it applies this test

exclusively to areas of the law "that only *indirectly* implicate international relations" rather than

"quintessential foreign affairs functions such as diplomatic relations and the regulation of foreign

missions," which it characterized as "different." *City of New York*, 618 F.3d at 202 (emphasis

added). "Such actions clearly and *directly* involve a foreign affairs function, and so fall within

the exception without a case-by-case iteration of specific undesirable consequences." *Id.*

(citations and quotations omitted) (emphasis added). But this approach conflicts with the D.C.

---

[21] In full, the relevant sentence from the House Report reads: "The phrase 'foreign affairs functions,' used here and in some other provisions of the bill, is not to be loosely interpreted to mean any agency operation merely because it is exercised in whole or part beyond the borders of the United States but only those 'affairs' which so affect the relations of the United States with other governments that, for example, public rule-making provisions would provoke definitely undesirable international consequences." H. Rep. No. 79-1980 at 257 (1946).

Circuit's admonition that a rule must "clearly and directly" involve the basis for the asserted exception—here, the foreign affairs function—full stop, without exception.[22] *Califano*, 590 F.2d at 1082.

Thus, the foreign affairs function exception plainly covers heartland cases in which a rule itself directly involves the conduct of foreign affairs. For example, the exception covers scenarios in which a rule implements an international agreement between the United States and another sovereign state. Indeed, that is the *only* circumstance to which the D.C. Circuit has applied it. Specifically, in *International Brotherhood of Teamsters v. Pena*, 17 F.3d 1478 (D.C. Cir. 1994), the Circuit held that the foreign affairs function exception applied to a Federal Highway Administration rule implementing a Memorandum of Understanding (MOU) between the United States and Mexico about the countries' reciprocal recognition of each other's commercial drivers' licenses. The court noted that "the rule does no more" than carry out the

---

[22] Even if the Court were to adopt this test, the Rule would not satisfy it. The Departments assert that ongoing "negotiations [with Mexico and the Northern Triangle countries] would be disrupted if notice-and-comment procedures preceded the effective date of this rule." 84 Fed. Reg. at 33,842. That disruption, in turn, would allegedly "provoke a disturbance in domestic politics in those countries, and would erode the sovereign authority of the United States to pursue the negotiating strategy it deems to be most appropriate as it engages its foreign partners." *Id.* (cleaned up). But Defendants never explain—in their briefing or in a sworn declaration from an involved official—*why* any of those things would happen merely by allowing the public to comment on the Rule. The closest they get to bridging this gap is by arguing that "public participation and comments may impact and potentially harm the goodwill between the United States and [those countries]," *id.* But the Departments' request for public comment (albeit after the Rule was in effect) severely undercuts this argument. 84 Fed. Reg. at 33,830. And in any event, a sizable gulf remains between *potential* harm to the goodwill between the United States and those countries and the kind of "definitely undesirable international consequences" that would satisfy the test. *See, e.g.*, *Rajah*, 544 F.3d at 437 (noting that "sensitive foreign intelligence might be revealed in the course of explaining why some of a particular nation's citizens are regarded as a threat" and that "relations with other countries might be impaired if the government were to conduct and resolve a public debate over why some citizens of particular countries were a potential danger to our security").

United States' "obligations to a foreign nation." *Id.* at 1486. The rule in that case merely "added a sentence to [a] footnote" in a regulation specifying that the Administrator had determined that Mexican commercial drivers' licenses met the United States' standards. *Id.* at 1481; *see also* Commercial Driver's License Reciprocity With Mexico, 57 Fed. Reg. 31,454 (July 16, 1992) (discussing the negotiations between the United States and Mexico and including the text of the MOU itself). The exception also certainly covers rules that regulate foreign diplomats in the United States. For example, in *City of New York v. Permanent Mission of India to United Nations*, the Second Circuit held that the exception covered an action by the State Department "exempt[ing] from real property taxes" any "property owned by foreign governments and used to house the staff of permanent missions to the United Nations or the Organization of American States or of consular posts." 618 F.3d at 175. As the court observed, "the action taken by the State Department to regulate the treatment of foreign missions implicates matters of diplomacy *directly*." *Id.* at 202 (emphasis added).

That Congress would categorically exclude rules like these from notice-and-comment procedures is unsurprising. These procedures enhance the rulemaking process by exposing proposed regulations to feedback from a broad set of interested parties. *See Int'l Union*, 407 F.3d at 1259. But comments are unlikely to impact a rule to which the United States has already effectively committed itself through international agreement. *See Pena*, 17 F.3d at 1486 ("After all . . . the agreement called for the United States to recognize Mexican [commercial divers' licenses] even if comments revealed widespread objections."). Similarly, in the diplomatic context, agency action may be grounded in international reciprocity. *See City of New York*, 618 F.3d at 178 (noting that the State Department explained that its action "conforms to the general

practice abroad of exempting government-owned property used for bilateral or multilateral diplomatic and consular mission housing").

Here, however, the foreign affairs function exception does not excuse the Departments from failing to engage in notice-and-comment rulemaking before promulgating the Rule. The Rule overhauls the procedure through which the United States decides whether aliens who arrive at our southern border are eligible for asylum here, no matter the country from which they originally fled. These changes to our asylum criteria do not "clearly and directly" involve activities or actions characteristic of the conduct of international relations. They do not, for example, themselves involve the mechanisms through which the United States conducts relations with foreign states. Nor were they the product of any agreement between the United States and another country, regardless of any ongoing negotiations. To be sure, Defendants say they intended that the Rule would have downstream effects in other countries, and perhaps on those negotiations. Obviously, they expected that the Rule would cause more aliens to apply for protection in other countries before arriving in the United States and seeking asylum here. But these *indirect* effects do not clear the high bar necessary to dispense with notice-and-comment rulemaking under the foreign affairs function exception.

It may seem a quibble that the exception distinguishes between rules that "clearly and directly" involve activities characteristic of the conduct of international relations and those that have indirect international effects. And of course, the Court is bound to apply both Circuit precedent and the statutory text as it is, "even if it thinks some other approach might accord with good policy." *Loving v. IRS*, 742 F.3d 1013, 1022 (D.C. Cir. 2014) (cleaned up). But it is worth pointing out that the Circuit's holding in *Califano* and Congress's use of the word "function"— instead of, say, "effects" or "implications"—prevent the foreign affairs function exception from

swallowing the proverbial rule. There are many rulemakings that an agency might plausibly argue have downstream effects in other countries or on international negotiations in which the United States is perpetually engaged. Courts have, for example, warned that in the immigration context, the "dangers of an expansive reading of the foreign affairs exception . . . are manifest." *City of New York*, 618 F.3d at 202. But this is true in other areas of the law as well. One agency might reach for a too-sweeping interpretation of the foreign affairs function exception to argue that a rule involving climate change that affects other countries is subject to the exception. Another might contend that a rule regarding domestic production of some good or commodity that impacts ongoing trade negotiations is covered. Thus, as Plaintiffs point out, courts of appeals have generally rejected the idea that the exception applies merely because a rule "implicate[s] foreign affairs," *City of New York*, 618 F.3d at 202; *see also Zhang*, 55 F.3d at 744; *Yassini*, 618 F.2d at 1360 n.4, or "touche[s] on national sovereignty," *Jean*, 711 F.2d at 1478. In the end, the narrowness of this exception does not mean that these agencies cannot take these hypothetical actions; it simply means that they are not excused from engaging in notice-and-comment rulemaking when they do.

Defendants argue that the Rule falls within the exception for two broad reasons, but neither passes muster. First, they say that the Rule implicates foreign affairs or the President's foreign policy agenda. For example, they note that "the flow of aliens across the southern border directly implicates the foreign policy and national security of the United States." Defs.' Cross Mtn at 41 (cleaned up). They explain that the Rule is "linked intimately with the Government's overall political agenda concerning relations with another country." *Id.* at 43 (quoting *Am. Ass'n*

44

*of Exps.*, 751 F.2d at 1249).[23]  And they add that the changes embodied in the Rule "involve the relationship between the United States and its alien visitors that implicate our relations with foreign powers, and implement the President's foreign policy."[24]  *Id.* (cleaned up).  But for the reasons already explained, although the Rule implicates foreign affairs at least indirectly, that alone is not enough to satisfy the foreign affairs function exception.

Second, Defendants contend that notice-and-comment procedures would in some way affect ongoing negotiations with other countries.  For example, they assert that the Rule will "facilitate ongoing diplomatic negotiations with foreign countries" about migration issues.  *Id.* at 41 (quoting 84 Fed. Reg. at 33,842).  They also argue that delaying the effective date of the Rule would disturb the domestic political situation in other countries and hinder the United States' negotiating strategy.  *Id.* at 42.  And relatedly, they argue that the faster the Rule went into effect,

---

[23] Defendants go so far as to argue that this language should be the test for whether the foreign affairs function exception applies. Defs.' Cross Mtn at 41.  But for largely the same reasons the Court declines to adopt the "definitely undesirable international consequences" test, it declines to adopt this purported one as well.  Nowhere does the statutory text suggest that being "linked intimately with the Government's overall political agenda concerning relations with another country" meets the exception.  And, as explained above, Congress could have—but did not— exempt rulemakings that merely affect or implicate foreign affairs.  In addition, even the case from which Defendants pluck this language does not hold it out as a test for the exception; it is dicta.  In fact, in that case the Federal Circuit held that the exception applied because notice and comment "would provoke definitely undesirable international consequences," specifically, trade dumping.  *See Am. Ass'n of Exps.*, 751 F.2d at 1249 (quotation omitted).  Finally, in that case the court appears to have weighed that the rule at issue involved authority Congress delegated to the President (that he then delegated to the agency) to negotiate export agreements with foreign countries and issue relevant regulations.  *See id.* at 1241 (citing 7 U.S.C. § 1854 (1982)).  Neither party here argues that the Rule involves power delegated to the President, or for that matter, that engaging in notice and comment rulemaking would unconstitutionally hinder any inherent constitutional power of the President.  *Contra Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018) (observing that 8 U.S.C. § 1182(f) "exudes deference to the President in every clause").

[24] Defendants do not argue that this case involves a challenge to the President's own actions, which are "not reviewable . . . under the APA."  *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).

45

the faster it would address the circumstances at our southern border, "thereby facilitating the likelihood of success in the United States' ongoing negotiations with Mexico regarding regional and bilateral approaches to asylum, and supporting the President's foreign-policy aims." *Id.* (cleaned up). This argument gets Defendants no further. As explained above, downstream effects on foreign affairs or negotiations with other countries—either positive or negative—do not bring the Rule under this exception. And while negative international effects could well satisfy the good cause exception, Defendants do not make that argument, or back it up with an appropriate factual record, such as sworn declarations from appropriate officials.

Defendants also argue that the Court should defer to the Departments' conclusion that the foreign affairs function exception applies. Defs.' Supp. Br. at 4 (arguing that "principles of deference are heightened in the context of Defendants' invocation of the 'foreign affairs' exception"). But they do not point to any case law suggesting that agencies are entitled to deference in interpreting the scope of the exception. That is hardly surprising. As this Circuit has explained, "an agency has no interpretive authority over the APA." *Sorenson*, 755 F.3d at 706; *see also Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 79 n.7 (D.C. Cir. 1999) (noting that "when it comes to statutes administered by several different agencies— statutes, that is, like the APA . . . —courts do not defer to any one agency's particular interpretation"). And Defendants again point to cases like *Holder*, 561 U.S. at 35, *see* Defs.' Supp. Br. at 5. The Court reiterates that there are many circumstances in which courts appropriately defer to the national security judgments of the Executive. But determining the scope of an APA exception is not one of them. As noted above, if engaging in notice-and-comment rulemaking before implementing the rule would have harmed ongoing international negotiations, Defendants could have argued that these effects gave them good cause to forgo

these procedures.  And they could have provided an adequate factual record to support those predictive judgments to which the Court could defer.[25]  But they did not do so.

<p style="text-align:center">*          *          *</p>

For all the above reasons, the Court finds that the Rule is not exempt from the APA's notice-and-comment procedures.  Because the Departments unlawfully dispensed with those requirements, they issued the Rule "without observance of procedure required by law," 5 U.S.C. § 706.

### C.    Remedy

The APA commands that courts "hold unlawful and set aside agency action[s]" taken "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  And the D.C. Circuit has held that "[f]ailure to provide the required notice and to invite public comment . . . is a fundamental flaw that 'normally' requires vacatur of the rule."  *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) (citing *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97–98 (D.C. Cir. 2002)); *see also Mack Trucks*, 682 F.3d at 95 ("Because EPA lacked good cause to dispense with required notice and comment procedures, we conclude the IFR must be vacated without reaching Petitioners' alternative arguments.").  Having found that the Rule was enacted unlawfully, the Court sees no reason why it should not be vacated.

---

[25] The portions of the administrative record that Defendants cite do not support a predictive judgment meriting deference that international negotiations would be harmed by notice-and-comment rulemaking.  Some of those documents discuss an agreement between the United States and Mexico requiring aliens to remain in Mexico while their asylum cases in the United States are pending.  *See* Defs.' Cross Mtn at 42 (citing AR at 231–32, 537–57).  Others include asylum-related statistics.  *See id.* (citing AR at 208–20, 222–30, 558–59).  Still others include newspaper articles indicating that the United States is pressuring other countries to do more to help reduce the number of individuals who apply for asylum here.  *See id.* (citing AR at 635–37, 698).  But there is, for example, no sworn declaration from a relevant official that explains the nature of the ongoing negotiations and why notice-and-comment procedures would in fact harm them.

Defendants suggest several alternative remedies, but they offer no compelling reason why they make sense here. For example, they propose remand without vacatur. *See* ECF No. 62 83:21–84:17. And indeed, the D.C. Circuit has held—despite the text of the APA—that in some cases, a court may remand a defective rule without vacating it. *See Allied–Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (outlining the factors a court should consider when determining whether to remand without vacatur). That approach is not without some controversy. *See Comcast Corp. v. FCC*, 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J., concurring) (arguing that remand without vacatur is unlawful). But assuming it is ever appropriate, it is not warranted here.

Under *Allied-Signal*, to decide whether remand without vacatur is appropriate, courts look to two factors: "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." 988 F.2d at 150–51 (citation omitted). When the two factors are in equipoise, the resolution generally "turns on the Court's assessment of the overall equities and practicality of the alternatives." *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 270 (D.D.C. 2015).

As to the first factor, deficient notice "almost always require[s] vacatur," *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *see also Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 268 ("The Court is unable to evaluate whether the Secretary's decision was reasonable because her omission prevented the public from offering meaningful comments."). And as discussed above, the protections that notice-and-comment procedures afford are especially important when the proposed regulation has an "expansive" reach, *see Block*, 655 F.2d at 1156, as the Rule does here. Moreover, offering the public the opportunity to comment after

48

the fact is not a substitute. *New Jersey*, 626 F.2d at 1049–50. In addition, because Plaintiffs advance other colorable claims that the Rule is unlawful that the Court does not reach, "leaving the regulations in place during remand would ignore petitioners' potentially meritorious challenges," *Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1262 (D.C. Cir. 2007) (citation omitted).[26] As to the second factor, Defendants have presented no evidence suggesting that "[t]he egg has been scrambled" so that "there is no apparent way to restore the status quo ante," *Sugar Cane Growers*, 289 F.3d at 97. Indeed, that recent pandemic-related administrative action appears to have effectively closed the southern border indefinitely to aliens seeking asylum only underscores that vacatur of the Rule will not result in prohibitively disruptive consequences.[27] Thus, both *Allied-Signal* factors weigh against remand without vacatur.

To be sure, courts in this Circuit have sometimes applied *Allied-Signal*, in one way or another, to stay vacatur when vacating a rule immediately would create confusion, *see Chamber of Commerce v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006), when the parties both support a stay, *see Anacostia Riverkeeper, Inc. v. Jackson*, 713 F. Supp. 2d 50, 52–55 (D.D.C. 2010), or "where a prolonged agency remand threatens to deprive one or more parties of significant rights," *Bauer*

---

[26] *See also AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 93 (D.D.C. 2007) ("Vacatur thus has the virtue of eliminating the significant risk that unions will be forced in early 2008 to comply with a rule that this Court has found to be procedurally defective and whose substantive validity has not yet been confirmed.").

[27] *See* Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 17,060 (Mar. 26, 2020); Amendment and Extension of Order Under Sections 362 and 365 of the Public Health Service Act, Order Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 Fed. Reg. 31,503 (May 26, 2020); *see also* Notification of Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the United States and Mexico, 85 Fed. Reg. 16,547 (Mar. 24, 2020); Notification of Temporary Travel Restrictions Applicable to Land Ports of Entry and Ferries Service Between the United States and Mexico, 85 Fed. Reg. 37,745 (June 24, 2020).

*v. DeVos*, 332 F. Supp. 3d 181, 185 (D.D.C. 2018). But this case presents none of those situations.

Defendants also urge the Court to "limit any relief to the actual parties before the Court," Defs.' Supp. Br. at 5, pointing to Justice Thomas's concurrence in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), *id.* at 7. But there, Justice Thomas addressed the propriety of nationwide injunctions, *Trump*, 138 S. Ct. at 2424–29, which is not the issue here. As the D.C. Circuit has explained—and as Defendants concede, *see* Defs.' Supp. Br. at 9 n.1—"[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (alteration in original) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)); *see also O.A.*, 404 F. Supp. 3d at 153.[28]

Defendants also contend that vacatur is prohibited by several provisions of the INA, but again, the Court is not persuaded. They first argue that Section 1252(e)(1)'s prohibition on "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with [expedited removal]" prohibits vacatur. Defs.' Supp. Br. at 9–10. But the organizational Plaintiffs, like CAIR and Tahirih, are not challenging any specific order to exclude an individual alien; they bring a facial challenge to the Rule. For that reason, Section

---

[28] Defendants' reliance on the Fourth Circuit's opinion in *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001), *overruled by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012), is misplaced for the same reason. Defs.' Supp. Br. at 6. The court in that case merely observed in dicta that the APA does not mandate nationwide *injunctive* relief. *Virginia Soc'y for Human Life,* 263 F.3d at 393–94. But even setting aside the practical challenges inherent in vacating the Rule only as to Plaintiffs in this case, *see O.A.*, 404 F. Supp. 3d at 153, precedent in this Circuit instructs otherwise.

1252(e)(1) does not apply. Second, Defendants point to Section 1252(f)'s dictate that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221–32] other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." *Id.* at 10–11. But again, that section does not apply here. The Rule was issued under 12 U.S.C. § 1158(b)(2)(c), *see* 84 Fed. Reg. at 33,835, not one of the provisions covered by Section 1252(f). *See O.A.*, 404 F. Supp. 3d at 158. Moreover, by vacating the Rule, the Court is not enjoining or restraining the INA's operation.[29]

Finally, Defendants argue that "in light of the Supreme Court's order in *Barr v. East Bay Sanctuary Covenant*," 140 S. Ct. 3 (2019), the Court should "stay the effect of any decision concerning relief pending resolution of *East Bay*." Defs.' Supp. Br. at 12–13. The Court sees no reason to do so. The parties in *East Bay* are still litigating the propriety and scope of *preliminary* relief, and the Supreme Court's order simply stayed the nationwide scope of the preliminary injunction entered by the district court. At bottom, the Court can glean little from the Supreme Court's one-paragraph order other than that a majority of Justices believed the factors meriting a stay were satisfied. *See* 140 S. Ct. at 3; *see also Maryland v. King*, 567 U.S. 1301, 1301 (2012)

---

[29] The Court sees no reason why the relief available to the organizational Plaintiffs would be governed by Section 1252. *See* Defs.' Supp. Br. at 9–12. But even assuming it is, Defendants' arguments also run headlong into Section 1252(e)(3), which authorizes courts in this District to make "determinations" about whether relevant regulations issued by the Attorney General are in violation of law. According to Defendants, the INA allows the Court only to issue these "determinations" from which no legal consequences flow. *See id.* at 10. But it would be very strange if Congress—in a section entitled "Challenges on validity of the system"—empowered this Court to determine that a regulation was unconstitutional but left it powerless to remedy it. Indeed, such a result could be inconsistent with Article III. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (noting that "a federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" (citation omitted)).

(Roberts, C.J., in chambers) (listing the factors the Supreme Court considers when deciding whether to grant a stay).

For these reasons, the Court holds that vacatur is the appropriate remedy and that neither remand without vacatur nor a stay of vacatur is warranted.

## IV.    Conclusion

For all these reasons, the Court will grant Plaintiffs' Motions for Summary Judgment, *CAIR* ECF No. 41, *I.A.* ECF No. 6; deny Defendants' Cross-Motions, *CAIR* ECF No. 43, *I.A.* ECF No. 17; and vacate the Rule.  A separate order will issue.

<div align="right">

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

</div>

Date: June 30, 2020

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 19-2117 (TJK) |
| DONALD J. TRUMP *et al.*, | |
| *Defendants*. | |
| I.A. *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 19-2530 (TJK) |
| WILLIAM BARR *et al.*, | |
| *Defendants.* | |

## ORDER

For the reasons stated in the Court's Memorandum Opinion, *Capital Area Immigrants'*

*Rights Coalition (CAIR) v. Trump,* No. 19-cv-2117, ECF No. 72 (D.D.C. June 30, 2020), *I.A. v.*

*Barr*, No. 19-cv-2530, ECF No. 55 (D.D.C. June 30, 2020), it is hereby **ORDERED** that

Plaintiffs' Motions for Summary Judgment, *CAIR* ECF No. 41, *I.A.* ECF No. 6, are **GRANTED**;

it is further

**ORDERED** that Defendants' Cross-Motions for Summary Judgment, *CAIR* ECF No. 43,

*I.A.* ECF No. 17, are **DENIED**; and it is further

**ORDERED** that the interim final rule, Asylum Eligibility and Procedural Modifications,

84 Fed. Reg. 33,829 (July 16, 2019), is **VACATED.**

This is a final, appealable Order.

**SO ORDERED.**

<div align="right">

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

</div>

Date: June 30, 2020